MARY KATE SULLIVAN (State Bar No. 180203)
LASZLO LADI (State Bar No. 265564)
ll@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant
SPECIALIZED LOAN SERVICING LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA— SAN FRANCISCO DIVISION

| | |
|---|---|
| CECILIA F. INFANTE,<br><br>Plaintiff,<br><br>vs.<br><br>SPECIALIZED LOAN SERVICING LLC; EXPERIAN INFORMATION SOLUTIONS, INC., an Ohio Corporation; EQUIFAX INFORMATION SERVICES, LLC, a Georgia limited liability company; TRANS UNION LLC, a Delaware LLC,<br><br>Defendants. | Case No. 3:17-cv-00793-MMC<br><br>**DECLARATION OF LASZLO LADI IN SUPPORT OF SPECIALIZED LOAN SERVICING LLC'S MOTION FOR SUMMARY JUDGMENT**<br><br>The Hon. Maxine M. Chesney<br><br>Action Filed:      February 17, 2017 |

I, Laszlo Ladi, declare:

1.      I am an associate attorney employed by Severson & Werson, APC, counsel of record for defendant Specialized Loan Servicing LLC ("SLS"). I am making this declaration in support of the motion for summary judgment by SLS in relation to the complaint filed by Cecilia F. Infante ("Plaintiff"). I have knowledge of the facts set forth in this declaration based upon personal knowledge and/or the business records pertaining to the above-captioned case, and if called as a witness, I could and would competently testify thereto.

2.      On July 18, 2017, I took the deposition of plaintiff Cecilia F. Infante at our offices in San Francisco, California.  Attached as **Exhibit A** is a copy of relevant portions of Ms.

1  Infante's deposition transcript and redacted portions of exhibits to the deposition. Certain exhibits

2  to the deposition have been truncated to remove irrelevant credit reporting.

3        4.    On May 8, 2017, our office served written discovery on Plaintiff, consisting of: (1)

4  interrogatories; (2) requests for production; and (3) requests for admission.

5        5.    On or about May 30, our office received Plaintiff's responses to SLS' written

6  discovery served on May 8, 2017. A copy of Plaintiff's responses to SLS' interrogatories is

7  attached hereto as **Exhibit B**. A copy of Plaintiff's responses to SLS' requests for production, set

8  one, is attached hereto as **Exhibit C**.

9        6.    Our office received a copy of the 2015 Credit Reporting Resource Guide

10  ("CRRG")from Plaintiff on or about August 24, 2017 as a supplement to the documents

11  previously produced by Plaintiff. Copies of relevant pages from the CRRG are attached hereto as

12  **Exhibit D**.

13        7.    On October 13, 2017, I took the deposition of Plaintiff's credit reporting expert,

14  Doug Minor. Attached as **Exhibit E** is a copy of relevant portions of Mr. Minor's deposition

15  transcript and exhibits to the deposition.

16        I declare under penalty of perjury under the laws of the United States that the foregoing is

17  true and correct.  Executed at San Francisco, California this 7th day of December, 2017.

18

19                                       Laszlo Ladi

20

21

22

23

24

25

26

27

28

DECLARATION OF LASZLO LADI IN SUPPORT OF SPECIALIZED LOAN SERVICING LLC'S MOTION FOR
SUMMARY JUDGMENT

# Exhibit A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION


CECILIA F. INFANTE,

       Plaintiff,

                             Case No.
   v.                      3:17-cv-00793-MMC

SPECIALIZED LOAN SERVICING LLC;
EXPERIAN INFORMATION SOLUTIONS,
INC., an Ohio Corporation;
EQUIFAX INFORMATION SERVICES,
LLC, a Georgia limited liability
company; TRANS UNION LLC, a
Delaware LLC,

       Defendants.
_____



VIDEOTAPED DEPOSITION OF

CECILIA F. INFANTE

July 18, 2017

9:21 A.M.


One Embarcadero Center, 26th Floor

San Francisco, California



REPORTED BY:  INGRID SKOROBOHATY, CSR NO. 11669

Job No. J0605981

```
 1    APPEARANCES:

 2

 3    For the Plaintiff:

 4            ANDERSON, OGILVIE & BREWER LLP
              BY:  MARK F. ANDERSON, ATTORNEY AT LAW
 5            1736 Stockton Street, Ground Floor
              San Francisco, CA 94133
 6            415.651.1951
              mark@aoblawyers.com
 7

 8
      For Defendant Specialized Loan Servicing LLC:
 9
              SEVERSON & WERSON
10            BY:  LASZLO LADI, ATTORNEY AT LAW
              One Embarcadero Center, Suite 2600
11            San Francisco, CA 94111
              415.398.3344
12            ll@severson.com

13

14

15    Also Present:

16            MARISA RAMOS, Videographer

17            REDEN INFANTE

18

19

20

21

22

23

24

25
```

```
1                    INDEX OF EXAMINATION

2

3   WITNESS:  CECILIA F. INFANTE

4   EXAMINATION                                    PAGE

5       By Mr. Ladi                                  7

6

7

8                       --oOo--

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                        INDEX OF EXHIBITS

                                                      PAGE
2
    Exhibit 1  - Complaint                          14
3
    Exhibit 2  - Plaintiff's Responses to SLS'     15
4                Special Interrogatories, Set
                 One
5
    Exhibit 3  - Notice of Default and Election     39
6                to Sell Under Deed of Trust

7   Exhibit 4  - 03/13/12 correspondence to         45
                 Cecilia F. Infante from
8                Specialized Loan Servicing, LLC

9   Exhibit 5  - Loan Modification Agreement on     46
                 Balloon Mortgage
10
    Exhibit 6  - April 29, 2016 correspondence      51
11               to SLS, LLC from Cecilia F.
                 Infante
12
    Exhibit 7  - May 25, 2016 correspondence to     54
13               Cecilia F. Infante from SLS

14  Exhibit 8  - Infile Credit Report               55

15  Exhibit 9  - Statement of Credit Denial,        63
                 Termination or Change
16
    Exhibit 10 - Handwritten notes                  68
17
    Exhibit 11 - October 20, 2016 correspondence    72
18               to Specialized Loan Servicing,
                 LLC, from Cecilia F. Infante
19
    Exhibit 12 - November 17, 2016 correspondence   74
20               to Cecilia F. Infante from SLS

21  Exhibit 13 - November 28, 2016 correspondence   76
                 to Specialized Loan Servicing,
22               LLC, from Cecilia F. Infante

23  Exhibit 14 - December 23, 2016 correspondence   77
                 to Cecilia F. Infante from SLS
24

25

1                  INDEX OF EXHIBITS (Continued)
                                                          PAGE
2

3    Exhibit 15 - December 05, 2016 correspondence      80
                 to Cecilia F. Infante from
4                Experian

5    Exhibit 16 - 12/05/2016 correspondence             82
                 to Cecilia F. Infante from
6                TransUnion

7    Exhibit 17 - December 5, 2016 correspondence        83
                 to Cecilia F. Infante from
8                Equifax

9    Exhibit 18 - January 10, 2017 correspondence        84
                 to TransUnion from Cecilia F.
10               Infante

11   Exhibit 19 - January 10, 2017 correspondence        84
                 to Equifax from Cecilia F.
12               Infante

13   Exhibit 20 - January 10, 2017 correspondence        84
                 to Experian from Cecilia F.
14               Infante

15   Exhibit 21 - 02/01/2017 correspondence             88
                 to Cecilia F. Infante from
16               TransUnion

17   Exhibit 22 - Multipage document bearing            89
                 TransUnion logo, Bates Nos.
18               Infante Docs 0169 - 180

19   Exhibit 23 - Multipage document bearing            91
                 Experian logo, Bates Nos.
20               Infante Docs 0207 - 0232

21   Exhibit 24 - Multipage document bearing            92
                 Equifax logo, Bates Nos.
22               Infante Docs 0181 - 0206

23

24

25

 1 | client's not expected to know about it.  That's the
 2 | nature of interrogatories.
 3 |         Go ahead and answer the question, but
 4 | there's no foundation for it.
 5 |         MR. LADI:  Mark, I'm gonna say that that
 6 | was a little bit of a speaking objection.  Part of
 7 | my answering -- asking this question is I wanted to
 8 | see if she knew about it, and I think you suggested
 9 | that she doesn't know about it, so I ask that you
10 | refrain from that in the future.
11 | BY MR. LADI:
12 |     Q.   Ms. Infante, can you answer -- can you
13 | explain the response to Interrogatory No. 7?
14 |     A.   I don't really get it.
15 |     Q.   Have you ever read the 2015 CDIA credit
16 | report -- reporting resource guide?
17 |     A.   I'm not sure.
18 |     Q.   Are you familiar with that document, the
19 | CDIA credit reporting resource guide?
20 |     A.   I'm not sure.
21 |     Q.   Are you familiar with any guidelines for
22 | reporting credit?
23 |         MR. ANDERSON:  Same objection.  We're just
24 | wasting time.
25 |         THE WITNESS:  I'm not sure.



1     Q.   Do you remember what your interest rate is

2   with SLS?

3     A.   I cannot remember.

4     Q.   That's okay.  We'll look at a document in

5   just a second.

6     A.   Yes.

7     Q.   And you receive your mail at the property,

8   correct?

9     A.   Yes.

10    Q.   Not a P.O. box?

11    A.   No.

12    Q.   So the loan that we're gonna be talking

13  about for the most part today is the one that

14  involves SLS, so when I say "loan," I'm gonna

15  probably refer to that.

16         So the loan with SLS, do you remember how

17  much that loan originally was?

18    A.   I cannot remember.

19    Q.   Do you remember who you borrowed that

20  money from originally?

21    A.   I cannot remember also.

22    Q.   Do you remember the date of that loan?

23    A.   I cannot remember.

24    Q.   If I told you it was October 2005 with

25  Encore Credit Corporation and it was 86,000, does

1    that sound correct?

2         A.   Maybe.

3         Q.   Do you remember when SLS became involved

4    with this loan?

5         A.   I'm not really sure, but I think 2005.

6         Q.   Do you remember how much your monthly

7    payment was originally?

8         A.   I cannot remember.

9         Q.   Did you ever miss any payments with SLS

10   before 2012?

11        A.   Before 2012?  I'm not sure.

12        Q.   Do you have any records that you kept

13   about when you made payments to SLS?

14        A.   Yes, we do.

15        Q.   Do those go back before 2012?

16        A.   Yes, they do.

17        Q.   And have those been turned over to us --

18   to your attorney?

19        A.   What I remember is I turn over everything

20   to the attorney.

21        Q.   And what do these payment records look

22   like that you keep?

23        A.   Bank statements.

24        Q.   And do you keep bank statements from, say,

25   2010 or 2011?

1    A.    Yes, we do.

2    Q.    And you don't remember if you missed any

3  payments before 2012, correct?

4    A.    None that I know.

5    Q.    Do you remember if you missed any payments

6  to Bank of America before 2012?

7    A.    I cannot remember also.  It's been a long

8  time.

9    Q.    Between your husband and yourself, is

10  there one of the two of you that is primarily in

11  charge of making payments on your loans?

12    A.    Yes.

13    Q.    And who is that?

14    A.    My husband.

15    Q.    And do you have any involvement with that,

16  or is that something that he handles completely?

17    A.    We do talk about it, and then he does do

18  it mostly on-line also.  Before, it was paying

19  through checks, and then, these past few years, it's

20  through on-line.

21            THE VIDEOGRAPHER:  I'm sorry.  Could

22  you -- you're fiddling with the cord.  Down here,

23  you're fiddling with it.  It's getting on the audio.

24            THE WITNESS:  Sorry.

25

1    BY MR. LADI:

2        Q.    Do you recall ever applying for a loan

3    modification to SLS?

4        A.    Modification.   I think in 2012,

5    modification.

6        Q.    How did that come about?   Did you ask for

7    a modification, or why was that offered to you?

8        A.    I cannot remember anymore.   All I know

9    was, you know, had it modified.

10        Q.    Do you recall having difficulties making

11    loan payments in the years 2009, 2010, and 2011?

12        A.    Not too sure.   Not too sure.

13        Q.    Is that because your husband was handling

14    making those payments?

15        A.    Yes.

16        Q.    I should have asked this to begin with:

17    Are there any other properties that you presently

18    own?

19        A.    Just 1931.

20        Q.    What about previously; did you own any

21    other properties?

22        A.    That was before.

23        Q.    What property was that?

24        A.    One in Vallejo.

25        Q.    Is that --

1      Q.   Was it immediately before the property at

2  1931 Diamond Way?

3      A.   I cannot remember.

4      Q.   Was it -- do you remember the decade?  Was

5  it in the 2000s, or was it in the 1990s?

6      A.   Yeah.

7      Q.   Which date?

8      A.   Somewhere in 2000.

9      Q.   How about that property at 1268 Potrero

10  Circle; that's not something you currently own?

11      A.   My children does.

12      Q.   But you previously owned that property,

13  correct?

14      A.   Yes.

15      Q.   And did you live there as well?

16      A.   Before, yeah, 2000.

17      Q.   So it was before the current property you

18  live at at Diamond Way, you lived at the Potrero

19  Circle property, correct?

20      A.   Yes.

21      Q.   And did you live at the property in

22  Vallejo before you lived at the Potrero Circle

23  property?

24      A.   Yes, we did.

25      Q.   When did your children acquire that

Page 39

1    property from you, that Potrero Circle property?

2          A.    I cannot remember anymore.

3          Q.    Did you own that property in 2009, the

4    Potrero Circle property?

5          A.    2009?  Somewhere in 2000.

6          Q.    Are you aware that there was a foreclosure

7    on that property on Potrero Circle in August of

8    2009?

9          A.    Yeah, I think so.  Yes.

10         Q.    Was that while you still owned the

11   property?

12         A.    2009?  I cannot remember.

13         Q.    How about the loan with Bank of America;

14   do you remember if there was ever a foreclosure on

15   that property?

16         A.    I cannot remember.

17               MR. LADI:    This is Exhibit 3.

18               (Exhibit 3 marked.)

19   BY MR. LADI:

20         Q.    Have you seen this document before?

21         A.    Okay.  Yes.

22         Q.    Is this a notice of default that you

23   received from Bank of America for the property at

24   Diamond?

25         A.    I think so.

1      Q.   And it says that the amount that you owe

2  as of July 12, 2012 is 97,000.   Does that sound

3  correct?

4      A.   Yes.

5      Q.   And then on page 2, it says, at the

6  bottom, that the default was a failure to pay the

7  installment of principal and interest which became

8  due on April 1st, 2009 and all subsequent payments.

9  Is that correct?

10     A.   I think so.

11     Q.   So based on this document, you defaulted

12 on the Bank of America loan in April 2009 and owed

13 about a hundred thousand by July 2012, correct?

14     A.   I think so.

15     Q.   So was the reason you defaulted on the

16 Bank of America loan because of financial

17 difficulties during this period of 2009 to 2012?

18     A.   I think so.

19     Q.   And during this time, were you making your

20 payments to SLS as well?

21     A.   I am not sure of that.

22     Q.   Is that because your husband was handling

23 the payments?

24     A.   Yes.

25     Q.   But is it fair to say that the financial

1   forth between SLS and Bank of America, but now I'm

2   gonna ask about the SLS loan.

3            The SLS loan, you said you don't remember

4   why -- how or why you got a loan modification,

5   correct?

6       A.   I cannot remember.

7       Q.   But you just -- all -- you do remember

8   that you got the loan modification, correct?

9       A.   Yes.

10      Q.   And what date was that?

11      A.   I think March 2012.

12           MR. LADI:   Exhibit 4.

13           (Exhibit 4 marked.)

14  BY MR. LADI:

15      Q.   Have you seen this document before?

16      A.   Yes.  Yes.

17      Q.   And what is this document?

18      A.   It's the modification.

19      Q.   Is this a letter that accompanied the

20  modification?

21      A.   Say it again, please.

22      Q.   Is this a letter that accompanied the loan

23  modification from SLS?

24      A.   I think so.

25      Q.   Do you see on the first page it -- the

1    second sentence in the first paragraph, "a

2    modification of your loan has been approved"?

3        A.    Yes.

4        Q.    Do you recall ever applying for a loan

5    modification?

6        A.    I think so.

7        Q.    And -- but you don't remember why you

8    applied, correct?

9        A.    No.

10        Q.    Is that because your husband would have

11    applied for the loan modification on your behalf?

12        A.    Yes.

13              MR. LADI:    Exhibit 5.

14              (Exhibit 5 marked.)

15              THE WITNESS:    Can I say something?

16              MR. LADI:    Yes.

17              THE WITNESS:    The reason why my husband is

18    doing everything, because I had a depression before.

19    BY MR. LADI:

20        Q.    And when did this depression occur?

21        A.    Somewhere in 2000 something.

22        Q.    And what was the cause of this depression?

23        A.    I lost my son in a drive-by shooting.

24        Q.    I'm sorry.

25        A.    That's why I'm so forgetful, because of my

1  medicines.

2      Q.    And --

3      A.    That's why I kept telling I don't

4  remember, because my husband is doing everything for

5  me.

6      Q.    And what kind of medication are you

7  taking?

8      A.    I was taking Wellbutrin, sleeping pills.

9      Q.    And that's not something you're currently

10  taking at this point?

11      A.    No.  No more.

12      Q.    Do you remember when that stopped, when

13  you stopped taking that medication?

14      A.    Just a few years ago.

15            But every time there's a problem, it

16  triggers me.

17      Q.    I'm gonna ask about that later, but for

18  right now, if I could have you look at Exhibit 5.

19            Have you seen this document before?

20      A.    Yes.

21      Q.    What is this document?

22      A.    It's a modification agreement.

23      Q.    So this is the loan-modification agreement

24  that's at issue in this lawsuit, correct?

25      A.    Yes.

1    Q.    And that's your signature on the last

2  page, page 3?

3    A.    Yes.

4    Q.    So besides the letter that we just looked

5  at that's Exhibit 4 and then this Exhibit 5, was

6  there anything else that was sent to you in

7  connection with this loan modification?

8    A.    I am not sure.

9    Q.    Was there anything that wasn't in writing

10  that's a part of this loan modification?

11    A.    Might be.

12    Q.    Is there anything that would help refresh

13  your memory about whether or not there's anything

14  that you believe was not in writing?

15    A.    I think everything is in writing.

16    Q.    So as far as you can recall, is there

17  anything else, besides Exhibit 4 and 5, that is part

18  of this modification?

19    A.    I guess this is it.

20    Q.    So since -- well, I'm gonna ask one more

21  thing.

22        Can you turn to page 2 of Exhibit 5.  Do

23  you see in Part 4 or No. 4 it says:

24            "Borrower promises to pay the

25            modified unpaid principal balance, plus

1    Q.    And I apologize.   I know this is probably

2  a difficult subject for you to talk about, but the

3  depression, when did that start?   Do you remember?

4    A.    Somewhere in early 2000, I think.

5    Q.    And I really hate to drag up the past,

6  but --

7    A.    That's okay.

8    Q.    -- your son, when did you lose him?

9    A.    1998.

10   Q.    1990?

11   A.    1998.

12   Q.    '98.   Okay.

13          And that's when the depression started?

14   A.    After.   A few years after that.

15   Q.    And then since then, since that depression

16  started, your husband has primarily been handling

17  making payments and other aspects of the loans,

18  correct?

19   A.    Yes.

20   Q.    Would -- the payments that were made after

21  the loan modification in 2012, was that something

22  that you would handle, or your husband?

23   A.    My husband.

24   Q.    Do you remember if you made all your

25  payments after this loan modification, after this

1    2012 loan modification with SLS?

2        A.    Yes, we did.  We have a record.

3        Q.    And how do you keep those records?

4        A.    On-line.

5        Q.    And are those bank statements, or --

6        A.    Yes.  Bank statement.

7              MR. LADI:  And -- strike that.

8              This will be Exhibit 6.

9              (Exhibit 6 marked.)

10   BY MR. LADI:

11       Q.    Have you seen this before?

12       A.    Yes.

13       Q.    What is this document?

14       A.    I'm asking a letter from SLS that --

15   because this what the bank needs, this No. 1 and 2.

16       Q.    And by "the bank," you mean Travis --

17       A.    Travis Credit Union.  Yes.

18       Q.    Okay.

19             And it says:

20                  "I am in the process of refinancing

21             the first mortgage at the address property

22             above."

23             Do you see that part of the letter?

24       A.    Yes.

25       Q.    Earlier, you testified that you were

1       Q.    And was that a response from Travis Credit

2   Union, or is that a response from SLS?

3       A.    From credit union.

4       Q.    Do you know if they checked your credit in

5   May 2016?

6       A.    I am not sure.

7       Q.    By "they," I mean Travis Credit Union.

8       A.    I am not sure.

9             MR. LADI:  If you could turn to the third

10  page in this packet, and it's got a little label at

11  the bottom, Infante Docs 0010.  You've got it.  Yes.

12  And I know this is a little hard to read, but -- I

13  thought this was something else.  Ignore my -- I

14  might come back to that.

15            This is Exhibit 7.

16            THE REPORTER:  We're up to 8.

17            MR. LADI:  Oh, 8.

18            (Exhibit 8 marked.)

19  BY MR. LADI:

20      Q.    Can you please tell me what this document

21  is, if you've seen it before?

22      A.    I think so, yes.

23      Q.    So you've seen it before?

24      A.    I think so.

25      Q.    And is this something you received from

1   Travis Credit Union?

2          A.    I am not sure if I got one.

3          Q.    So you're not sure what this document is?

4          A.    Not really sure.

5          Q.    Have you read this document before, all of

6   it?

7          A.    I cannot remember.

8          Q.    Do you see on the first page, where it

9   says "Infile Credit Report," and below that there's

10  four boxes, and the left box, it says "Prepared for

11  Travis Credit Union."  Does that help refresh your

12  memory about what this document is?

13         A.    Not really sure.

14         Q.    So with -- when you're trying to refinance

15  with Travis Credit Union the -- in May of 2016, they

16  tell you that they can't do anything because it's

17  not been four years since the loan modification,

18  correct?

19         A.    Yes.   That's what they say.

20         Q.    And then you waited until September 2016,

21  correct?

22         A.    Yes.

23         Q.    So you didn't do anything between then,

24  correct?

25         A.    No.

1    Q.    So what happened in September 2016?

2    A.    The processing was very long, and we

3    waited, and then we tried to call -- I tried to call

4    them again, why is it, and then they told us that

5    there was a problem.   That's why they cannot do it.

6    Q.    And what -- what problem was that?

7    A.    I think they mention about my credit

8    report.

9    Q.    Did they provide you a copy of the credit

10   report?

11   A.    None that I know.   I cannot remember.

12   Q.    Did they tell you specifically what's a

13   problem with your credit report?

14   A.    They just told us -- they just told me

15   that it was my credit-report problem.

16   Q.    And you don't remember them saying

17   specifically what was wrong with your credit?

18   A.    No.

19   Q.    And you don't remember if you got a copy

20   of the credit report?

21   A.    No.

22   Q.    How about -- was your husband the one that

23   was primarily talking with Travis Credit Union?

24   A.    Yes.

25   Q.    So he might know --

1    A.    Maybe.

2    Q.    -- what they said?

3    A.    Maybe.

4    Q.    Okay.

5          And you don't remember if they said it was

6    SLS's reporting that was specifically a problem?

7    A.    Not -- I don't -- not really.

8    Q.    I'll represent to you, based on these

9    numbers on the bottom, that this was something that

10   we received -- this document was received from your

11   counsel.  Do you know how you came to possess this

12   document in your records?

13   A.    Might be mailed to us.

14   Q.    And it was something that maybe your

15   husband looked at instead?

16   A.    Yes.

17   Q.    If you could turn to page Infante Docs

18   0024, have you seen this page of the document

19   before?

20   A.    I think I've seen this, but I just forget

21   it.

22   Q.    Do you understand what any of this means?

23   A.    Yes.

24   Q.    And what is that?

25   A.    It's a derogatory summary, loan modified

1   not government plan, conventional real estate

2   mortgage.   Just reading it.

3       Q.    That's -- is that related to the Bank of

4   America loan?

5       A.    Yes.

6       Q.    And then there's a separate one for

7   Specialized Loan Servicing below, correct?

8       A.    Yes.

9       Q.    So you understand that, on this document,

10  that the Bank of America loan and the Specialized

11  Loan Servicing loan are both listed in the

12  derogatory summary, correct?

13      A.    Yes.

14      Q.    And this -- this document, in that it

15  purports to be a credit report, it does relate to

16  you, correct?

17      A.    Yes.

18      Q.    This is your information in this document?

19      A.    Yes.

20      Q.    On page 1 of this document -- I apologize

21  for jumping all over the place -- at the bottom,

22  there are three different -- it says "scoring," and

23  there's a number of -- there's a Beacon 5.0 score

24  that says 698, a Classic 04 score that says 694, and

25  a Fair Isaac Score 2 of 716.

1          Do you see those parts?

2     A.    Yes.

3     Q.    Do you know what your credit score is

4  currently?

5     A.    Right now, or --

6     Q.    Yes.

7     A.    I just saw it last night with my husband.

8  It says 792.

9     Q.    And what -- how did you look that up?

10    A.    It's on-line.

11    Q.    And which -- which company did you use to

12  look that up?

13    A.    I don't know which one.

14    Q.    Was it Equifax?

15    A.    I cannot remember.   Sorry.

16    Q.    Which Web site did you use to look it up?

17    A.    My husband did.

18    Q.    Do you remember -- do you check your

19  credit score frequently?

20    A.    Not really.

21    Q.    Do you know what your credit score was in,

22  let's say, January of 2012?

23    A.    I don't know.

24    Q.    I guess it's a little difficult to ask you

25  specifics, but do you recall, over the course of

Page 68

1   in front of you in Exhibit 9, the December 2016

2   denial from Travis Credit Union.

3           Do you see anywhere in there that they

4   specifically identify an account that caused them to

5   deny your loan, your refinance?

6       A.   They just told me it was a credit report.

7           MR. LADI:  Okay.  I need to go to the rest

8   room.  If we could take a quick break.

9           THE VIDEOGRAPHER:  This concludes Video

10  No. 1 in the deposition of Cecilia Infante.  We're

11  going off the record.  The time is 10:57.

12          (Recess taken 10:55 to 11:02 a.m.)

13          THE VIDEOGRAPHER:  This begins Video No. 2

14  in the deposition of Cecilia Infante.  We are back

15  on the record.  The time is 11:04.

16          MR. LADI:  So Ms. Infante, I understand

17  you wanted to make a correction.

18          THE WITNESS:  Yes.  I just want to make a

19  correction that we want to refi the Bank of America

20  and SLS to pay both of them.  That's why it went up

21  to 252.

22          MR. LADI:  I see.  Okay.

23          And I'm gonna take this opportunity to add

24  Ms. Infante's notes as Exhibit 10 for the record.

25          (Exhibit 10 marked.)

1      A.    Maybe.

2            There was two person -- two person or

3    three we were talking to.

4      Q.    Do you remember if it was a male or a

5    female?

6      A.    Female.

7      Q.    And do you have a specific day in

8    September 2016 where this phone conversation took

9    place?

10     A.    No.  I cannot remember.

11     Q.    And you don't remember if there was

12   anything in writing, correct --

13     A.    No, I cannot remember.

14     Q.    -- from Travis Credit Union, correct?  You

15   don't remember?

16     A.    I cannot remember.

17     Q.    But based on what Travis Credit Union told

18   you, you then started to write to SLS --

19     A.    Yes.

20     Q.    -- asking them to fix your credit score,

21   correct?

22     A.    Yes.

23            MR. LADI:   This is Exhibit 11.

24            (Exhibit 11 marked.)

25

1    BY MR. LADI:

2        Q.    Have you seen this document before?

3        A.    Yes.

4        Q.    Is this the first letter that you sent to

5    SLS about your credit history?

6        A.    I think so.

7        Q.    This letter from you suggests that you've

8    reviewed your credit history.  Is that correct?  Did

9    you review the credit history before sending this

10   letter?

11       A.    Yes.

12       Q.    Do you remember what credit-history

13   document you looked at when you prepared this

14   letter?

15       A.    My husband did, but he showed it to me,

16   and I cannot remember anymore.

17       Q.    So your husband prepared this letter?

18       A.    We did both.

19       Q.    And your husband showed you the

20   credit-history document that you looked at?

21       A.    Yes.

22       Q.    Do you understand what that term

23   "transferred to recovery charge off" means?

24       A.    My husband explained it to me, but can't

25   remember.

1     Q.   You can't remember, correct?

2        Do you know why you said that this is not

3  the case?

4     A.   What do you mean?

5     Q.   It says right there that, "I believe this

6  is not the case," and it's in reference to the

7  account being transferred to recovery charge-off, so

8  I'm asking you, Do you remember why you believed it

9  was not the case that it was transferred to recovery

10  charge-off?

11     A.   Well, what I can understand is we've been

12  paying on time since 2012.

13     Q.   That's why you believe that the

14  transfer-to-recovery-charge-off notation was

15  incorrect?

16     A.   Yes.

17        MR. LADI:  Exhibit 12.

18        (Exhibit 12 marked.)

19  BY MR. LADI:

20     Q.   Have you seen this letter before?

21     A.   I think so.

22     Q.   And this is SLS's response to you?

23     A.   Say it again, please.

24     Q.   This was SLS's response to your

25  October 20th letter --

1    A.    Yes.

2    Q.    -- correct?

3    A.    Yes.

4    Q.    Do you see, in the second paragraph, the

5    first sentence begins:

6              "Due to its severe delinquency, this

7              account was charged off for credit

8              reporting purposes on January 26, 2012."

9              And then, "Credit reporting ceased at that

10             time."

11             Do you disagree with that statement, that

12   the account was delinquent and charged off in

13   January 2012?

14   A.    I don't know.

15   Q.    Do you know if the loan was current in

16   January of 2012?

17   A.    I am not sure.

18   Q.    And is that because your husband was

19   making the payments --

20   A.    Yes.

21   Q.    -- around that period?

22   A.    Yes.

23   Q.    Do you remember receiving this letter --

24   is there a reason why this explanation wasn't

25   sufficient for you?

1      A.    Yeah.  I read this letter.

2      Q.    The explanation wasn't sufficient for you,

3  correct?

4      A.    Yeah.  Not -- you know, not enough

5  explanation.

6            MR. LADI:   Exhibit 13.

7            (Exhibit 13 marked.)

8  BY MR. LADI:

9      Q.    Is this a letter that you prepared

10  responding to the previous letter from SLS, which is

11  November 17th?

12     A.    Yes.

13     Q.    Is this a letter that your husband

14  prepared on your behalf?

15     A.    We both did it.

16     Q.    After this letter, there's two pages of

17  what look to be a credit report.  Is that -- was

18  that -- that was attached to this letter, correct?

19     A.    Yes.  Yes.

20     Q.    Did you obtain this credit report, or was

21  that something your husband prepared -- obtained?

22     A.    My husband did.

23     Q.    And who was it that circled, on the third

24  page, where it says "2016," "July," "August,"

25  "September," "October"; "2012," "January"?  Was that

1    you, or your husband?

2         A.    Maybe him, my husband.

3         Q.    Do you understand any of those

4    credit-reporting terms -- "failed to pay,"

5    "negative"?  There's an index below the calendar on

6    that page.  Do you understand how any of those work,

7    when an account is 60 days late versus 90 days late?

8         A.    Yes, I understand.

9         Q.    What about on the first page of the credit

10   report, which is Infante Docs 0032, the -- where it

11   says "Payment Status, Charge-off"?  I think you

12   testified earlier that you don't recall what the

13   term "charge-off" means.  Is that correct?

14        A.    Yes.

15             MR. LADI:   Exhibit 14.

16             (Exhibit 14 marked.)

17   BY MR. LADI:

18        Q.    Is this a letter that SLS sent to you in

19   response to your last letter, which was

20   November 28th?

21        A.    Yes.

22        Q.    So SLS, in this letter, basically repeated

23   the first letter which said that the account was

24   charged off in January 2012 and credit reporting

25   stopped at that time.

1     A.   Yes.

2     Q.   Was this the last letter that you received

3  from SLS on this -- in these series of letters?

4     A.   Maybe.  I'm not sure.

5     Q.   Did you send any letter directly to SLS

6  after this December 23rd letter?  I know you have

7  some letters where you sent them to credit-reporting

8  agencies, but did you send any directly to SLS after

9  December 23rd?

10    A.   I'm not sure.

11    Q.   When you describe that there was a series

12  of letters that you sent to SLS after you were

13  denied by Travis Credit Union, are these three or

14  four letters that we've looked at -- actually,

15  there's four letters.  Are these all the letters

16  that there are?  That's Exhibits 11, 12, 13, and 14.

17    A.   I think so.

18    Q.   One thing I forgot to ask you about

19  Exhibit 13.  This is your November 28th, 2016

20  letter:  Am I understanding it correctly that you

21  were only disputing the July, August, September, and

22  October 2016 reporting?

23    A.   Yes.

24    Q.   So you weren't disputing that the -- any

25  of the reporting for January 2012, for 2011, 2010,

1    or 2009, correct?

2         A.   Not that I know.

3         Q.   Can you repeat that?

4         A.   Not that I know.

5         Q.   Okay.

6              So on the third page of this, this

7    exhibit, which is the date with -- the page with all

8    the -- with a calendar and the circles, January 2012

9    is circled, and then looks like July, August,

10   September, October, November, and December of 2011,

11   there's an underline for each of those dates.  Were

12   you and your husband disputing the reporting on

13   those months?

14        A.   I can only recall that July, August,

15   September, October.

16        Q.   Of 2016?

17        A.   Yes.

18        Q.   But not of 2011?

19        A.   No.

20        Q.   So what did you do next, after you

21   received this letter from SLS December 23rd?

22        A.   I told my husband maybe we can ask for

23   help to correct my credit, and we went to attorney.

24        Q.   Okay.  I don't wanna get into anything

25   privileged, communications between you and your

Page 80

1    attorney, but do you remember when that time was?

2    Was that in January 2017?

3        A.    January 2017.

4        Q.    Did you also submit -- did you also obtain

5    copies of your credit report around that time?

6        A.    I'm not sure.

7              MR. LADI:    This is Exhibit 15.    The

8    staples are a little . . .

9              (Exhibit 15 marked.)

10   BY MR. LADI:

11       Q.    I realize this is a fairly big packet.

12   It's Bates-stamped Infante Docs 0098 through Infante

13   Docs 0125.

14             Have you seen this document before?

15       A.    I think it was showed to me, but I can't

16   remember anymore.

17       Q.    Was it showed to you by your husband?

18       A.    Yes.

19       Q.    And is this a document that he obtained?

20       A.    Yes.

21       Q.    And was it on December 5th, 2016?

22       A.    Yes.

23       Q.    And is it a credit report from Experian

24   that he obtained?

25       A.    Yes.

1    Q.    I'm just asking a little more general.

2          These are the two negative items on this

3    credit report for you, correct -- the Bank of

4    America account and the SLS account?

5    A.    I guess so.

6    Q.    Are you aware of any other negative items

7    on your credit report besides the Bank of America

8    account and the SLS account?

9    A.    None that I know.

10   Q.    But besides SLS, there is also Bank of

11   America that is negative on your credit report,

12   correct?

13   A.    Maybe, yes.

14         MR. LADI:   This is Exhibit 16.

15         (Exhibit 16 marked.)

16   BY MR. LADI:

17   Q.    This is Infante Docs 0078 through Infante

18   Docs 0097.

19         Ms. Infante, is this another credit report

20   that your husband obtained for you on December 5th

21   from TransUnion?

22   A.    Maybe, yeah.

23         What was the number?   00 --

24   Q.    0078 through 097.

25         So the question was, Is this a credit

1    report from TransUnion that your husband obtained

2    for you on December 5th, 2016?

3        A.    I think so.

4        Q.    If you could turn to Infante Docs 0081,

5    there's a circle around the reporting between July

6    through October 2016.  Was that you that circled it,

7    or your husband?

8        A.    My husband.

9        Q.    And this credit reporting, you'll --

10   you'll -- can see that it still reflects Bank of

11   America's reporting as adverse, correct?

12       A.    Maybe.

13       Q.    Above where it says "Specialized Loan

14   Servicing" on that same page and then on the page

15   before it says "adverse accounts," and then it says

16   "BAC Home Loans Servicing."

17             So this report, it still reflects Bank of

18   America as having a negative account, correct?

19       A.    Maybe.

20             MR. LADI:   Exhibit 17.

21             (Exhibit 17 marked.)

22   BY MR. LADI:

23       Q.    Have you seen this document before?

24       A.    Yes.

25       Q.    And is this a credit report your husband

Page 84

1   obtained for you from Equifax on December 5th, 2016?

2       A.   Yes.

3       Q.   Did you go over this report with your

4   husband?

5       A.   Say it again, please.

6       Q.   Did you go over this report with your

7   husband?

8       A.   Yes, but I cannot remember everything.

9            MR. LADI:  Since these are similar, I'm

10  gonna mark these together as Exhibits 18, 19, and

11  20.  18 is a letter to TransUnion, 19 is Equifax,

12  and 20 is to Experian.

13           (Exhibits 18, 19, and 20 marked.)

14  BY MR. LADI:

15      Q.   Have you seen these three documents

16  before?

17      A.   Yes.

18      Q.   And are these the three letters that you

19  sent to TransUnion, Equifax, and Experian disputing

20  the reporting by SLS on January 10th, 2017?

21      A.   Yes.

22      Q.   Were these letters prepared by you, your

23  husband, or was it by counsel at that point?

24      A.   We did it together.

25      Q.   But not -- your attorney was not involved



Recorded in Official Records, Solano County

**Marc C. Tonnesen**
Assessor/Recorder

7/13/2012
12:31 PM
AR64
16

**P DPS**

Doc#: **201200069889**

| Titles: 1 | Pages: 4 |
|---|---|

| Fees | 25.00 |
|---|---|
| Taxes | 0.00 |
| Other | 0.00 |
| PAID | $25.00 |

RECORDING REQUESTED BY:
WHEN RECORDED MAIL TO:
RECONTRUST COMPANY

1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

Attn: Richard Najarro
TS No. 12-0054647
Title Order No. 12-0096467

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE

## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,

and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded ( which date of recordation appears on this notice).

**This amount is $97,740.45, as of 07/12/2012 and will increase until your account becomes current.**

While your property is in foreclosure, you still must pay other obligations ( such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this Notice of Default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

**EXHIBIT**
**3**
Infante - 4-18-17

TS No. 12-0054647

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK,AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2006-ABC1
C/O Bank of America, N.A.
400 National Way
SIMI VALLEY, CA  93065
FORECLOSURE DEPARTMENT (800) 669-6650

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember,

## YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN THAT: RECONTRUST COMPANY, N.A., is acting as an agent for the Beneficiary under a Deed of Trust dated 10/26/2005, executed by CECILIA F. INFANTE, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as beneficiary recorded 11/04/2005, as Instrument No. 200500171382 (or Book , Page ) of Official Records in the Office of the County Recorder of Solano County, California.

Said obligation including ONE NOTE FOR THE ORIGINAL sum of $ 344,000.00.

That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of : FAILURE TO PAY THE INSTALLMENT OF PRINCIPAL AND INTEREST  WHICH BECAME DUE ON 04/01/2009  AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND INTEREST, TOGETHER WITH ALL LATE CHARGES; PLUS ADVANCES MADE AND COSTS INCURRED BY THE BENEFICIARY INCLUDING FORECLOSURE FEES AND COSTS AND/OR ATTORNEYS FEES. IN ADDITION,  THE ENTIRE PRINCIPAL AMOUNT WILL BECOME DUE ON  11/01/2035 AS A RESULT OF THE MATURITY OF THE OBLIGATION ON THAT DATE.

TS No. 12-0054647

That by reason thereof, the present beneficiary under such deed of trust has executed and delivered to RECONTRUST COMPANY, N.A. such deed of trust and all documents evidencing obligations secured  thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable  and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

If required by the provisions of  Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Default duly recorded with the appropriate County Recorder's office.

Dated: July 12, 2012

RECONTRUST COMPANY, N.A., as agent for the Beneficiary

JUL 1 2 2012

Araya Dhanasopon, Asst Vice President

**Bank of America**

**Home Loans**

Notice Date:    July 9, 2012

**12-0054647**

Cecilia F Infante
1931 Diamond Way
Fairfield, CA  94533

Property Address:
1931 Diamond Way
Fairfield, CA  94533

## CALIFORNIA DECLARATION

I, _Kimberly Lampkin,_ Mortgage Servicing Specialist I of Bank of America, N.A., declare under penalty of perjury, under the laws of the State of California, that the following is true and correct:

Bank of America, N.A.

☐ has contacted the borrower to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure,

☒ tried with due diligence to contact the borrower in accordance with California Civil Code Section 2923.5, or

☐ verified that the borrower has surrendered the property.

☐ has evidence and reasonably believes that the borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and to avoid their contractual obligations to beneficiaries.

☐ has confirmed that the borrower(s) filed for bankruptcy and the proceedings have not been finalized to wit, there is no order on the court's docket closing or dismissing the bankruptcy case.

☐ The provisions of California Civil Code §2923.5 do not apply because State Reason.

_07-09-2012_    _Richardson, TX_
Date and Place

_Kimberly Lampkin_
Name of Signor

//END OF
DOCUMENT//

CA-DECLARATIONS  8638/9508 8/27/2008



THIS COMMUNICATION IS FROM A DEBTOR COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A
DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

03/13/12

CECILIA F INFANTE
1931 DIAMOND WAY
FAIRFIELD, CA 94533

Re: Loan Modification Agreement – Loan #: ████████

Dear CECILIA F INFANTE:

You are a valued customer to Specialized Loan Servicing LLC, and we appreciate your business. A
modification of your loan has been approved; enclosed are two (2) copies of the agreement. There are
tremendous benefits of a loan modification, some of which may include a lower or fixed interest rate and
a lower monthly payment, which will result in a current loan status. Please refer to the attached
documentation for the specific terms related to your loan modification.

Additionally, an escrow account for payment of real estate taxes and insurance premiums may be
required in conjunction with your loan modification. If required, an estimated monthly escrow amount is
included below. The initial estimated amount is calculated based upon the tax and insurance information
obtained while in the modification process, and may change. An escrow analysis statement referencing
the actual payment and effective date will be mailed to you within four weeks of the modification being
completed. SLS will draw on the escrow account to pay your real estate taxes and insurance premiums
as they come due. Please note that your escrow payment amount will adjust if your taxes, insurance
premiums and/or assessment amounts change, so the amount of your monthly payment that SLS must
place in escrow will also adjust as permitted by law. This means that your monthly payment may change.
An analysis of this account will be performed annually

In order to take advantage of these updates, please review the agreement, sign one copy where indicated,
and return the signed document and certified check for $638.76 in the pre-paid priority mail envelope. If
you are a customer in bankruptcy, a written approval from your attorney acknowledging acceptance of
these terms must be received in order to complete this process. Please return the approval letter to SLS with
your signed documents.

**Certified Check Breakdown**

Modification Fee: $0.00
Estimated Escrow: $0.00
P&I Payment: $352.01
Cash Contribution: $286.75



Infante Docs 0001

The modification of your loan will be completed and go into effect when both the signed document and certified funds are received by SLS on or before 03/31/12. SLS will continue normal servicing of this loan until documents and funds are received. If your loan is delinquent or will become delinquent prior to this time, collections efforts will continue, including foreclosure activity. Payment history will continue to be reported to the credit bureaus during the loan modification process. You must continue to make your scheduled payments in order to avoid negative credit reporting

You may wish to consult your attorney or financial advisor to review the terms of the modification; we encourage you to return it to us as soon as possible. Please contact us at 800-268-97069 if you have any questions.

Sincerely,

Recovery
Specialized Loan Servicing
8742 Lucent Blvd, Suite 300
Highlands Ranch, CO 80129
Phone: 800-268-9706
Fax: 303-895-2513

In accordance with the Fair Debt Collections Practices Act, you are hereby given notice of the following:

Please be advised that we are attempting to collect a debt and any information obtained will be used for that purpose. Calls will be monitored and recorded for quality assurance purposes. If you do not wish for your call to be recorded, please notify the Customer Assistance Associate when calling.

Bankruptcy Notice -- If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: Please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral.

Infante Docs 0002

Processed

APR 0 2 2012   Investor #: 00990   Investor Loan #: ███ *fee*

SLS Loan #: ███

# LOAN MODIFICATION AGREEMENT
## ON BALLOON MORTGAGE

MAR 3 0 2012
*638.76*

This Loan Modification Agreement (this "Agreement"), made and effective 03/13/13 between CECILIA F. INFANTE ("Borrower") and Specialized Loan Servicing LLC ("Servicer"), amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") dated 10/26/05 and recorded in public records of the county in which the property is located, and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at:

1931 DIAMOND WAY
FAIRFIELD, CA 94533

For purposes of this Agreement, unless the context clearly requires otherwise, all capitalized terms which are used but not otherwise defined herein shall have the respective meanings assigned to such terms in the Note or Security Instrument.

In consideration of the mutual promises and agreements exchanged, Servicer and Borrower agree as follows (notwithstanding anything to the contrary contained in the Note and Security Instrument):

1. As of 03/01/12, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $84,217.37. Effective 03/01/12, the Unpaid Principal Balance will be $87,983.99 (the "Modified Unpaid Principal Balance"). The amount capitalized is $3,766.62 consisting of the amount(s) loaned to Borrower by the current or previous Note Holder and any interest capitalized to date, with a breakdown as follows:

   a. Unpaid Interest         $   3,766.62
   b. Escrow Advances         $   0.00
   c. Corporate Advances      $   0.00

2. The amount to be Written Off is $246.69 consisting of the amount(s) loaned to the Borrower by the current or previous Note Holder and any interest capitalized to date, with a breakdown as follows;

   a. Principal Balance       $   0.00
   b. Late charges            $   246.69
   c. Unpaid Interest         $   0.00
   d. Corporate Advances      $   0.00

3. The amount Deferred is $ 0.00 consisting of the amount(s) loaned to the Borrower by the current or previous Note Holder and any interest capitalized to date, with a breakdown as follows;

   a. Unpaid Interest         $   0.00
   b. Corporate Advances      $   0.00
   c. Principal               $   0.00



EXHIBIT

5

Infante

SLS Loan #: ▮▮▮▮▮▮▮▮▮        Investor #: 00990    Investor Loan #: ▮▮▮▮▮▮▮▮▮

Additionally, the amount of items deferred in previous modification(s) on this loan is $0.00, with a breakdown as follows:

      a. Prior Deferred Interest  $0.00
      b. Prior Deferred Principal $0.00

Deferred Items: The portion of the outstanding principal balance, corporate advances and/or unpaid interest that is referenced above has been deferred. The deferred amount will not accrue interest. The deferred amount will remain due and owing but is not required to be paid until the loan is paid in full or if not sooner paid, on the Maturity Date or Modified Maturity Date. The deferred amount is not a forgiveness of partial debt and will not be reported as such.

4. Borrower promises to pay the Modified Unpaid Principal Balance, plus interest, to the order of the Note Holder. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 1.10%, from 03/01/12.

   Borrower promises to make monthly payments of principal and interest of $352.01, beginning on 04/01/12, continuing thereafter on the same day of each succeeding month until principal and interest are paid in full.

   If on 11/01/20, the (the "Balloon" or "Modified Balloon Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

5. Borrower will make such payments at PO Box 105219 Atlanta, GA. 30348-5219 Attn: Remittance Processing or at such other place as the Note Holder may require.

6. Borrower will also comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and other payments that the Borrower is obligated to make under the terms of the Security Instrument. The original loan documents may have included Riders for unique ARM, Interest Only and Conversion features. The Rider terms and features remain in effect unless otherwise modified by this specific agreement.

7. Borrower agrees to execute such other and further documents as may be reasonably necessary to consummate the transaction contemplated herein or to perfect the lien and security interest intended to secure the payment of the loan evidenced by the Note.

8. This Agreement, when executed, shall be binding and inure to the heirs, executors, administrators and assigns of the Borrower.

SLS Loan #      Investor #: 00990   Investor Loan #

9. In the event your personal liability under the Note has been discharged in a Chapter 7 Bankruptcy, notwithstanding anything in this Agreement to the contrary, including without limitation the provisions in the preceding paragraph, Borrower and Note Holder acknowledge and agree that Borrower's personal liability under the Note has been discharged in a Chapter 7 Bankruptcy and that this Agreement shall not be construed as: (1) an attempt by Note Holder to collect the underlying debt from Borrower's personal assets; and/or (2) as a violation of the post-discharge injunction set forth in 11 U.S.C. Section 524. On the contrary, Borrower and Note Holder desire to modify the underlying loan terms in order to facilitate Borrower's full compliance with the terms of the Note and Security Instrument.

11. Nothing in this Agreement shall be understood or construed to be a satisfaction or release   in whole or in part of the Note and Security Instrument.  Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Note Holder will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

12. If all or any part of the Property or any interest in the Property is sold or transferred without Servicer's prior written consent, Servicer may require immediate payment in full of all sums secured by the Security Instrument. If Servicer exercises this option, Servicer shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with the terms of the Security Instrument, within which Borrower must pay all sums secured by the Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Security Instrument without further notice to or demand on Borrower

In Witness Whereof, Servicer and Borrower have executed this Agreement.

Specialized Loan Servicing LLC as Servicer

By: _____

Name Printed: _____

Title:

_____
CECILIA F INFANTE

Infante Docs 0005

1931 Diamond Way
Fairfield, CA 94533
█████████████

April 29, 2016

SLS, LLC
PO Box 636005
Littleton, CO 80163-6005

To whom It May Concern:

Re: ██████ 2257

I am in the process of refinancing the first mortgage at the address property above, and
the Credit Union is requiring me to get the following from SLS:

1. A letter of proof that I am not currently in default, delinquent or late in payments
   for 12 months or more.

2. Also, that you will remain as Subordinate mortgage from the first.

Appreciate any assistance. Any question, please call the above number. Thanks.

Sincerely,

Cecilia F. Infante



SLS/Infante 000213



CBCInnovis
875 GREENTREE RD
8 PARKWAY CENTER
PITTSBURGH PA 15220

## CBCInnovis

Phone:  800-216-3463
Fax:  800-688-7816

## INFILE CREDIT REPORT

| PREPARED FOR:<br>TRAVIS CREDIT UNION<br>ONE TRAVIS WAY<br>VACAVILLE CA 95687<br><br>ATTENTION:<br>KAITLYN MOCK | | CHARGES:$20.15<br>COMPUTER ID #:<br>716279160040766<br>LENDER CASE #:<br>28610 | DATE RECEIVED:10/05/16<br><br>DATE COMPLETED:10/05/16 |
|---|---|---|---|
| | REPORT TYPE:INDIVIDUAL | | |

| APPLICANT | EMPLOYMENT INFORMATION |
|---|---|
| INPUT INFORMATION:<br>NAME: CECILIA F INFANTE<br>SSN: ▮▮▮▮▮    DOB:05/22/55<br>1931 DIAMOND WY<br>FAIRFIELD CA 94533<br>HOME PHONE:▮▮▮<br><br>CURRENT ADDRESS:<br>1931 DIAMOND WY<br>FAIRFIELD CA 94533-5876<br>SINCE:01/06<br><br>PREVIOUS ADDRESS:<br>1268 POTRERO CI<br>SUISUN CITY CA 94585-4142<br>FROM:12/31/15<br><br>PREVIOUS ADDRESS:<br>276 NE FALLON CT<br>BREMERTON WA 98311-8528<br>FROM:10/21/10 | PRESENT EMPLOYMENT:<br>SELF EMPLOYEED<br>FROM:01/15/08<br>POSITION:    HOME CARE GIV<br><br>PREVIOUS EMPLOYMENT:<br>INFANTE FAMI LY CARE HOME CE<br>FAIRFIELD CA |

### CREDIT SUMMARY

| | PAYMENTS | BALANCES | LIMITS | TRADES | 30 | 60 | 90 |
|---|---|---|---|---|---|---|---|
| REVOLVING | 138 | 3,070 | 63,800 | 25 | 0 | 0 | 0 |
| INSTALLMENT | 358 | 16,857 | 25,899 | 3 | 0 | 0 | 0 |
| REAL ESTATE | 1,668 | 216,599 | 344,000 | 4 | 2 | 1 | 39 |
| OPEN/OTHER | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL | 2,164 | 236,526 | 433,699 | 32 | 2 | 1 | 39 |

| #INQUIRIES | 2 | #PUBLIC RECORDS | 0 | #BANKRUPTCIES | 0 |
|---|---|---|---|---|---|
| WORST TRADE | 9 | OLDEST DATE | 08/15/98 | #SATISFACTORIES: | 30 |
| | | | | PAST DUES: | 0 |

### SCORING

| 1 | BEACON 5.0 SCORE | +698 | EFX01 |
|---|---|---|---|

SERIOUS DELINQUENCY
TOO MANY INQUIRIES IN THE LAST 12 MONTHS
TOO MANY CONSUMER FINANCE COMPANY ACCOUNTS
LENGTH OF TIME ACCOUNTS HAVE BEEN ESTABLISHED
   39 ·    8    6    14

| 1 | CLASSIC 04 SCORE | +694 | TRU01 |
|---|---|---|---|

SERIOUS DELINQUENCY
TIME SINCE DELINQUENCY IS TOO RECENT OR UNKNOWN
TOO MANY INQUIRIES IN THE LAST 12 MONTHS
TOO MANY CONSUMER FINANCE COMPANY ACCOUNTS
   39    13    8    6

| 1 | FAIR ISAAC SCORE 2 | +716 | XPN01 |
|---|---|---|---|

SERIOUS DELINQUENCY
LENGTH OF TIME ACCOUNTS HAVE BEEN ESTABLISHED
LEVEL OF DELINQUENCY ON ACCOUNTS
PROPORTION OF LOAN BALANCES TO LOAN AMOUNTS IS TOO HIGH
   39    14    2    33

**PAGE 1**

**EXHIBIT** 8
Infante

(4 of 9)

depobook.com

Infante Docs 0019

## APPLICANT

| | |
|---|---|
| **NAME:** CECILIA F INFANTE | |
| **S.S.N:** ▮▮▮▮▮ | **Date Received:** 10/05/16 |

### REGULATORY MESSAGES

| 1 | FACT ACT:THE NUMBER OF INQUIRIES ON THE CONSUMERS CREDIT FILE HAS ADVERSELY AFFECTED THE CREDIT SCORE | EFX01 |
| 1 | FACT ACT:THE NUMBER OF INQUIRIES ON THE CONSUMERS CREDIT FILE HAS ADVERSELY AFFECTED THE CREDIT SCORE WITH NO DEROGATORY INFORMATION FOUND ON THE FILE | TRU01 |
| 1 | FACT ACT:THE NUMBER OF INQUIRIES ON THE CONSUMERS CREDIT FILE HAS ADVERSELY AFFECTED THE CREDIT SCORE | XPN01 |

### PUBLIC RECORD INFORMATION

NO PUBLIC RECORDS FOUND

### CREDIT HISTORY

| E C O A | CREDITOR ACCOUNT NO | RPTD | LAST ACT | OPND | LIMIT OR HIGHEST CREDIT | PRESENT STATUS BALANCE OWING | PRESENT STATUS AMOUNT PAST DUE | TERMS PYMT AMT | TYPE/RATE VENDOR | NO MOS HIST REV | 30 DAYS | 60 DAYS | 90 DAYS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | BANKAMERICA ▮▮▮▮ (800) 669-6607 | 09/16 | 09/16 | 10/05 | 344000 | 143302 | 0 | 360 M 1369 | MTG 01 REAL ESTATE TRU 01 (EFX,XPN) 01/10 5 | 80 | 1 11111111111 11111111111 | | 35 |
| | LOAN MODIFIED – NOT GOVERNMENT PLAN CONVENTIONAL REAL ESTATE MORTGAGE | | | | | | | | | | | | |
| 1 | SPECIALIZED LOAN SERVI 8742 LUCENT BLVD STE 300 HIGHLANDS RANCH CO 80129 (720) 241-7200 | 08/16 | 08/16 | 10/05 | 86000 | 73297 | | 288 M 299E | MTG 09 REAL ESTATE XPN 01 (EFX,TRU) 07/16 9 01/12 9 08/16 9 | 99 | 1 99XXXXXXXXX XXXXXXXXXX | 1 | 4 |
| | TRANSFERRED TO RECOVERY CHARGE OFF | | | | | | | | | | | | |
| 2 | TRAVIS CREDIT UNION PO BOX 2069 VACAVILLE CA 95696 (800) 877-8328 | 09/16 | 09/16 | 01/14 | 25899 | 16857 | | 84 M 358 | INS 01 AUTO XPN 01 (EFX,TRU) | 33 | 0 11111111111 11111111111 | 0 | 0 |
| 1 | SEARS/CBNA ▮▮▮▮ | 09/16 | 09/16 | 08/14 | 4000 | 1462 | 0 | V 27 | REV 01 CREDIT CARD TRU 01 (EFX,XPN) | 24 | 0 11111111111 11111111111 | 0 | 0 |
| 1 | SYNCB/JCP ▮▮▮▮ (866) 227-5213 | 09/16 | 09/16 | 09/14 | 5300 | 1080 | 0 | V 35 | REV 01 CHARGE ACCOUNT TRU 01 (EFX,XPN) | 23 | 0 11111111111 11111111111 | 0 | 0 |
| 1 | DSNB MACYS ▮▮▮▮ | 09/16 | 09/16 | 08/05 | 900 | 397 | 0 | V 27 | REV 01 CHARGE ACCOUNT TRU 01 (EFX,XPN) | 82 | 0 111111111XX X11111111111 | 0 | 0 |
| 1 | AMEX DSNB ▮▮▮▮ | 09/16 | 09/16 | 06/16 | 7200 | 109 | 0 | V 27 | REV 01 CREDIT CARD TRU 01 (EFX,XPN) | 2 | 0 111 | 0 | 0 |
| 1 | SYNCB/TYDC ▮▮▮▮ (866) 864-2149 | 09/16 | 09/16 | 04/16 | 2200 | 22 | 0 | V 22 | REV 01 CREDIT CARD TRU 01 (EFX,XPN) | 5 | 0 111111 | 0 | 0 |
| 1 | AMEX ▮▮▮▮ (800) 874-2717 | 07/08 | 08/08 | 05/07 | 5000 | 0 | 0 | 0 | REV 01 CREDIT CARD TRU 01 (EFX,XPN) | 12 | 0 11111111111 1 | 0 | 0 |
| | CLOSED – CREDIT GRANTOR | | | | | | | | | | | | |

*(handwritten: FAX 720-241-7218)*

**PAGE 2**                                                                (5 of 9)

## APPLICANT

| NAME: | CECILIA F INFANTE | | |
|---|---|---|---|
| S.S.N : | ███████████ | Date Received: | 10/05/16 |

### CREDIT HISTORY

| E C O A | CREDITOR ACCOUNT NO | RPTD | LAST ACT | OPND | LIMIT OR HIGHEST CREDIT | PRESENT STATUS BALANCE OWING | AMOUNT PAST DUE | TERMS PYMT AMT | TYPE/RATE VENDOR | HISTORICAL STATUS NO MOS HIST REV | 30 DAYS | 60 DAYS | 90 DAYS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | BANKAMERICA (800) 669-6607 CLOSED CONVENTIONAL REAL ESTATE MORTGAGE | 02/07 | 02/07 | 09/05 | 620913 | 0 | 0 | 360 M 4134 | MTG 01 REAL ESTATE TRU 01 (EFX,XPN) | 14 | 0 111111111111 11 | 0 | 0 |
| 3 | BK OF AMER (800) 421-2110 CLOSED – CREDIT GRANTOR | 07/11 | 05/11 | 03/07 | 3100 | 0 | 0 | 0 | REV 01 CREDIT CARD TRU 01 | 52 | 0 111111111111 111111111111 | 0 | 0 |
| 1 | BK OF AMER (800) 421-2110 CLOSED – CREDIT GRANTOR | 11/10 | 07/10 | 04/08 | 6000 | 0 | 0 | 0 | REV 01 CREDIT CARD TRU 01 (EFX,XPN) | 31 | 0 111111111111 111111111111 | 0 | 0 |
| 1 | CAPITAL ONE (800) 955-7070 | 09/16 | 10/10 | 03/05 | 2400 | 0 | 0 | 0 | REV 01 BUSINESS LN TRU 01 (EFX,XPN) | 82 | 0 111111111111 111111111111 | 0 | 0 |
| 1 | CCB/ZALES (844) 271-2708 | 03/16 | 05/13 | 11/05 | 5000 | 0 | 0 | 0 | REV 01 CHARGE ACCOUNT TRU 01 (EFX,XPN) | 82 | 0 111111111111 111111111111 | 0 | 0 |
| 2 | CHASE BANK USA, NA (800) 955-9900 ACCOUNT CLOSED AT CONSUMERS REQUEST PAID AND CLOSED | 02/07 | 07/06 | 02/00 | 500 | 0 | | M | REV 01 CREDIT CARD EFX 01 (XPN) | 84 | 0 | 0 | 0 |
| 3 | CHASE CARD (800) 432-3117 CLOSED | 03/09 | 12/08 | 05/07 | 1500 | 0 | 0 | 0 | REV 01 CREDIT CARD TRU 01 (EFX,XPN) | 21 | 0 111111111111 1111111111 | 0 | 0 |
| 3 | CHASE CARD ███████████ PO BOX 15298 WILMINGTON DE 19850 (800) 432-3117 | 10/16 | 10/16 | 07/15 | 7700 | 0 | 0 | V 25 | REV 01 CREDIT CARD XPN 01 (EFX,TRU) | 15 | 0 111111111111 111 | 0 | 0 |
| 1 | CITIZNSBNKNA (203) 551-3548 CLOSED – CONSUMER | 06/09 | 11/08 | 05/07 | 3500 | 0 | 0 | 0 | REV 01 CREDIT CARD TRU 01 (EFX,XPN) | 24 | 0 111111111111 111111111111 | 0 | 0 |
| 1 | DISCOVERBANK (800) 347-2683 | 09/16 | 11/13 | 05/07 | 1800 | 0 | 0 | 0 | REV 01 CREDIT CARD TRU 01 (EFX,XPN) | 82 | 0 111111111111 111111111111 | 0 | 0 |
| 2 | ELAN FIN SVC (800) 451-3484 CLOSED – CONSUMER | 07/12 | 02/12 | 03/07 | 2000 | 0 | 0 | 0 | REV 01 CREDIT CARD TRU 01 (EFX,XPN) | 64 | 0 111111111111 111111111111 | 0 | 0 |
| 1 | MILITARYSTAR | 03/15 | 03/15 | 08/11 | 8200 | 0 | 0 | 0 | REV 01 CHARGE ACCOUNT TRU 01 (EFX,XPN) | 42 | 0 111111111111 111111111111 | 0 | 0 |
| 1 | MILITARYSTAR | 09/11 | | 04/11 | 5700 | 0 | 0 | 0 | REV 01 CHARGE ACCOUNT TRU 01 (XPN) | 4 | 0 11111 | 0 | 0 |

Infante Docs 0021

## APPLICANT

| NAME: | CECILIA E INFANTE | Date Received: | 10/05/16 |
|-------|-------------------|----------------|----------|
| S.S.N : | ███████ | | |

### CREDIT HISTORY

| E C O A | CREDITOR ACCOUNT NO | RPTD | LAST ACT | OPND | LIMIT OR HIGHEST CREDIT | PRESENT STATUS BALANCE OWING | PRESENT STATUS AMOUNT PAST DUE | TERMS PYMT AMT | TYPE/RATE VENDOR | HISTORICAL STATUS NO MOS HIST REV | 30 DAYS | 60 DAYS | 90 DAYS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | OCWEN LOAN (561) 682-8000 CLOSED | 02/07 | 02/07 | 09/05 | 155229 | 0 | 0 | 300 M 1197 | MTG 01 REAL ESTATE TRU 01 (EFX,XPN) | 4 | 0 11111 | 0 | 0 |
| 3 | SEARS/CBNA ██████ CLOSED – CREDIT GRANTOR | 09/16 | 07/12 | 05/00 | 10000 | 0 | 0 | 0 | REV 01 CHARGE ACCOUNT TRU 01 (EFX,XPN) | 82 | 0 111111111111 111111111111 | 0 | 0 |
| 1 | SYNCB/JCP ██████ (866) 227-5213 CREDIT CARD LOST OR STOLEN | 09/16 | 11/14 | 09/14 | 1500 | 0 | 0 | 0 | REV 01 CHARGE ACCOUNT TRU 01 (EFX,XPN) | 24 | 0 111111111111 111111111111 | 0 | 0 |
| 2 | SYNCB/JCP ██████ (866) 227-5213 | 09/16 | 07/15 | 08/98 | 6100 | 0 | 0 | 0 | REV 01 CHARGE ACCOUNT TRU 01 (EFX,XPN) | 82 | 0 111111111111 111111111111 | 0 | 0 |
| 1 | SYNCB/LENSCR ██████ (866) 396-8254 INACTIVE ACCOUNT | 09/16 | 12/13 | 06/05 | 1000 | 0 | 0 | 0 | REV 01 CHARGE ACCOUNT TRU 01 (EFX,XPN) | 82 | 0 111111111111 111111111111 | 0 | 0 |
| 1 | SYNCB/LUXURY ██████ (866) 396-8254 | 09/16 | 03/15 | 05/14 | 2500 | 0 | 0 | 0 | REV 01 CHARGE ACCOUNT TRU 01 (EFX,XPN) | 28 | 0 111111111111 111111111111 | 0 | 0 |
| 2 | SYNCB/MERVYN #60459010837 (800) 480-5014 CLOSED – CREDIT GRANTOR | 04/15 | 05/11 | 05/00 | 872 | 0 | 0 | 0 | REV 01 CHARGE ACCOUNT TRU 01 (EFX,XPN) | 82 | 0 111111111111 111111111111 | 0 | 0 |
| 9 | TARGET N.B. ██████ PO BOX 673 MINNEAPOLIS MN 55440 | 03/12 | 03/12 | 08/03 | 4800 | 0 | 0 | 0 | REV 01 CREDIT CARD TRU 01 (EFX,XPN) | 32 | 0 111111111111 111111111111 | 0 | 0 |
| 1 | TRAVIS CU ██████ (707) 449-4000 CLOSED | 06/14 | 06/14 | 02/14 | 1000 | 0 | 0 | 12 M 87 | INS 01 SECURED TRU 01 (EFX,XPN) | 3 | 0 1111 | 0 | 0 |
| 1 | WFFINANCE ██████ 800 WALNUT ST DES MOINES IA 50309 (800) 346-3009 PAID ACCOUNT/ZERO BALANCE | 08/08 | 08/08 | 11/05 | 2479 | 0 | | 34 M | INS 01 INST SALES XPN 01 (EFX,TRU) | 34 | 0 X11111111111 111111111111 | 0 | 0 |

### INQUIRIES IN THE LAST 120 DAYS

| --DATE-- | ECOA | KOB | MEMBER–NO | | |
|----------|------|-----|-----------|---|---|
| 10/05/16 | 1 | QM | 2004946 | TRAVIS CREDIT UNION | TRU01 |
| 06/30/16 | 1 | DC | 458DC00182 | MACYS/DSNB | EFX01 |

Infante Docs 0022

## APPLICANT

| | | |
|---|---|---|
| NAME: | CECILIA E INFANTE | |
| S.S.N : | ▓▓▓▓▓▓▓▓ | Date Received:   10/05/16 |

### ADDITIONAL INFORMATION

1   MISCELLANEOUS                                                          CBC99

    A SCORE DISCLOSURE LETTER WAS MAILED TO THE APPLICANT ON 10/05/2016.
    THE REPOSITORIES ACCESSED WERE: EFX TRU XPN

### CONSUMER REFERRAL INFORMATION

EQUIFAX INFORMATION SERVICES LLC                                          EFX064
WWW.EQUIFAX.COM
P O BOX 740241
ATLANTA, GA 30374-0241
800-685-1111

TRANSUNION                                                               TRU12FF
HTTP://WWW.TRANSUNION.COM
2 BALDWIN PLACE, P.O. BOX 1000
CHESTER, PA 19016
800-888-4213

EXPERIAN                                                                 XPNTCA2
WWW.EXPERIAN.COM
701 EXPERIAN PARKWAY, PO BOX 2002
ALLEN, TX 75013
888-397-3742

ECOA Key: 1=Borrower, 2=Joint, 3=Authorized User, 4=Joint, 5=Co-Maker, 7=Maker, 8=Co-Borrower, 9=Terminated, 0=Undesignated
Applicant Account Ownership (Joint reports): B=Primary Applicant, C=Co-Applicant

### DISCLOSURE

**NATIONAL CREDIT REPOSITORY (IES) ACCESSED FOR THIS CREDIT REPORT: EQUIFAX, TRANSUNION, EXPERIAN**
Reporting bureau certifies with contractual requirements governing check of public records as well as credit information.
CBCINNOVIS CERTIFIES THIS REPORT CONTAINS INFORMATION SUPPLIED BY THE REPOSITORIES NAMED ABOVE. WHILE THIS REPORT MAY
CONTAIN DUPLICATE INFORMATION THAT HAS NOT BEEN VERIFIED BY CBCINNOVIS, THE CREDIT REPORT MEETS THE STANDARD SET FORTH BY
FNMA, FHLMC, HUD, FHA, AND VA GUIDELINES FOR REAL ESTATE TRANSACTIONS

### END OF REPORT

PAGE 5                                                                  (8 of 9)

## APPLICANT

| NAME: | CECILIA F INFANTE | | Date Received: | 10/05/16 |

| DEROGATORY SUMMARY |

| E C O A | CREDITOR ACCOUNT NO | RPTD | LAST ACT | OPND | LIMIT OR HIGHEST CREDIT | PRESENT STATUS BALANCE OWING | AMOUNT PAST DUE | TERMS PYMT AMT | TYPE/RATE VENDOR | HISTORICAL STATUS NO MOS HIST REV | 30 DAYS | 60 DAYS | 90 DAYS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | BANKAMERICA ████████ (800) 669-6607 | 09/16 | 09/16 | 10/05 | 344000 | 143302 LOAN MODIFIED – NOT GOVERNMENT PLAN CONVENTIONAL REAL ESTATE MORTGAGE | 0 | 360 M 1369 | MTG 01 REAL ESTATE TRU 01 (EFX,XPN) | 80 01/10 5 | 1 1111111111111 1111111111111 | 0 | 35 |
| 1 | SPECIALIZED LOAN SERVI 8742 LUCENT BLVD STE 300 HIGHLANDS RANCH CO 80129 (720) 241-7200 | 08/16 | 08/16 | 10/05 | 86000 | 73297 TRANSFERRED TO RECOVERY CHARGE OFF | | 288 M 299E | MTG 09 REAL ESTATE XPN 01 (EFX,TRU) | 99 07/16 9 08/16 9 | 1 99XXXXXXXXXX XXXXXXXXXXXX 01/12 9 | 1 | 4 |

| **END OF DEROGATORY REPORT** |

| PAGE 1 | | *(9 of 9)* |

## TRAVIS CREDIT UNION
### Your Credit Score and the Price
### You Pay for Credit

ONE TRAVIS WAY
VACAVILLE CA 95687

LENDER CASE #: 28610
COMPUTER ID #: 716279160040766

## Applicant

NAME:   CECILIA F INFANTE
          1931 DIAMOND WY
          FAIRFIELD CA 94533

## Your Credit Score

| Your credit score | +698<br>Source: Equifax<br>Date:  10/05/2016 |
|---|---|

## Understanding Your Credit Score

| What you should know about credit scores | Your credit score is a number that reflects the information in your credit report.<br><br>Your credit report is a record of your credit history. It includes information about whether you pay your bills on time and how much you owe to creditors.<br><br>Your credit score can change, depending on how your credit history changes. |
|---|---|
| How we use your credit score | Your credit score can affect whether you can get a loan and how much you will have to pay for that loan. |
| The range of scores | Equifax scores range from a low of 334 to a high of 818.<br><br>Generally, the higher your score, the more likely you are to be offered better credit terms. |
| How your score compares to the scores of other consumers | Equifax  |
| Key factors that adversely affected your credit score | Equifax   SERIOUS DELINQUENCY<br>TOO MANY INQUIRIES IN THE LAST 12 MONTHS<br>TOO MANY CONSUMER FINANCE COMPANY ACCOUNTS<br>LENGTH OF TIME ACCOUNTS HAVE BEEN ESTABLISHED<br>THE NUMBER OF INQUIRIES HAS ADVERSELY AFFECTED THE CREDIT SCORE |

Infante Docs 0025

## Checking Your Credit Report

| | |
|---|---|
| **What if there are mistakes in your credit report?** | You have a right to dispute any inaccurate information in your credit report. If you find mistakes on your credit report, contact the consumer reporting agency.<br><br>It is a good idea to check your credit report to make sure the information it contains is accurate. |
| **How can you obtain a copy of your credit report?** | Under Federal law, you have the right to obtain a free copy of your credit report from each of the nationwide consumer reporting agencies once a year.<br><br>To order your free annual credit report--<br><br>*By telephone:* Call toll-free: 1-877-322-8228<br><br>*On the web:* Visit www.annualcreditreport.com<br><br>*By mail:*     Mail your completed Annual Credit Report Request Form (which you can obtain from the Federal Trade Commission's website at http://www.ftc.gov/bcp/conline/include/requestformfinal.pdf) to:<br><br>             Annual Credit Report Request Service<br>             P.O. Box 105281<br>             Atlanta, GA 30348-5281 |
| **How can you get more information?** | For more information about credit reports and your rights under Federal law, visit the Consumer Financial Protection Bureau's website at www.consumerfinance.gov/learnmore. |

## Notice to the Home Loan Applicant

In connection with your application for a home loan, the lender must disclose to you the score that a consumer reporting agency distributed to users and the lender used in connection with your home loan, and the key factors affecting your credit scores.

The credit score is a computer generated summary calculated at the time of the request and based on information that a consumer reporting agency or lender has on file. The scores are based on data about your credit history and payment patterns. Credit scores are important because they are used to assist the lender in determining whether you will obtain a loan. They may also be used to determine what interest rate you may be offered on the mortgage. Credit scores can change over time, depending on your conduct, how your credit history and payment patterns change, and how credit scoring technologies change.

Because the score is based on information in your credit history, it is very important that you review the credit-related information that is being furnished to make sure it is accurate. Credit records may vary from one company to another.

If you have questions about your credit score or the credit information that is furnished to you, contact the consumer reporting agency at the address and telephone number provided with this notice, or contact the lender, if the lender developed or generated the credit score. The consumer reporting agency plays no part in the decision to take any action on the loan application and is unable to provide you with specific reasons for the decision on a loan application.

If you have questions concerning the terms of the loan, contact the lender.

---

**Acknowledgement**

I have received the notices titled, "Your Credit Score and the Price You Pay for Credit" and the "Notice to the Home Loan Applicant."

Applicant's Signature: _____  Date: _____

Applicant's Name: _____
                (Print)

## Contact Information for Credit Reporting Agencies

| EQUIFAX INFORMATION SERVICES | EXPERIAN | TRANSUNION CONSUMER RELATIONS |
|---|---|---|
| www.equifax.com | www.experian.com/reportaccess | www.transunion.com/myoptions |
| PO BOX 740241 | 701 EXPERIAN PARKWAY | 2 BALDWIN PLACE |
| ATLANTA, GA 30374-0241 | P.O. BOX 2002 | P.O. BOX 1000 |
| 800-685-1111 | ALLEN, TX 75013 | CHESTER, PA 19022 |
| | 888-397-3742 | 800-888-4213 |

1931 Diamond Way
Fairfield, CA 94533
(707) 372-9885

October 20, 2016

Specialized Loan Servicing, LLC
8742 Lucent Blvd, Suite 300
Highlands Ranch, CO 80129

Re: ▮▮▮▮▮▮▮

Dear Sir/Madam:

I am disputing the report recorded in my Credit history. Accordingly it was listed that as of August 2016 my mortgage account was "Transferred to Recovery Charge Off". I believe this is not the case. Please rectify the report, and send me a letter of explanation. Thanks.

Sincerely,

Cecilia F. Infante

1





8742 Lucent Boulevard ▪ Suite 300 ▪ Highlands Ranch, CO 80129

☎ 800-315-4757
🖷 720-241-7218

November 17, 2016

Cecilia F. Infante
1931 Diamond Way
Fairfield, CA 94533

RE: Loan Number: ███████

Dear Cecilia F. Infante,

This letter is in response to your correspondence dated October 20, 2016, and received by Specialized Loan Servicing LLC ("SLS") on October 20, 2016, regarding credit reporting for the above-referenced mortgage account.

Due to its severe delinquency, this account was charged off for credit reporting purposes on January 26, 2012. Credit reporting ceased at that time. Effective March, 2012, this loan was modified. A copy of the modification is enclosed. The declining balance of the account is now being reported. The account was last reported on November 10, 2016 as an unpaid balance reported as a charge-off. The last reported balance reported was $72,727.00. In accordance with the Fair Credit Reporting Act (FCRA), we are required to report payments accurately as they were received; therefore, credit cannot be corrected as a courtesy. If you believe your credit was incorrectly reported, please provide a copy of your official credit report from TransUnion, Experian, or Equifax, with specific instances noted. We will research these upon receipt.

In researching your account, we have found no errors. You have a right to request the documents relied upon in reaching this determination by contacting us at the number below, but please note that SLS has already enclosed the same for your reference as outlined above.

If you have any questions regarding this information, please contact our Recovery Department toll free at 1-800-268-9706, Monday-through Thursday, 6:00 a.m. until 9:00 p.m. MT, Fridays 6:00 a.m. until 6:00 p.m. MT and Saturdays 7:00 a.m. until 11:00 a.m. MT.

Sincerely,

Shaquan, Teller ID# 19974
Customer Care Support
Specialized Loan Servicing LLC

Enclosure(s)

**PLEASE SEE IMPORTANT DISCLOSURES ON FOLLOWING PAGE**



Nov 28 16 08:38a                                                              p.2

1931 Diamond Way<br>
Fairfield, CA 94533<br>
(707) 372-9885

November 28, 2016

Specialized Loan Servicing, LLC
8742 Lucent Blvd, Suite 300
Highlands Ranch, CO 80129

Re: ████████

To Whom It May Concern:

I received the SLS letter dated November 17, 2016 in response to my request to correct the credit reporting SLS made to the Credit Bureau, during the month of July, August, September and October 2016 respectively to be specific. The Experian Credit Agency listed, a copy herein attached, that I "Failed to Pay" those months. Those were incorrect.

As part of the modified loan agreement signed between SLS and me, which is on file, you know I have been paying the agreed payment since March 2012 without fail, and/or without late. It has been over four (4) years of serious up to date payment, so please help me out to correct this.

I am also requesting for the SLS to rightfully correct the credit reported so I can make an arrangement to fully pay my obligation to SLS during future refinancing. Thank you.

Sincerely,

Cecilia F. Infante

1



Nov 28 16 08:39a                                                          p.3

11/2C/2016                                          Account Details

SPECIALIZED LOAN SERVI

## ACCOUNT DETAILS

| | |
|---|---|
| Account Name | SPECIALIZED LOAN SERVI |
| Account # | |
| Account Type | Second Mortgage |
| Date Opened | Oct 1, 2005 |
| Account Status | Closed |
| Payment Status | Charge-off |
| Status Updated | Jan 1, 2012 |
| Balance | $72,727 |
| Balance Updated | Oct 31, 2016 |
| Original Balance | $86,000 |
| Monthly Payment | |
| Past Due Amount | |
| Highest Balance | |
| Terms | 288 Months |
| Responsibility | Individual |
| Comments | |

### Is everything correct?

Be sure to review your Credit Report for any unfamiliar information.
If you find inaccurate information, you can either dispute the
information online or via postal mail.

View Our Disputes Guide

### CONTACT INFORMATION

8742 LUCENT BLVD STE 300
HIGHLANDS RANCH, CO 80129
(720) 241-7200

Infante Docs 0032

Nov 28 16 08:39a                                                                    p.4

11/28/2016   -                                                    Account Details

## PAYMENT HISTORY

|  | 2009 |  |  |  | 2010 |  |  |  | 2011 |  |  |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Jan | Feb | Mar | Apr | Jan | Feb | Mar | Apr | Jan | Feb | Mar | Apr |
| May | Jun | Jul | Aug | May | Jun | Jul | Aug | May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec | Sep | Oct | Nov | Dec | Sep | Oct | Nov | Dec |

|  | 2012 |  |  |  | 2013 |  |  |  | 2014 |  |  |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Jan | Feb | Mar | Apr | Jan | Feb | Mar | Apr | Jan | Feb | Mar | Apr |
| May | Jun | Jul | Aug | May | Jun | Jul | Aug | May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec | Sep | Oct | Nov | Dec | Sep | Oct | Nov | Dec |

|  | 2015 |  |  |  | 2016 |  |  |
|---|---|---|---|---|---|---|---|
| Jan | Feb | Mar | Apr | Jan | Feb | Mar | Apr |
| May | Jun | Jul | Aug | May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec | Sep | Oct | Nov | Dec |

OK

30  30 Days Late

60  60 Days Late

90  90 Days Late

120+ Days Late

Failed to Pay

Negative

Infante Docs 0033

1931 Diamond Way
Fairfield, CA 94533
(707) 372-9885

November 28, 2016

Specialized Loan Servicing, LLC
8742 Lucent Blvd, Suite 300
Highlands Ranch, CO 80129

Re:▮▮▮▮▮▮

To Whom It May Concern:

I received the SLS letter dated November 17, 2016 in response to my request to correct the credit reporting SLS made to the Credit Bureau, during the month of July, August, September and October 2016 respectively to be specific. The Experian Credit Agency listed, a copy herein attached, that I "Failed to Pay" those months. Those were incorrect.

As part of the modified loan agreement signed between SLS and me, which is on file, you know I have been paying the agreed payment since March 2012 without fail, and/or without late. It has been over four (4) years of serious up to date payment, so please help me out to correct this.

I am also requesting for the SLS to rightfully correct the credit reported so I can make an arrangement to fully pay my obligation to SLS during future refinancing. Thank you.

Sincerely,

*Cecilia F. Infante*
Cecilia F. Infante

1

Infante Docs 0034

11/28/2016                                          Account Details

SPECIALIZED LOAN SERVI

█████████████                                                                    Closed

## ACCOUNT DETAILS

| | |
|---|---|
| Account Name | SPECIALIZED LOAN SERVI |
| Account # | ████████████ |
| Account Type | Second Mortgage |
| Date Opened | Oct 1, 2005 |
| Account Status | Closed |
| Payment Status | Charge-off |
| Status Updated | Jan 1, 2012 |
| Balance | $72,727 |
| Balance Updated | Oct 31, 2016 |
| Original Balance | $86,000 |
| Monthly Payment | - |
| Past Due Amount | - |
| Highest Balance | - |
| Terms | 288 Months |
| Responsibility | Individual |
| Comments | |

> **Is everything correct?**
>
> Be sure to review your Credit Report for any unfamiliar information.
> If you find inaccurate information, you can either dispute the
> information online or via postal mail.
>
> View Our Disputes Guide

## CONTACT INFORMATION

8742 LUCENT BLVD STE 300
HIGHLANDS RANCH, CO 80129
(720) 241-7200

https://www.freecreditreport.com/elf/reports/experian/2016112707384034AG/accounts/details/19

1/2

Infante Docs 0035

11/26/2016                                              Account Details

# PAYMENT HISTORY

| | **2009** | | | | **2010** | | | | **2011** | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Jan | Feb | Mar | Apr | Jan | Feb | Mar | Apr | Jan | Feb | Mar | Apr |
| | | | | OK | OK | OK | OK | OK | OK | OK | OK |
| May | Jun | Jul | Aug | May | Jun | Jul | Aug | May | Jun | Jul | Aug |
| | | | | OK | OK | OK | OK | OK | OK | 30 | 60 |
| Sep | Oct | Nov | Dec | Sep | Oct | Nov | Dec | Sep | Oct | Nov | Dec |
| | | OK | OK | OK | OK | OK | OK | 90 | 120 | 120 | 120 |

| | **2012** | | | | **2013** | | | | **2014** | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Jan | Feb | Mar | Apr | Jan | Feb | Mar | Apr | Jan | Feb | Mar | Apr |
| FP | | | | | | | | | | | |
| May | Jun | Jul | Aug | May | Jun | Jul | Aug | May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec | Sep | Oct | Nov | Dec | Sep | Oct | Nov | Dec |

| | **2015** | | | | **2016** | | |
|---|---|---|---|---|---|---|---|
| Jan | Feb | Mar | Apr | Jan | Feb | Mar | Apr |
| May | Jun | Jul | Aug | May | Jun | Jul | Aug |
| | | | | | | FP | FP |
| Sep | Oct | Nov | Dec | Sep | Oct | Nov | Dec |
| | | | | FP | FP | | |

| | | | | |
|---|---|---|---|---|
| OK | OK | | 120 | 120+ Days Late |
| 30 | 30 Days Late | | FP | Failed to Pay |
| 60 | 60 Days Late | | N | Negative |
| 90 | 90 Days Late | | | |



8742 Lucent Boulevard • Suite 300 • Highlands Ranch, CO 80129        800-315-4757
                                                                      720-241-7218

December 23, 2016

Cecilia F. Infante                              Re: Loan Number: ▮▮▮▮▮▮
1931 Diamond Way
Fairfield, CA 94533

Dear Cecilia F. Infante,

This letter is in response to your correspondence dated November 28, 2016 and received by Specialized Loan Servicing LLC ("SLS") on December 5, 2016 regarding credit reporting for the above-referenced mortgage account.

This account was charged-off for credit reporting on January 26, 2012. Credit reporting ceased at that time. Due to the 2012 modification, we are reporting a declining balance on the account. SLS is reporting information to the credit reporting agencies accurately, in accordance with the Fair Credit Reporting Act ("FCRA").

In researching your account, we have found no errors. You have a right to request the documents relied upon in reaching this determination by contacting us at the number below, but please note that SLS has already enclosed the same for your reference as outlined above.

If have any questions regarding this information, please contact Customer Care toll free at 1-800-315-4757, Monday through Friday, 6:00 a.m. until 6:00 p.m. MT or TDD 1-800-268-9419, Monday through Friday, 8:00 a.m. until 5:00 p.m. MT.

Sincerely,

Christopher, Teller ID# 19904
Customer Care Support
Specialized Loan Servicing LLC

**SPECIALIZED LOAN SERVICING LLC IS REQUIRED BY FEDERAL LAW TO ADVISE YOU THAT THIS COMMUNICATION IS FROM A DEBT COLLECTOR.**

BANKRUPTCY NOTICE - IF YOU ARE A CUSTOMER IN BANKRUPTCY OR A CUSTOMER WHO HAS RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT: PLEASE BE ADVISED THAT THIS NOTICE IS TO INFORM YOU OF THE STATUS OF THE MORTGAGE SECURED BY THE SUBJECT PROPERTY. THIS NOTICE CONSTITUTES NEITHER A DEMAND FOR PAYMENT NOR A NOTICE OF PERSONAL LIABILITY TO ANY RECIPIENT HEREOF, WHO MIGHT HAVE RECEIVED A DISCHARGE OF SUCH DEBT IN ACCORDANCE WITH APPLICABLE BANKRUPTCY LAWS OR WHO MIGHT BE SUBJECT TO THE AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES BANKRUPTCY CODE. IF YOU RECEIVED A DISCHARGE OF THE DEBT IN BANKRUPTCY, WE ARE AWARE THAT YOU HAVE NO PERSONAL OBLIGATION TO REPAY THE DEBT. WE RETAIN THE RIGHT TO ENFORCE THE LIEN AGAINST THE COLLATERAL PROPERTY, WHICH HAS NOT BEEN DISCHARGED IN YOUR BANKRUPTCY, IF ALLOWED BY LAW AND/OR CONTRACT. IF YOU HAVE QUESTIONS, PLEASE CONTACT US AT 1-800-306-6057.

EXHIBIT
14
Infante

Setting the Standard
www.sls.net


**Experian**
A world of insight

Prepared for:  CECILIA F INFANTE
Date:  December 05, 2016
Report number: ██████████

*Page 1 of 26*

Infante Docs 0098

# Your personal credit report

In response to your recent request, we're pleased to send you this credit report. Your credit information can change over time, so we recommend you keep track of any changes by signing up for credit monitoring at **experian.com/monitor**.



EXHIBIT
15
Infante
7.18.17
depobook.com

PO Box 9701
Allen, TX 75013

0002482 01 AB 1.167 **AUTO  3 0 27212 94533-587631  .C03-P024841
CECILIA F INFANTE
1931 DIAMOND WAY
FAIRFIELD CA 94533-5876





Scan me with your smart phone
for special offers from Experian.

## What you'll find inside:

2   About the information in this report
2   Tools to manage your personal credit
3   Disputing information in this report
5   Your accounts that may be considered negative
19  Your accounts in good standing
21  Record of requests for your credit history
23  Your personal information
24  Dispute form
    Notification of Rights

## For your attention

Visit **experian.com/view** to view this credit report instantly online. You may also dispute most information directly and easily within the online report.



**⠿ Experian**
A world of insight

Infante Docs 0100

## Your accounts that may be considered negative

The most common items in this section are late payments, accounts that have been charged off or sent to collection, bankruptcies, liens, and judgments. It also may contain items that are not necessarily negative, but that a potential creditor might want to review more closely, such as an account that has been settled or transferred. This information is generally removed seven years from the initial missed payment that led to the delinquency. Missed payments and most public record items may remain on the credit report for up to seven years, except Chapters 7, 11 and 12 bankruptcies, which may remain for up to 10 years. Unpaid tax liens may remain for up to 10 years from the filing date, and paid tax liens may remain for up to seven years from the filing date. Transferred accounts that have not been past due remain up to 10 years after the date the account was transferred.

### Payment history legend

| | | | |
|---|---|---|---|
| **CUR** | Current/Terms of agreement met | **VS** | Voluntarily surrendered |
| **30** | Account 30 days past due | **RPO** | Repossession |
| **60** | Account 60 days past due | **PBC** | Paid by creditor |
| **90** | Account 90 days past due | **IC** | Insurance claim |
| **120** | Account 120 days past due | **G** | Claim filed with government |
| **150** | Account 150 days past due | **DC** | Defaulted on contract |
| **180** | Account 180 days past due | **C** | Collection |
| **CRD** | Creditor received deed | **CO** | Charge off |
| **FP** | Foreclosure proceedings started | **CLS** | Closed |
| **F** | Foreclosed | **ND** | No data for this time period |

## ▦ Credit items

**BK OF AMER**
4909 SAVARESE CIR
TAMPA FL 33634
**Phone number**
(800) 669 6807
**Partial account number**
████
**Address identification number**
0190613099
**Mortgage Identification Number**
100180100002940607

**Date opened**
Oct 2005
**First reported**
May 2006
**Date of status**
Feb 2013

**Type**
Mortgage
**Terms**
30 Years
**Monthly payment**
$1,369

**Credit limit or original amount**
$344,000
**High balance**
Not reported

**Recent balance**
$142,637 as of Nov 2016
**Recent payment**
$1,369

**Responsibility**
Individual
**Status**
Open.
By Oct 2019, this account is scheduled to go to a positive status.
**Comment:**
Loan Modified

### Payment history

**2016**
NOV OCT SEP AUG JUL JUN MAY APR MAR FEB
**2015**
JAN DEC NOV OCT SEP AUG JUL JUN MAY APR MAR FEB
**2014**
JAN DEC NOV OCT SEP AUG JUL JUN MAY APR MAR FEB
**2013**
JAN DEC NOV OCT SEP AUG JUL JUN

**2012**
MAY APR MAR FEB JAN DEC

*Account history - If your creditor reported your account balances to us, we list them in this section as additional information about your account. Your balance history may also include your credit limit and high balance or the original loan amount for an installment loan. This section also includes the scheduled payment amounts, amounts actually paid and the dates those payments were made. ND: No Data.*

| | Oct16 | Sep16 | Aug16 | Jul16 | Jun16 | May16 | Apr16 | Mar16 | Feb16 | Jan16 | Dec15 | Nov15 | Oct15 | Sep15 | Aug15 | Jul15 | Jun15 | May15 | Apr15 | Mar15 | Feb15 | Jan15 | Dec14 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **AB** | 142,970 | 143,302 | 143,632 | 143,960 | 144,287 | 144,612 | 144,935 | 145,257 | 145,577 | 145,911 | 146,228 | 146,543 | 146,857 | 147,169 | 147,480 | 147,789 | 148,096 | 148,402 | 148,706 | 149,009 | 149,311 | 149,610 | 149,909 |
| **DPR** | Oct04 | Sep02 | Aug02 | Jul06 | Jun01 | May02 | Apr04 | Mar01 | Feb02 | Jan04 | Dec02 | Nov04 | Oct05 | Sep02 | Aug04 | Jul02 | Jun02 | May04 | Apr02 | Mar05 | Jan30 | Jan08 | Dec02 |

**AB** = Account balance ($)   **DPR** = Date payment received   **SPA** = Scheduled payment amount ($)   **AAP** = Actual amount paid ($)

0088307350




Experian
A world of insight

Prepared for: CECILIA F INFANTE
Date: December 05, 2016
Report number: 3648-4062-61

*Page 4 of 26*

Infante Docs 0101

## Your accounts that may be considered negative (continued)

1,369 1,369 1,369 1,369 1,255 1,255 1,255 1,255 1,210 1,210 1,210 1,210 1,210 1,210 1,210 1,210 1,210 1,210 1,210 1,210 1,402 1,402 1,402
1,369 1,369 1,369 1,369 1,255 1,255 1,255 1,225 1,210 1,210 1,210 1,210 1,210 1,210 1,210 1,210 1,210 1,210 1,210 1,210 1,402 1,402 1,402

➤ *The original amount of this account was $344,000.*

| | | | |
|---|---|---|---|
| **SPECIALIZED LOAN SERVICI** | **Date opened** | **Type** | **Credit limit or** |
| 8742 LUCENT BLVD STE 300 | Oct 2005 | Mortgage | **original amount** |
| HIGHLANDS RANCH CO 80129 | **First reported** | **Terms** | $86,000 |
| **Phone number** | Jul 2006 | 24 Years | **High balance** |
| (720) 241 7200 | **Date of status** | **Monthly** | Not reported |
| **Partial account number** | Jan 2012 | **payment** | |
| ▇▇▇▇▇▇ | | Not reported | |

**Recent balance**
$72,727 as of Oct 2016

**Recent payment**
$352

**Address identification number**
0190613099

**Responsibility**
Individual
**Status**
Account charged off. Balloon payment of $58,713 due Nov 2020. $87,581 written off.
This account is scheduled to continue on record until Apr 2018.
**Comment**
Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act).
**Comment:**
Transferred to recovery.

**Payment history**

| 2016 | | | | | | | | | | 2015 | | | | | | | | | | | | 2014 | | | | | | | | | | | | | 2013 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB | JAN | DEC | NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB | JAN | DEC | NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB | JAN | DEC | NOV | OCT | SEP | AUG | JUL | JUN | MAY |
| ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND |

| 2012 | | | | | | | | | | 2011 | | | | | | | | | | | | 2010 | | | | | | | | | | | | | 2009 | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| APR | MAR | FEB | JAN | DEC | NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB | JAN | DEC | NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB | JAN | DEC | NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB | JAN | DEC | NOV |
| ND | ND | ND | ND | ND | CO | | | | | | | | | | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | | |

**Account history** - *If your creditor reported your account balances to us, we list them in this section as additional information about your account. Your balance history may also include your credit limit and high balance or the original loan amount for an installment loan. This section also includes the scheduled payment amounts, amounts actually paid and the dates those payments were made.* ND: No Data.

▇▇▇ = Account balance ($)    ▇▇▇ = Date payment received    ▇▇▇ = Scheduled payment amount ($)    ▇▇▇ = Actual amount paid ($)

| | Sep16 | Aug16 |
|---|---|---|
| ▇▇▇ | 73,010 | 73,297 |
| DPR | Sep01 | Aug03 |
| SPA | ND | ND |
| ▇▇▇ | 352 | 352 |

➤ *The original amount of this account was $86,000.*

7252 43 30 0002482 0002 0023421

\*\*\* 370315452-004 \*\*\*
P.O. Box 2000
Chester, PA 19016-2000

12/05/2016



P6DN6H00301270-I023109-027901631

CECILIA F. INFANTE
1931 DIAMOND WAY
FAIRFIELD, CA 94533-5876

Find an inaccuracy on your report?
Submit your dispute online at:
http://transunion.com/disputeonline

Enclosed is the TransUnion Personal Credit Report that you requested. As a trusted leader in the consumer credit information industry, TransUnion takes the accuracy of your credit information very seriously. We are committed to providing the complete and reliable credit information that you need to participate in everyday transactions and purchases.

If you believe an item of information to be incomplete or inaccurate, please alert us immediately. We will investigate the data and notify you of the results of our investigation.

To make it easier to request an investigation, you can now submit your request online, **24 hours a day, 7 days a week.** You must have an active email address to use the online service. Please note that your email address will only be used for communicating with you regarding your request and the results of our investigation. Your email address will not be shared with any non-TransUnion entities.

**To submit an online request for investigation:**

**Step 1.** Go to the TransUnion online investigation service at http://transunion.com/disputeonline
**Step 2.** Follow the instructions provided by the web site.

Once submitted, you will receive online confirmation of your request. You will also be notified by email when we complete our investigation and your results will be available online. You can check the status of your investigation online by logging into your account.

Thank you for helping ensure the accuracy of your credit information.

TransUnion Consumer Relations

For frequently asked questions about your credit report, please visit http://transunion.com/consumerfaqs .



File Number: ███████
Date Issued: 12/05/2016

Page: 1 of 13


TransUnion.

**-Begin Credit Report-**

### Personal Information

SSN: X███████

You have been on our files since 09/01/1982

Date of Birth: 05/22/1955

**Names Reported:** CECILIA F. INFANTE and CELILIA F. INFANTE

**Addresses Reported:**

| Address | Date Reported | Address | Date Reported |
|---|---|---|---|
| 1931 DIAMOND WAY, FAIRFIELD, CA 94533-5876 | 01/06/2006 | 276 NE FALLON CT, BREMERTON, WA 98311-8528 | 10/21/2010 |
| 1258 POTRERO CIR, SUISUN CITY, CA 94585-4142 | 07/31/2008 | 7020 ALDER CREEK RD, VALLEJO, CA 94591-3844 | 05/31/2006 |
| 1268 POTRERO CIR, SUISUN CITY, CA 94585-4142 | 12/31/2015 | 1268 TOTRERO CIR, SUISUN CITY, CA 94585 | 06/22/2008 |
| 240 ALDEBURGH CIR, SACRAMENTO, CA 95834-2544 | 03/06/2007 | | |

**Telephone Numbers Reported:**

███████████████████████████

### Employment Data Reported:

| Employer Name | Date Verified | Location | Position |
|---|---|---|---|
| SELF EMPLOYEED | 01/04/2008 | | HOME CARE GIVER |
| INFANTE FAMI LY CARE HOME CE | | FAIRFIELD, CA | |

### Adjustable Rate Mortgage Information

**PUBLIC RECORD MORTGAGE DETAILS**

| Recorder's Office: | SOLANO, CA | | |
|---|---|---|---|
| Origination Date: | 10/2005 | Loan Amount: | $344,000 |
| Initial Rate Adjustment: | 11/2007 | Initial Interest Rate: | 6.550% |
| Next Rate Change Date: | 05/2017 | Rate Calculation Change: | 5.250% |
| Rate Change Frequency: | Monthly | Change Percent Limit: | 2.000% |
| Rate Change Interval: | 06 | Maximum Rate: | 13.550% |
| Index Type: | LIB | Combined Loan to Value: | 113.500% |
| Pre-Payment Penalty Term (months): | 24 | | |

### Account Information

Typically, creditors report any changes made to your account information monthly. This means that some accounts listed below may not reflect the most recent activity until the creditor's next reporting. This information may include things such as balances, payments, dates, remarks, ratings, etc. The key(s) below are provided to help you understand some of the account information that could be reported.

**Rating Key**

Some creditors report the timeliness of your payments each month in relation to your agreement with them. The ratings in the key below describe the payments that may be reported by your creditors. Any rating that is shaded indicates that it is considered adverse. Please note: Some but not all of these ratings may be present in your credit report.

| N/R | X | OK | 30 | 60 | 90 | 120 | COL | VS | RPO | C/O | FC |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Not Reported | Unknown | Current | 30 days late | 60 days late | 90 days late | 120+ days late | Collection | Voluntary Surrender | Repossession | Charge Off | Foreclosure |

**Remark Key**

Additionally, some creditors may notate your account with comments each month. We refer to these creditor comments as "Remarks". The key below gives the descriptions of the abbreviated remarks contained in your credit file. Any remark containing brackets < indicates that this remark is considered adverse.
AID - ACCT INFO DISPUTED BY CONSUMR        DRG - DISP INVG COMP-RPT BY GRNTR        LMN - LOAN MODIFIED NON GOVT
›PRL‹ - UNPAID BALANCE CHARGED OFF        STL - CREDIT CARD LOST OR STOLEN        ›TTR‹ - TRANSFERRED TO RECOVERY

### Adverse Accounts

**BAC HOME LOANS SERV LP** ████ 4909 SAVARESE CIRCLE, FL1-908-01-47, Tampa, FL 33634, (800) 669-6607)

| Date Opened: | 10/26/2005 | Date Updated: | 11/10/2016 | Pay Status: | Current; Paid or Paying as Agreed |
|---|---|---|---|---|---|
| Responsibility: | Individual Account | Payment Received: | $1,369 | Terms: | $1,369 per month, paid Monthly for 360 months |
| Account Type: | Mortgage Account | Last Payment Made: | 11/02/2016 | | |
| Loan Type: | CONVENTIONAL REAL ESTATE MTG | | | | ›Maximum Delinquency of 120 days in 02/2010 for $38,927 and in 11/2012‹ |

**High Balance:** High balance of $344,000 from 06/2014 to 11/2016

To dispute online go to: **http://transunion.com/disputeonline**

Consumer Credit Report for CECILIA F. INFANTE

Page: 2 of 13

File Number: ████████    Date Issued: 12/05/2016

| | 11/2016 | 10/2016 | 09/2016 | 08/2016 | 07/2016 | 06/2016 | 05/2016 | 04/2016 | 03/2016 | 02/2016 | 01/2016 | 12/201 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Balance | $142,637 | $142,970 | $143,302 | $143,632 | $143,960 | $144,287 | $144,612 | $144,935 | $145,257 | $145,577 | $145,911 | $146,2 |
| Scheduled Payment | $1,369 | $1,369 | $1,369 | $1,369 | $1,369 | $1,255 | $1,255 | $1,255 | $1,255 | $1,255 | $1,210 | $1,2 |
| Amount Paid | $1,369 | $1,369 | $1,369 | $1,369 | $1,369 | $1,255 | $1,255 | $1,255 | $1,255 | $1,225 | $1,210 | $1,2 |
| Past Due | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | |
| Remarks | LMN | LMN | LMN | LMN | LMN | LMN | LMN | LMN | LMN | LMN | | |
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 11/2015 | 10/2015 | 09/2015 | 08/2015 | 07/2015 | 06/2015 | 05/2015 | 04/2015 | 03/2015 | 02/2015 | 01/2015 | 12/201 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Balance | $146,543 | $146,857 | $147,169 | $147,480 | $147,789 | $148,096 | $148,402 | $148,706 | $149,009 | $149,311 | $149,610 | $149,9 |
| Scheduled Payment | $1,210 | $1,210 | $1,210 | $1,210 | $1,210 | $1,210 | $1,210 | $1,210 | $1,210 | $1,402 | $1,402 | $1,4 |
| Amount Paid | $1,210 | $1,210 | $1,210 | $1,210 | $1,210 | $1,210 | $1,210 | $1,210 | $1,210 | $1,402 | $1,402 | $1,4 |
| Past Due | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $1,210 | $1,402 | $1,402 | $1,4 |
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 11/2014 | 10/2014 | 09/2014 | 08/2014 | 07/2014 | 06/2014 | 05/2014 | 04/2014 | 03/2014 | 02/2014 | 01/2014 | 12/201 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Balance | $150,206 | $150,501 | $150,795 | $151,087 | $151,378 | $151,668 | | | | | | |
| Scheduled Payment | $1,402 | $1,402 | $1,402 | $1,402 | $1,402 | $1,402 | | | | | | |
| Amount Paid | $1,402 | $1,402 | $1,402 | $1,402 | $1,402 | $1,402 | | | | | | |
| Past Due | $0 | $0 | $0 | $0 | $0 | $0 | | | | | | |
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 11/2013 | 10/2013 | 09/2013 | 08/2013 | 07/2013 | 06/2013 | 05/2013 | 04/2013 | 03/2013 | 02/2013 | 12/2012 | 11/2012 | 10/2012 | 09/2012 | 08/20 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 07/2012 | 06/2012 | 05/2012 | 04/2012 | 03/2012 | 02/2012 | 01/2012 | 11/2011 | 10/2011 | 09/2011 | 08/2011 | 07/2011 | 06/2011 | 05/2011 | 04/20 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 |

| | 03/2011 | 02/2011 | 01/2011 | 12/2010 | 11/2010 | 10/2010 | 09/2010 | 08/2010 | 07/2010 | 06/2010 | 05/2010 | 04/2010 | 03/2010 | 02/2010 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | |

**SPECIALIZED LOAN SVC** ████████ ( PO BOX 266005, LITTLETON, CO 80163, (720) 241-7200)

| | | |
|---|---|---|
| Date Opened: | 10/26/2005 | Date Updated: 10/31/2016 |
| Responsibility: | Individual Account | Payment Received: $352 |
| Account Type: | Mortgage Account | Last Payment Made: 10/05/2016 |
| Loan Type: | SECOND MORTGAGE | |

Pay Status: ›Charged Off‹
Terms: $352 per month, paid Monthly for 288 months
Date Closed: 01/31/2012
›Maximum Delinquency of 120 days in 10/2011 and in 12/2011‹

High Balance: High balance of $86,000 from 07/2016 to 10/2016
Special Payment: Balloon payment of $58,713 due on 11/01/2020
Estimated month and year that this item will be removed: 06/2018

| | 10/2016 | 09/2016 | 08/2016 | 07/2016 | 06/2016 | 05/2016 | 04/2016 | 03/2016 | 02/2016 | 01/2016 | 12/2015 | 11/2015 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Balance | $72,727 | $73,010 | $73,297 | $73,582 | | | | | | | | |
| Scheduled Payment | $352 | $352 | $352 | $352 | | | | | | | | |
| Amount Paid | $352 | $352 | $352 | $352 | | | | | | | | |
| Past Due | | $0 | $0 | $0 | | | | | | | | |
| Remarks | AID/LIR PRL | DRG/LIR CRL | DRG/LIR PRL | DRG/LIR PRL | | | | | | | | |
| Rating | C/O | C/O | C/O | C/O | X | X | X | X | X | X | X | X |

| | 10/2015 | 09/2015 | 08/2015 | 07/2015 | 06/2015 | 05/2015 | 04/2015 | 03/2015 | 02/2015 | 01/2015 | 12/2014 | 11/2014 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | X | X | X | X | X | X | X | X | X | X | X | X |

| | 10/2014 | 09/2014 | 08/2014 | 07/2014 | 06/2014 | 05/2014 | 04/2014 | 03/2014 | 02/2014 | 01/2014 | 12/2013 | 11/2013 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | X | X | X | X | X | N/R | N/R | N/R | N/R | N/R | N/R | N/R |

| | 10/2013 | 09/2013 | 08/2013 | 07/2013 | 06/2013 | 05/2013 | 04/2013 | 03/2013 | 02/2013 | 01/2013 | 12/2012 | 11/2012 | 10/2012 | 09/2012 | 08/2012 | 07/201 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | N/R | N/R | N/R | N/R | N/R | N/R | N/R | N/R | N/R | N/R | N/R | N/R | N/R | N/R | N/R | N/R |

| | 06/2012 | 05/2012 | 04/2012 | 03/2012 | 02/2012 | 01/2012 | 12/2011 | 11/2011 | 10/2011 | 09/2011 | 08/2011 | 07/2011 | 06/2011 | 05/2011 | 04/2011 | 03/201 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | N/R | N/R | N/R | N/R | N/R | C/O | 120 | 120 | 120 | 120 | 90 | 90 | 60 | OK | OK | OK |

| | 02/2011 | 01/2011 | 12/2010 | 11/2010 | 10/2010 | 09/2010 | 08/2010 | 07/2010 | 06/2010 | 05/2010 | 04/2010 | 03/2010 | 02/2010 | 01/2010 | 12/2009 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | |

## Satisfactory Accounts

**AMERICAN EXPRESS #3**████████ * (PO BOX 981537, EL PASO, TX 79998, (800) 874-2717)

| | | |
|---|---|---|
| Date Opened: | 05/24/2007 | Balance: $0 |
| Responsibility: | Individual Account | Date Updated: 07/05/2008 |
| Account Type: | Revolving Account | High Balance: $0 |

Pay Status: Current; Paid or Paying as Agreed
Date Closed: 06/10/2008

Page: 12 of 13

Consumer Credit Report for CECILIA F. INFANTE                                File Number: █████  Date Issued: 12/05/2016

| | 06/2007 | 05/2007 | 04/2007 | 03/2007 | 02/2007 | 01/2007 | 12/2006 | 11/2006 | 10/2006 | 09/2006 | 08/2006 | 07/2006 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 06/2006 | 05/2006 | 04/2006 | 03/2006 | 02/2006 | 01/2006 | 12/2005 | 11/2005 | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | | | | |

## Regular Inquiries

**TRAVIS CREDIT UNION via CBCINNOVIS** ( 875 GREENTREE ROAD, PITTSBURGH, PA 15220, (877) 237-8317 )                    Inquiry Type: Individual
Permissible Purpose: CREDIT TRANSACTION
Requested On: 10/19/2016, 10/05/2016, 04/25/2016

**SYNCBTOYS R US DC** ( PO BOX 965005, ORLANDO, FL 32896, (855) 389-2359 )                    Inquiry Type: Individual
Requested On: 04/03/2016

**AMERICAN FINANCIAL N via CREDIT TECHNOLOGY INC** ( 1990 E LA CADENA DR, SUITE A, RIVERSIDE, CA 92507, (909)    Inquiry Type: Individual
778-1501 )
Permissible Purpose: CREDIT TRANSACTION
Requested On: 03/24/2016, 01/06/2016, 10/01/2015

## Promotional Inquiries

**FIRST USA** ( 800 BROOKSEDGE BLVD, WESTERVILLE, OH 43081-2822, (877) 242-7372 )
Requested On: 08/04/2016, 07/02/2016, 05/04/2016, 04/01/2016, 03/02/2016, 02/03/2016, 01/01/2016

**GEICO** ( 1 GEICO PLZ, WASHINGTON, DC 20076-0003, (773) 582-2886 )
Requested On: 04/29/2016, 03/25/2016

**CONGRESSIONAL BANK** ( 4343 EASTON COMMON, SUITE 150, COLUMBUS, OH 43219, (888) 863-1923 )
Requested On: 03/25/2016

**MORTGAGE CAPITAL ASSOCIA** ( 11150 W. OLYMPIC B, SUITE 1160, LOS ANGELES, CA 90064, (310) 477-6877 )
Requested On: 03/25/2016

**LENDING CLUB** ( 370 CONVENTION WAY, REDWOOD CITY, CA 94063, (800) 964-7937 )
Requested On: 02/09/2016

**AMERICAN BANK DBA AMERIC** ( 9001 EDMONSTON RD, STE 100, GREENBELT, MD 20770, (301) 315-1718 )
Requested On: 01/07/2016

**CROSSCOUNTRY MORTGAGE** ( 6850 MILLER RD, BRECKSVILLE, OH 44141, (440) 845-3700 )
Requested On: 01/07/2016

## Account Review Inquiries

**FACTACT FREE DISCLOSURE** ( P O BOX 1000, CHESTER, PA 19016, (800) 888-4213 )
Requested On: 12/05/2016

**TRANSUNION INTERACTIVE IN** ( 100 CROSS ST, STE 202, SAN LUIS OBISP, CA 93401, (888) 567-8688 )
Requested On: 11/27/2016

**BANK OF AMERICA** ( 4161 PIEDMONT PARKWAY, GREENSBORO, NC 27410, (800) 451-6362 )
Requested On: 11/23/2016

**CAPITAL ONE NATIONAL ASSOC** ( PO BOX 30281, SALT LAKE CITY, UT 84130, (800) 955-7070 )
Requested On: 11/09/2016

**DISCOVER FINANCIAL SERVI** ( 2500 LAKE COOK ROA, RIVERWOODS, IL 60015, (800) 347-2683 )
Requested On: 11/07/2016

**SYNCB/JC PENNEY** ( PO BOX 965007, ORLANDO, FL 32896-5007, (866) 227-5213 )
Requested On: 10/27/2016

**SYNCB/SYNC BANK LUXURY** ( C/O PO BOX 965036, ORLANDO, FL 32896-5036, (866) 396-8254 )
Requested On: 10/27/2016

**SYNCB/TOYSRUSDC** ( PO BOX 965001, ORLANDO, FL 32896, (866) 864-2149 )
Requested On: 10/27/2016

-End of Credit Report-

To dispute online go to: http://transunion.com/disputeonline

P.O. Box 105314
Atlanta GA 30348

December 5, 2016

# EQUIFAX

To Start An Investigation, Please Visit Us At:
www.investigate.equifax.com



000001638 F0ECI1206161727010000 02 000000
002415067-3362
Cecilia F Infante
1931 Diamond Way
Fairfield, CA 94533-5876

Dear Cecilia F Infante:

Thank you for requesting your credit file, commonly called a Consumer Credit Report. Your credit file contains information received primarily from companies which have granted you credit and from public record sources. Great care has been taken to report this information correctly. Please help us in achieving even greater accuracy by reviewing all of the enclosed material carefully.

If there are items you believe to be incorrect, you may be able to initiate an investigation request via the Internet 24 hours a day, 7 days a week at:

## www.investigate.equifax.com

Using the Internet to initiate an on-line investigation request will expedite the resolution of your concerns.

Or you may complete the enclosed Research Request Form and return it to:

**Equifax Information Services LLC**
**P.O. Box 105314**
**Atlanta GA 30348**

*NOTE: Sending the Research Request Form to any other address will delay the processing of your request.*

Please note, when you provide documents, including a letter, to Equifax as part of your dispute, the documents may be submitted to one or more companies whose information are the subject of your dispute.

**Under the FACT Act, you have the right to request and obtain a copy of your credit score. To obtain a copy of your credit score, please call our automated ordering system at:** *1-877-SCORE-11.*

---

### Get Informed. Be empowered.

For an added convenience, use one of the below options to start an investigation or check the status of your dispute.

Visit us at **www.equifax.com/CreditReportAssistance** or Call us at 866-349-5186.

---



EXHIBIT
17
Infante

Infante Docs 0042



Infante Docs 0046

**Amex/Dsnb    PO Box 8218 Mason OH 45040-8218**

| Account Number | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | Months Revd | Activity Designator | Creditor Classification |
|---|---|---|---|---|---|---|---|---|
| | 06/30/2016 | $161 | $7,200 | | Monthly | 4 | | |

| Items As of Date Reported | Balance Amount | Amount Past Due | Date of Last Paymnt | Actual Paymnt Amount | Scheduled Paymnt Amount | Date of 1st Delinquency | Date of Last Activity | Date Maj. Del. 1st Rptd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/12/2016 | $114 | | 11/2016 | | $27 | | 11/2016 | | | | | | |

Status - Pays As Agreed; Type of Account - Revolving; Type of Loan - Credit Card; Whose Account - Individual Account;  ADDITIONAL INFORMATION - Credit Card;

### Historical Account Information

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Date of Last Payment | High Credit | Credit Limit | Amount Past Due | Type of Loan | | Activity Designator |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/16 | No Data Available | | | | | | | | | |
| 10/16 | $102 | $27 | | 10/1/2016 | $156 | $7,200 | | Credit Card | | |
| 09/16 | $109 | $27 | | 9/1/2016 | $156 | $7,200 | | Credit Card | | |
| 08/16 | $96 | $27 | | 8/1/2016 | $144 | $7,200 | | Credit Card | | |
| 07/16 | $144 | $27 | | | $144 | $7,200 | | Credit Card | | |

**Bank of America    PO Box 982238 El Paso TX 79998-2238 - (800) 421-2110**

| Account Number | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | Months Revd | Activity Designator | Creditor Classification |
|---|---|---|---|---|---|---|---|---|
| | 04/01/2008 | $3,268 | $6,000 | | Monthly | 31 | Closed | |

| Items As of Date Reported | Balance Amount | Amount Past Due | Date of Last Paymnt | Actual Paymnt Amount | Scheduled Paymnt Amount | Date of 1st Delinquency | Date of Last Activity | Date Maj. Del. 1st Rptd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/01/2010 | $0 | | 07/2010 | | | | 07/2010 | | | | | | 01/2009 |

Status - Pays As Agreed; Type of Account - Revolving; Type of Loan - Credit Card; Whose Account - Individual Account;  ADDITIONAL INFORMATION - Account Closed By Credit Grantor; Credit Card;

**Bank of America, N.A.    4909 Savarese Cir Fl 190 Tampa FL 33634-2413 - (800) 669-6607**

| Account Number | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | Months Revd | Activity Designator | Creditor Classification |
|---|---|---|---|---|---|---|---|---|
| | 10/26/2005 | $344,000 | | 30Y | Monthly | 99 | | |

| Items As of Date Reported | Balance Amount | Amount Past Due | Date of Last Paymnt | Actual Paymnt Amount | Scheduled Paymnt Amount | Date of 1st Delinquency | Date of Last Activity | Date Maj. Del. 1st Rptd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/10/2016 | $142,637 | | 11/2016 | $1,369 | $1,369 | | 11/2016 | | | | | | |

Status - Pays As Agreed; Type of Account - Mortgage; Type of Loan - Conventional Re Mortgage; Whose Account - Individual Account;  ADDITIONAL INFORMATION - Real Estate Mortgage; Loan Modified;

| Account History with Status Codes | 01/2013 | 11/2012 | 10/2012 | 09/2012 | 08/2012 | 07/2012 | 06/2012 | 05/2012 | 04/2012 | 03/2012 | 02/2012 | 01/2012 | 12/2011 | 11/2011 | 10/2011 | 09/2011 | 08/2011 | 07/2011 | 06/2011 | 05/2011 | 04/2011 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 1 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |

| | 03/2011 | 02/2011 | 01/2011 | 12/2010 | 11/2010 | 10/2010 | 09/2010 | 08/2010 | 07/2010 | 06/2010 | 05/2010 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |

Infante Docs 0047

### Historical Account Information

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Date of Last Payment | High Credit | Credit Limit | Amount Past Due | Type of Loan | Activity Designator |
|---|---|---|---|---|---|---|---|---|---|
| 11/16 | No Data Available | | | | | | | | |
| 10/16 | $142,970 | $1,369 | $1,369 | 10/1/2016 | $344,000 | | | Conventional Re Mortgage | |
| Additional Information: Loan Modified | | | | | | | | | |
| 09/16 | $143,302 | $1,369 | $1,369 | 9/1/2016 | $344,000 | | | Conventional Re Mortgage | |
| Additional Information: Loan Modified | | | | | | | | | |
| 08/16 | $143,632 | $1,369 | $1,369 | 8/1/2016 | $344,000 | | | Conventional Re Mortgage | |
| Additional Information: Loan Modified | | | | | | | | | |
| 07/16 | $143,960 | $1,369 | $1,369 | 7/1/2016 | $344,000 | | | Conventional Re Mortgage | |
| Additional Information: Loan Modified | | | | | | | | | |
| 06/16 | $144,287 | $1,255 | $1,255 | 6/1/2016 | $344,000 | | | Conventional Re Mortgage | |
| Additional Information: Loan Modified | | | | | | | | | |
| 05/16 | $144,612 | $1,255 | $1,255 | 5/1/2016 | $344,000 | | | Conventional Re Mortgage | |
| Additional Information: Loan Modified | | | | | | | | | |
| 04/16 | $144,935 | $1,255 | $1,255 | 4/1/2016 | $344,000 | | | Conventional Re Mortgage | |
| Additional Information: Loan Modified | | | | | | | | | |
| 03/16 | $145,257 | $1,255 | $1,255 | 3/1/2016 | $344,000 | | | Conventional Re Mortgage | |
| Additional Information: Loan Modified | | | | | | | | | |
| 02/16 | $145,577 | $1,210 | $1,225 | 2/1/2016 | $344,000 | | | Conventional Re Mortgage | |
| Additional Information: Loan Modified | | | | | | | | | |
| 01/16 | $145,911 | $1,210 | $1,210 | 1/1/2016 | $344,000 | | | Conventional Re Mortgage | |
| 12/15 | $146,228 | $1,210 | $1,210 | 12/1/2015 | $344,000 | | | Conventional Re Mortgage | |
| 11/15 | $146,543 | $1,210 | $1,210 | 11/1/2015 | $344,000 | | | Conventional Re Mortgage | |
| 10/15 | $146,857 | $1,210 | $1,210 | 10/1/2015 | $344,000 | | | Conventional Re Mortgage | |

( Continued On Next Page )

63400614923PD-002415067- 3362 - 3649  - ASD

Infante Docs 0048

### Historical Account Information

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Date of Last Payment | High Credit | Credit Limit | Amount Past Due | Type of Loan | Activity Designator |
|---|---|---|---|---|---|---|---|---|---|
| 09/15 | $147,169 | $1,210 | $1,210 | 9/1/2015 | $344,000 | | | Conventional Re Mortgage | |
| 08/15 | No Data Available | | | | | | | | |
| 07/15 | $147,789 | $1,210 | $1,210 | 7/1/2015 | $344,000 | | | Conventional Re Mortgage | |
| 06/15 | $148,096 | $1,210 | $1,210 | 6/1/2015 | $344,000 | | | Conventional Re Mortgage | |
| 05/15 | $148,402 | $1,210 | $1,210 | 5/1/2015 | $344,000 | | | Conventional Re Mortgage | |
| 04/15 | $148,706 | $1,210 | $1,210 | 4/1/2015 | $344,000 | | | Conventional Re Mortgage | |
| 03/15 | No Data Available | | | | | | | | |
| 02/15 | $149,311 | $1,402 | $1,402 | 1/1/2015 | $344,000 | | | Conventional Re Mortgage | |
| 01/15 | $149,610 | $1,402 | $1,402 | 1/1/2015 | $344,000 | | | Conventional Re Mortgage | |
| 12/14 | $149,909 | $1,402 | $1,402 | 12/1/2014 | $344,000 | | | Conventional Re Mortgage | |

**Bank of America, N.A.**    4909 Savarese Cir Fl 190 Tampa FL 33634-2413 ; (800) 669-6607

| Account Number | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | Months Revd | Activity Designator | Creditor Classification |
|---|---|---|---|---|---|---|---|---|
| | 09/01/2005 | $620,913 | | 30Y | Monthly | 13 | | |

| Items As of Date Reported | Balance Amount | Amount Past Due | Date of Last Paymnt | Actual Paymnt Amount | Scheduled Paymnt Amount | Date of 1st Delinquency | Date of Last Activity | Date Maj. Del. 1st Rptd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/01/2007 | $0 | | 02/2007 | | $4,134 | | 01/2007 | | | | | | |

Status - Pays As Agreed; Type of Account - Mortgage; Type of Loan - Conventional Re Mortgage; Whose Account - Individual Account;

**Capital One Bank USA Na**    PO Box 85015 Richmond VA 23285-5015 ; (800) 955-7070

| Account Number | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | Months Revd | Activity Designator | Creditor Classification |
|---|---|---|---|---|---|---|---|---|
| | 03/14/2005 | $1,879 | $2,400 | | Monthly | 99 | | |

| Items As of Date Reported | Balance Amount | Amount Past Due | Date of Last Paymnt | Actual Paymnt Amount | Scheduled Paymnt Amount | Date of 1st Delinquency | Date of Last Activity | Date Maj. Del. 1st Rptd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/28/2016 | $0 | | 10/2010 | | | | 10/2010 | | | | | | |

Status - Pays As Agreed; Type of Account - Revolving; Type of Loan - Business Credit Card; Whose Account - Individual Account;   ADDITIONAL INFORMATION - Business Account-Personal Guarantee;

( Continued On Next Page )

63400614923PD-002415067- 3362 - 3649  - ASD



Infante Docs 0060

## Historical Account Information

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Date of Last Payment | High Credit | Credit Limit | Amount Past Due | Type of Loan | Activity Designator |
|---|---|---|---|---|---|---|---|---|---|
| 08/15 | No Data Available | | | | | | | | |
| 07/15 | $226 | $25 | $125 | 7/1/2015 | $1,476 | $4,000 | | Charge Account | |
| 06/15 | $351 | $25 | $125 | 6/1/2015 | $1,476 | $4,000 | | Charge Account | |
| 05/15 | No Data Available | | | | | | | | |
| 04/15 | $601 | $25 | $125 | 4/1/2015 | $1,476 | $4,000 | | Charge Account | |
| 03/15 | No Data Available | | | | | | | | |
| 02/15 | $851 | $25 | $125 | 2/1/2015 | $1,476 | $4,000 | | Charge Account | |
| 01/15 | $976 | $25 | $125 | 1/1/2015 | $1,476 | $4,000 | | Charge Account | |
| 12/14 | $1,101 | $25 | $125 | 12/1/2014 | $1,476 | $4,000 | | Charge Account | |

**Sears/CBNA**   PO Box 6282 Sioux Falls SD 57117-6282

| Account Number | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | Months Revd | Activity Designator | Creditor Classification |
|---|---|---|---|---|---|---|---|---|
| | 05/20/2000 | $4,377 | $10,000 | | Monthly | 99 | Paid and Closed | |

| Items As of Date Reported | Balance Amount | Amount Past Due | Date of Last Paymnt | Actual Paymnt Amount | Scheduled Paymnt Amount | Date of 1st Delinquency | Date of Last Activity | Date Maj. Del. 1st Potd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/12/2016 | $0 | | 06/2010 | | | | 06/2010 | | | | | | 07/2012 |

Status - Pays As Agreed; Type of Account - Revolving; Type of Loan - Charge Account; Whose Account - Authorized User;   ADDITIONAL INFORMATION - Closed or Paid Account/Zero Balance; Account Closed By Credit Grantor;

**Specialized Loan Services**   8742 Lucent Blvd Ste 300 Highlands Ranch CO 80129-2386   (720) 241-7200

| Account Number | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | Months Revd | Activity Designator | Creditor Classification |
|---|---|---|---|---|---|---|---|---|
| | 10/26/2005 | | | 24Y | Monthly | 99 | | |

| Items As of Date Reported | Balance Amount | Amount Past Due | Date of Last Paymnt | Actual Paymnt Amount | Scheduled Paymnt Amount | Date of 1st Delinquency | Date of Last Activity | Date Maj. Del. 1st Potd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/31/2016 | $72,727 | | 10/2016 | $352 | $352 | 07/2011 | | 01/2012 | $84,217 | | $58,713 | 11/2020 | |

Status - Charge Off; Type of Account - Mortgage; Type of Loan - Second Mortgage; Whose Account - Individual Account;   ADDITIONAL INFORMATION - Consumer Disputes This Account Information; Transferred to Recovery; Charged Off Account;

| Account History with Status Codes | 09/2016 | 08/2016 | 07/2016 | 12/2011 | 11/2011 | 10/2011 | 09/2011 | 08/2011 | 07/2011 |
|---|---|---|---|---|---|---|---|---|---|
| | L | L | L | 4 | 4 | 4 | 3 | 2 | 1 |

Infante Docs 0061

## Historical Account Information

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Date of Last Payment | High Credit | Credit Limit | Amount Past Due | Type of Loan | Activity Designator |
|---|---|---|---|---|---|---|---|---|---|
| 11/16 | No Data Available | | | | | | | | |
| 10/16 | No Data Available | | | | | | | | |
| 09/16 | $73,010 | $352 | $352 | 9/1/2016 | | | | Second Mortgage | |
| Additional Information: Transferred to Recovery; Charged Off Account | | | | | | | | | |
| 08/16 | $73,297 | $352 | $352 | 8/1/2016 | | | | Second Mortgage | |
| Additional Information: Transferred to Recovery; Charged Off Account | | | | | | | | | |
| 07/16 | $73,582 | $352 | $352 | 7/1/2016 | | | | Second Mortgage | |
| Additional Information: Transferred to Recovery; Charged Off Account | | | | | | | | | |

**Syncb/JC Penneys**  PO Box 965035 Orlando FL 32896-5035 ; (866) 396-8254

| Account Number | Date Opened 08/15/1998 | High Credit $4,004 | Credit Limit $6,100 | Terms Duration | Terms Frequency Monthly | Months Rcvd 99 | Activity Designator | Creditor Classification |
|---|---|---|---|---|---|---|---|---|

| Items As of Date Reported 11/18/2016 | Balance $0 | Amount Past Due | Date of Last Paymnt 07/2015 | Actual Paymnt Amount | Scheduled Paymnt Amount | Date of 1st Delinquency | Date of Last Activity 07/2015 | Date Maj. Del. 1st Rptd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Status - Pays As Agreed; Type of Account - Revolving; Type of Loan - Charge Account; Whose Account - Joint Account;  ADDITIONAL INFORMATION - Charge;

## Historical Account Information

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Date of Last Payment | High Credit | Credit Limit | Amount Past Due | Type of Loan | Activity Designator |
|---|---|---|---|---|---|---|---|---|---|
| 11/16 | No Data Available | | | | | | | | |
| 10/16 | $0 | | | 7/1/2015 | $4,004 | $6,100 | | Charge Account | |
| 09/16 | $0 | | | 7/1/2015 | $4,004 | $6,100 | | Charge Account | |
| 08/16 | $0 | | | 7/1/2015 | $4,004 | $6,100 | | Charge Account | |
| 07/16 | $0 | | | 7/1/2015 | $4,004 | $6,100 | | Charge Account | |
| 06/16 | $0 | | | 7/1/2015 | $4,004 | $6,100 | | Charge Account | |
| 05/16 | $0 | | | 7/1/2015 | $4,004 | $6,100 | | Charge Account | |

Cecilia F. Infante
1931 Diamond Way
Fairfield, CA 94533

January 10, 2017

TransUnion
P.O. Box 2000
Chester, PA 19016

Dear Sir or Madam:

I am writing to dispute the following information in my file. I have circled the items I dispute on the attached copy of the report I received.

This item reported by Specialized Loan Servicing LLC ("SLS"), a mortgage company is inaccurate because the loan has been current since April 2012. I have been paying on time for over four (4) years. I am requesting that the item be removed to correct the information.

Enclosed are copies of bank statements, loan modification, CA Drivers License with my last four (4) social security number and SLS loan account # ████████ supporting my position. Please reinvestigate this matter and correct the disputed item as soon as possible.

Sincerely,

*Cecilia F. Infante*

Cecilia F. Infante

EXHIBIT
18
Infante

Consumer Credit Report for CECILIA F. INFANTE

Page: 2 of 13

File Number: ▉▉▉  Date Issued: 12/05/2016

| | 11/2016 | 10/2016 | 09/2016 | 08/2016 | 07/2016 | 06/2016 | 05/2016 | 04/2016 | 03/2016 | 02/2016 | 01/2016 | 12/2015 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Balance | $142,637 | $142,970 | $143,302 | $143,632 | $143,960 | $144,287 | $144,612 | $144,935 | $145,257 | $145,577 | $145,911 | $146,2 |
| Scheduled Payment | $1,369 | $1,369 | $1,369 | $1,369 | $1,369 | $1,255 | $1,255 | $1,255 | $1,255 | $1,210 | $1,210 | $1,2 |
| Amount Paid | $1,369 | $1,369 | $1,369 | $1,369 | $1,369 | $1,255 | $1,255 | $1,255 | $1,255 | $1,210 | $1,210 | |
| Past Due | $0 | | | $0 | $0 | $0 | $0 | $0 | $0 | $1,225 | $1,210 | $1,2 |
| Remarks | LMN | LMN | LMN | LMN | LMN | LMN | LMN | LMN | LMN | LMN | | |
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 11/2015 | 10/2015 | 09/2015 | 08/2015 | 07/2015 | 06/2015 | 05/2015 | 04/2015 | 03/2015 | 02/2015 | 01/2015 | 12/2014 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Balance | $146,543 | $146,857 | $147,169 | $147,480 | $147,789 | $148,096 | $148,402 | $148,706 | $149,009 | | | |
| Scheduled Payment | $1,210 | $1,210 | $1,210 | $1,210 | $1,210 | $1,210 | $1,210 | $1,210 | $1,210 | $149,311 | $149,610 | $149,90 |
| Amount Paid | $1,210 | $1,210 | $1,210 | $1,210 | $1,210 | $1,210 | $1,210 | $1,210 | | | $1,402 | $1,402 | $1,40 |
| Past Due | $0 | | | $0 | $0 | $0 | $0 | $1,210 | $1,210 | $1,210 | $1,402 | $1,402 | $1,40 |
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 11/2014 | 10/2014 | 09/2014 | 08/2014 | 07/2014 | 06/2014 | 05/2014 | 04/2014 | 03/2014 | 02/2014 | 01/2014 | 12/2013 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Balance | $150,206 | $150,501 | $150,795 | $151,087 | $151,378 | $151,668 | | | | | | |
| Scheduled Payment | $1,402 | $1,402 | $1,402 | $1,402 | $1,402 | $1,402 | | | | | | |
| Amount Paid | $1,402 | $1,402 | $1,402 | $1,402 | $1,402 | $1,402 | | | | | | |
| Past Due | $0 | $0 | $0 | $0 | $0 | $0 | | | | | | |
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 11/2013 | 10/2013 | 09/2013 | 08/2013 | 07/2013 | 06/2013 | 05/2013 | 04/2013 | 03/2013 | 02/2013 | 01/2013 | 12/2012 | 11/2012 | 10/2012 | 09/2012 | 08/2012 | 07/2012 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | 30 | OK | 120 | 90 | 120 |

| | 07/2012 | 06/2012 | 05/2012 | 04/2012 | 03/2012 | 02/2012 | 01/2012 | 12/2011 | 11/2011 | 10/2011 | 09/2011 | 08/2011 | 07/2011 | 06/2011 | 05/2011 | 04/2011 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 |

| | 03/2011 | 02/2011 | 01/2011 | 12/2010 | 11/2010 | 10/2010 | 09/2010 | 08/2010 | 07/2010 | 06/2010 | 05/2010 | 04/2010 | 03/2010 | 02/2010 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 |

**SPECIALIZED LOAN SVCG** ▉▉▉* (PO BOX 266005, LITTLETON, CO 80163, (720) 241-7200)

| | |
|---|---|
| Date Opened: | 10/26/2005 |
| Responsibility: | Individual Account |
| Account Type: | Mortgage Account |
| Loan Type: | SECOND MORTGAGE |

| | |
|---|---|
| Date Updated: | 10/31/2016 |
| Payment Received: | $352 |
| Last Payment Made: | 10/05/2016 |

| | |
|---|---|
| Pay Status: | >Charged Off< |
| Terms: | $352 per month, paid Monthly for 288 months |
| Date Closed: | 01/31/2012 |
| >Maximum Delinquency of 120 days in 10/2011 and in 12/2010< |

High Balance: High balance of $86,000 from 07/2016 to 10/2016
Special Payment: Balloon payment of $58,713 due on 11/01/2020
Estimated month and year that this item will be removed: 06/2018

| | 10/2016 | 09/2016 | 08/2016 | 07/2016 | 06/2016 | 05/2016 | 04/2016 | 03/2016 | 02/2016 | 01/2016 | 12/2015 | 11/2015 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Balance | $72,727 | $73,010 | $73,297 | $73,582 | | | | | | | | |
| Scheduled Payment | $352 | $352 | $352 | $352 | | | | | | | | |
| Amount Paid | $352 | $352 | $352 | $352 | | | | | | | | |
| Past Due | $0 | $0 | $0 | | | | | | | | | |
| Remarks | AID/TRF DRG/TRF PRL | DRG/TRF PRL | DRG/TRF PRL | DRG/TRF PRL | | | | | | | | |
| Rating | C/O | C/O | C/O | X | X | X | X | X | X | X | X | X |

| | 10/2015 | 09/2015 | 08/2015 | 07/2015 | 06/2015 | 05/2015 | 04/2015 | 03/2015 | 02/2015 | 01/2015 | 12/2014 | 11/2014 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | X | X | X | X | X | X | X | X | X | X | X | X |

| | 10/2014 | 09/2014 | 08/2014 | 07/2014 | 06/2014 | 05/2014 | 04/2014 | 03/2014 | 02/2014 | 01/2014 | 12/2013 | 11/2013 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | X | X | X | X | N/R | N/R | N/R | N/R | N/R | N/R | N/R | N/R |

| | 10/2013 | 09/2013 | 08/2013 | 07/2013 | 06/2013 | 05/2013 | 04/2013 | 03/2013 | 02/2013 | 01/2013 | 12/2012 | 11/2012 | 10/2012 | 09/2012 | 08/2012 | 07/2012 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | N/R | N/R | N/R | N/R | N/R | N/R | N/R | N/R | N/R | N/R | N/R | N/R | N/R | N/R | N/R | N/R |

| | 06/2012 | 05/2012 | 04/2012 | 03/2012 | 02/2012 | 01/2012 | 12/2011 | 11/2011 | 10/2011 | 09/2011 | 08/2011 | 07/2011 | 06/2011 | 05/2011 | 04/2011 | 03/2011 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | N/R | N/R | N/R | N/R | N/R | N/R | N/R | 120 | 90 | OK | OK | OK | OK | OK | OK | OK |

| | 02/2011 | 01/2011 | 12/2010 | 11/2010 | 10/2010 | 09/2010 | 08/2010 | 07/2010 | 06/2010 | 05/2010 | 04/2010 | 03/2010 | 02/2010 | 01/2010 | 12/2009 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

**Satisfactory Accounts**

**AMERICAN EXPRESS** ▉▉▉ (PO BOX 981537, EL PASO, TX 79998, (800) 874-2717)

| | |
|---|---|
| Date Opened: | 05/24/2007 |
| Responsibility: | Individual Account |
| Account Type: | Revolving Account |

| | |
|---|---|
| Balance: | $0 |
| Date Updated: | 07/05/2008 |
| High Balance: | $0 |

| | |
|---|---|
| Pay Status: | Current; Paid or Paying as Agreed |
| Date Closed: | 06/10/2008 |

Cecilia F. Infante
1931 Diamond Way
Fairfield, CA 94533

January 10, 2017

Equifax
P.O. Box 740256
Atlanta, GA 30374

Dear Sir or Madam:

I am writing to dispute the following information in my file. I have circled the items I dispute on the attached copy of the report I received.

This item reported by Specialized Loan Servicing LLC ("SLS"), a mortgage company is inaccurate because the loan has been current since April 2012. I have been paying on time for over four (4) years. I am requesting that the item be removed to correct the information.

Enclosed are copies of bank statements, loan modification, CA Drivers License with my last four (4) social security number and SLS loan account # ███████ supporting my position. Please reinvestigate this matter and correct the disputed item as soon as possible.

Sincerely,

Cecilia F. Infante



## Historical Account Information

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Date of Last Payment | High Credit | Credit Limit | Amount Past Due | Type of Loan | Activity Designator |
|---|---|---|---|---|---|---|---|---|---|
| 08/15 | No Data Available | | | | | | | | |
| 07/15 | $226 | $25 | $125 | 7/1/2015 | $1,476 | $4,000 | | Charge Account | |
| 06/15 | $351 | $25 | $125 | 6/1/2015 | $1,476 | $4,000 | | Charge Account | |
| 05/15 | No Data Available | | | | | | | | |
| 04/15 | $601 | $25 | $125 | 4/1/2015 | $1,476 | $4,000 | | Charge Account | |
| 03/15 | No Data Available | | | | | | | | |
| 02/15 | $851 | $25 | $125 | 2/1/2015 | $1,476 | $4,000 | | Charge Account | |
| 01/15 | $976 | $25 | $125 | 1/1/2015 | $1,476 | $4,000 | | Charge Account | |
| 12/14 | $1,101 | $25 | $125 | 12/1/2014 | $1,476 | $4,000 | | Charge Account | |

**Sears/CBNA**   PO Box 6282 Sioux Falls SD 57117-6282

| Account Number | Date Opened 05/20/2000 | High Credit $4,377 | Credit Limit $10,000 | Terms Duration | Terms Frequency Monthly | Months Revd 99 | Activity Designator Paid and Closed | Creditor Classification |
|---|---|---|---|---|---|---|---|---|

| Items As of Date Reported 11/12/2016 | Balance Amount $0 | Amount Past Due | Date of Last Paymnt 05/2010 | Actual Paymnt Amount | Scheduled Paymnt Amount | Date of 1st Delinquency | Date of Last Activity 05/2010 | Date Maj. Del. 1st Rptd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed 07/2012 |

Status - Pays As Agreed; Type of Account - Revolving; Type of Loan - Charge Account; Whose Account - Authorized User;   ADDITIONAL INFORMATION - Closed or Paid Account/Zero Balance; Account Closed By Credit Grantor.

**Specialized Loan Services**   8742 Lucent Blvd Ste 300 Highlands Ranch CO 80129-2386 (720) 241-7200

| Account Number | Date Opened 10/26/2005 | High Credit | Credit Limit | Terms Duration 24Y | Terms Frequency Monthly | Months Revd 99 | Activity Designator | Creditor Classification |
|---|---|---|---|---|---|---|---|---|

| Items As of Date Reported 10/31/2016 | Balance Amount $72,727 | Amount Past Due | Date of Last Paymnt 10/2016 | Actual Paymnt Amount $352 | Scheduled Paymnt Amount $352 | Date of 1st Delinquency 07/2011 | Date of Last Activity | Date Maj. Del. 1st Rptd 01/2012 | Charge Off Amount $84,217 | Deferred Pay Start Date | Balloon Pay Amount $58,713 | Balloon Pay Date 11/2020 | Date Closed |

Status - Charge Off; Type of Account - Mortgage; Type of Loan - Second Mortgage; Whose Account - Individual Account;   ADDITIONAL INFORMATION - Consumer Disputes This Account Information; Transferred to Recovery; Charged Off Account;

| Account History with Status Codes | 09/2016 L | 08/2016 L | 07/2016 L | 12/2011 4 | 11/2011 4 | 10/2011 4 | 09/2011 3 | 08/2011 2 | 07/2011 1 |

Infante Docs 0149

( Continued On Next Page )

63400614923PD-002415067- 3362 - 3649 - ASD

## Historical Account Information

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Date of Last Payment | High Credit | Credit Limit | Amount Past Due | Type of Loan | Activity Designator |
|---|---|---|---|---|---|---|---|---|---|
| 11/16 | No Data Available | | | | | | | | |
| 10/16 | No Data Available | | | | | | | | |
| 09/16 | $73,010 | $352 | $352 | 9/1/2016 | | | | Second Mortgage | |
| Additional Information: Transferred to Recovery; Charged Off Account | | | | | | | | | |
| 08/16 | $73,297 | $352 | $352 | 8/1/2016 | | | | Second Mortgage | |
| Additional Information: Transferred to Recovery; Charged Off Account | | | | | | | | | |
| 07/16 | $73,582 | $352 | $352 | 7/1/2016 | | | | Second Mortgage | |
| Additional Information: Transferred to Recovery; Charged Off Account | | | | | | | | | |

Syncb/JC Penneys    PO Box 965036 Orlando FL 32896-5036    (855) 395-8254

| Account Number | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | Months Revd | Activity Designator | Creditor Classification |
|---|---|---|---|---|---|---|---|---|
| 600889982405* | 08/15/1998 | $4,004 | $6,100 | | Monthly | 99 | | |

| Items As of Date Reported | Balance Amount | Amount Past Due | Date of Last Paymnt | Actual Paymnt Amount | Scheduled Paymnt Amount | Date of 1st Delinquency | Date of Last Activity | Date Maj. Del. 1st Rptd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/18/2015 | $0 | | 07/2015 | | | | 07/2015 | | | | | | |

Status - Pays As Agreed; Type of Account - Revolving; Type of Loan - Charge Account; Whose Account - Joint Account;   ADDITIONAL INFORMATION - Charge;

## Historical Account Information

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Date of Last Payment | High Credit | Credit Limit | Amount Past Due | Type of Loan | Activity Designator |
|---|---|---|---|---|---|---|---|---|---|
| 11/16 | No Data Available | | | | | | | | |
| 10/16 | $0 | | | 7/1/2015 | $4,004 | $6,100 | | Charge Account | |
| 09/16 | $0 | | | 7/1/2015 | $4,004 | $6,100 | | Charge Account | |
| 08/16 | $0 | | | 7/1/2015 | $4,004 | $6,100 | | Charge Account | |
| 07/16 | $0 | | | 7/1/2015 | $4,004 | $6,100 | | Charge Account | |
| 06/16 | $0 | | | 7/1/2015 | $4,004 | $6,100 | | Charge Account | |
| 05/16 | $0 | | | 7/1/2015 | $4,004 | $6,100 | | Charge Account | |

( Continued On Next Page )

63400614923PD-002415067- 3362 - 3649 - ASD

Infante Docs 0150

Cecilia F. Infante
1931 Diamond Way
Fairfield, CA 94533

January 10, 2017

Experian
P.O. Box 9554
Allen, TX 75013

Dear Sir or Madam:

I am writing to dispute the following information in my file. I have circled the items I dispute on the attached copy of the report I received.

This item reported by Specialized Loan Servicing LLC ("SLS"), a mortgage company is inaccurate because the loan has been current since April 2012. I have been paying on time for over four (4) years. I am requesting that the item be removed to correct the information.

Enclosed are copies of bank statements, loan modification, CA Drivers License with my last four (4) social security number and SLS loan account # ████████ supporting my position. Please reinvestigate this matter and correct the disputed item as soon as possible.

Sincerely,

Cecilia F. Infante
Cecilia F. Infante





**Experian**

A world of insight

Infante Docs 0147

Your accounts that may be considered negative (continued)

1,369  1,369  1,369  1,369  1,255  1,255  1,255  1,255  1,210  1,210  1,210  1,210  1,210  1,210  1,210  1,402  1,402  1,402
1,369  1,369  1,369  1,369  1,255  1,255  1,255  1,225  1,210  1,210  1,210  1,210  1,210  1,210  1,210  1,402  1,402  1,402

▷ The original amount of this account was $344,000

| | | | | |
|---|---|---|---|---|
| **SPECIALIZED LOAN SERVICI**<br>8742 LUCENT BLVD STE 300<br>HIGHLANDS RANCH CO 80129<br>**Phone number**<br>(720) 241 7200<br>**Partial account number**<br>████████<br><br>**Address identification number**<br>0190613099 | **Date opened**<br>Oct 2005<br>**First reported**<br>Jul 2006<br>**Date of status**<br>Jan 2012 | **Type**<br>Mortgage<br>**Terms**<br>24 Years<br>Monthly<br>**payment**<br>Not reported | **Credit limit or original amount**<br>$86,000<br>**High balance**<br>Not reported | **Recent balance**<br>$72,727 as of Oct 2016<br>**Recent payment**<br>$352 | **Responsibility**<br>Individual<br>**Status**<br>Account charged off. Balloon payment of $58,713 due Nov 2020. $87,581 written off.<br>This account is scheduled to continue on record until Apr 2018.<br>**Comment**<br>Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act).<br>**Comment:**<br>Transferred to recovery. |

**Payment history**
2016
OCT SEP AUG JUL JUN MAY APR MAR FEB JAN DEC NOV OCT SEP AUG JUL JUN MAY APR MAR FEB JAN DEC NOV OCT SEP AUG JUL JUN MAY
                                                    2015                                                     2014                                                    2013
ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND
APR MAR FEB JAN DEC NOV OCT SEP AUG JUL JUN MAY APR MAR FEB JAN DEC NOV OCT SEP AUG JUL JUN MAY APR MAR FEB JAN DEC NOV
      2012                                                2011                                                2010
ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND ND
                                                                                                                                                              2009
**Account history** - If your creditor reported your account balances to us, we list them in this section as additional information about your account. Your balance history may also include your credit limit and high balance or the original loan amount for an installment loan. This section also includes the scheduled payment amounts, amounts actually paid and the dates those payments were made. ND: No Data.

*AB* = Account balance ($)    *DPR* = Date payment received    *SPA* = Scheduled payment amount ($)    *AAP* = Actual amount paid ($)

| | Sep16 | Aug16 |
|---|---|---|
| AB | 73,010 | 73,297 |
| DPR | Sep01 | Aug03 |
| SPA | ND | ND |
| AAP | 352 | 352 |

▷ The original amount of this account was $86,000

# Exhibit B

1   MARY KATE SULLIVAN (State Bar No. 180203)
    LASZLO LADI (State Bar No. 265564)
2   ll@severson.com
    SEVERSON & WERSON
3   A Professional Corporation
    One Embarcadero Center, Suite 2600
4   San Francisco, California 94111
    Telephone: (415) 398-3344
5   Facsimile: (415) 956-0439

6   Attorneys for Defendant
    SPECIALIZED LOAN SERVICING LLC

7

8               UNITED STATES DISTRICT COURT

9       NORTHERN DISTRICT OF CALIFORNIA— SAN FRANCISCO DIVISION

10

11  CECILIA F. INFANTE,                          Case No. 3:17-cv-00793-MMC

12            Plaintiff,                          **SPECIALIZED LOAN SERVICING
                                                 LLC'S INTERROGATORIES TO
13        vs.                                    PLAINTIFF, SET ONE**

14  SPECIALIZED LOAN SERVICING LLC;              The Hon. Maxine M. Chesney
    EXPERIAN INFORMATION SOLUTIONS,
15  INC., an Ohio Corporation; EQUIFAX           Action Filed:      February 17, 2017
    INFORMATION SERVICES, LLC, a Georgia
16  limited liability company; TRANS UNION
    LLC, a Delaware LLC,
17
              Defendants.
18

19  PROPOUNDING PARTY:      DEFENDANT SPECIALIZED LOAN SERVICING LLC

20  RESPONDING PARTY:       PLAINTIFF CECILIA F. INFANTE

21  SET NO.:                ONE

22      In accordance with Federal Rule of Civil Procedure 33, defendant Specialized Loan

23  Servicing LLC ("SLS") hereby requests that plaintiff Cecilia F. Infante ("Plaintiff") provide

24  responses to each of the following Interrogatories separately and fully, in writing and under oath,

25  and that the written response be signed by the person making it, and be properly served on SLS

26  within thirty (30) days after service of these interrogatories.

27                          **DEFINITIONS**

28      The following definitions apply to each of the requests for production set forth herein and

1  are deemed to be incorporated into each of those requests:

2       1.     The term "DOCUMENT" is used in the broadest possible sense and means any

3  "writings," "recordings," or "photographs" as those terms are defined by Rule 1001 of the Federal

4  Rules of Evidence and case law, including materials stored electronically or electromagnetically

5  (such as electronic mail), and any drafts, alterations, modifications, and amendments of those

6  writings, recordings, photographs, or materials.

7       2.     "COMMUNICATIONS" means and includes without limitation, any

8  DOCUMENTS, telephone conversations, discussions, facsimiles, e-mails, meetings, memoranda,

9  and any other medium through which any information is conveyed or requested.

10       3.     "CONCERNING" means referring to, alluding to, responding to, relating to,

11  connected with, commenting on, in respect of, about, regarding, discussing, showing, describing,

12  mentioning, analyzing, reflecting, evidencing, supporting, and/or constituting.

13       4.     "PERSON(S)" means any natural person, firm, unincorporated association,

14  partnership, corporation, or other entity.

15       5.     "YOU" and "YOUR" mean plaintiff Cecilia F. Infante, and her present and former

16  agents, representatives, and any other PERSON purporting to act on her behalf.

17       6.     "SLS" means defendant Specialized Loan Servicing LLC  and its present and

18  former agents, employees, affiliates, parent companies, subsidiaries, divisions, its officers,

19  directors, trustees, principals, owners, representatives, and any other PERSON purporting to act on

20  its behalf, .

21       7.     "COMPLAINT" means the operative complaint in the civil action filed by YOU in

22  the United States District Court, Northern District of California, entitled *Cecilia F. Infante v.*

23  *Specialized Loan Servicing LLC, et al.*, case number 3:17-cv-00793-MMC

24       8.     The term "ACCOUNT" refers to plaintiff Cecilia F. Infante's SLS mortgage loan

25  account number 100155227, referenced in the COMPLAINT..

26       9.     The term "DISPUTE" refers to any communications by YOU with credit reporting

27  agencies or SLS challenging the accuracy of the information being reported about the ACCOUNT.

28  / / /

## INTERROGATORIES

### INTERROGATORY NO. 1:

Identify each out-of-pocket expense YOU contend YOU incurred as a result of allegedly inaccurate information furnished by SLS about YOUR ACCOUNT to credit reporting agencies.

### INTERROGATORY NO. 2:

Describe any emotional distress YOU contend YOU have suffered as a result of allegedly inaccurate information furnished by SLS about YOUR ACCOUNT to credit reporting agencies.

### INTERROGATORY NO. 3:

Describe any damages YOU contend YOU incurred as a result of allegedly inaccurate information YOU furnished by SLS about YOUR ACCOUNT to credit reporting agencies.

### INTERROGATORY NO. 4:

Identify the amounts of attorneys' fees and costs YOU incurred as a result of allegedly inaccurate information furnished by SLS about YOUR ACCOUNT to credit reporting agencies.

### INTERROGATORY NO. 5:

Describe the evidence YOU have that YOUR credit score diminished as a result of allegedly inaccurate information furnished by SLS about YOUR ACCOUNT to credit reporting agencies.

### INTERROGATORY NO. 6:

Describe the evidence YOU have that as a result of information furnished about YOUR ACCOUNT by SLS to credit reporting agencies, potential creditors will draw a more negative inference as to YOUR credit worthiness.

### INTERROGATORY NO. 7:

Explain why YOU contend that the information SLS furnished about YOUR ACCOUNT to credit reporting agencies was inconsistent with the guidelines for accurately reporting credit.

### INTERROGATORY NO. 8:

Explain why YOU contend that the information SLS furnished about YOUR ACCOUNT to credit reporting agencies was inconsistent with industry standards.

1    **INTERROGATORY NO. 9:**

2        Explain why YOU contend that SLS willfully and negligently engaged in the conduct

3    alleged in paragraph 48 of the COMPLAINT.

4    **INTERROGATORY NO. 10:**

5        Explain why YOU contend that SLS was required to report the ACCOUNT as current after

6    it was charged-off, that is over 180 days late, in January 2012.

7    **INTERROGATORY NO. 11:**

8        Identify all of the credit grantors that obtained YOUR credit reports, as alleged in

9    paragraph 31 of the COMPLAINT.

10   **INTERROGATORY NO. 12:**

11       Explain why YOU contend that YOU were unable to refinance the first mortgage on

12   YOUR property due to SLS' inaccurate credit reporting.

13   **INTERROGATORY NO. 13:**

14       Explain why YOUR account with Bank of America is reported as derogatory, as indicated

15   on YOUR production labeled Infante Docs 0024.

16   DATED: May 8, 2017                        SEVERSON & WERSON

17                                             A Professional Corporation

18

19                                             By: _____

20                                                     Laszlo Ladi

21                                             Attorneys for Defendant SPECIALIZED LOAN
                                               SERVICING LLC

22

23

24

25

26

27

28

# Exhibit C

Mark F. Anderson (SBN 44787)
Anderson, Ogilvie & Brewer LLP
1736 Stockton Street, Ground Floor
San Francisco, CA 94133
Phone: (415) 651-1951
mark@aoblawyers.com

Attorney for Plaintiff Cecilia F. Infante

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Cecilia F. Infante, | Case No. 3:17-cv-00793 MMC |
| Plaintiff, | PLAINTIFF'S RESPONSES TO SLS' SPECIAL INTERROGATORIES, SET ONE |
| v. | |
| Specialized Loan Servicing, LLC, | |
| Defendant. | |

INTERROGATORY NO. 1:

Identify each out-of-pocket expense YOU contend YOU incurred as a result of allegedly inaccurate information furnished by SLS about YOUR ACCOUNT to credit reporting agencies.

RESPONSE TO NO. 1:

Plaintiff has incurred postage and delivery charges sending disputes to SLS and the credit reporting agencies.

INTERROGATORY NO. 2:

Describe any emotional distress YOU contend YOU have suffered as a result of allegedly inaccurate information furnished by SLS about YOUR ACCOUNT to credit reporting agencies.

RESPONSE TO NO. 2:

Plaintiff has suffered emotional and mental anguish, humiliation, anger and frustration, annoyance and embarrassment as a result of the publication of the false derogatory reporting by

the SLS. Plaintiff has been strapped with a false credit history, causing mental anguish, emotional distress, frustration, humiliation, and annoyance. Plaintiff has endured substantial and ongoing emotional and mental anguish and loss of self-esteem because of this ordeal. Plaintiff suffers anxiety when considering seeking additional credit because she believes, justifiably, that she will be forced to once again subject himself to the humiliation of having to explain the false information that has been and continues to be circulated about her.

Plaintiff has expended considerable time, effort and expense attempting to persuade SLS to comply with its statutory obligations, including telephone calls and writing letters.

INTERROGATORY NO. 3:

Describe any damages YOU contend YOU have suffered as a result of allegedly inaccurate information furnished by SLS about YOUR ACCOUNT to credit reporting agencies.

RESPONSE TO NO. 3:

Plaintiff seeks damages for her emotional distress caused by SLS's actions. Such damages are not liquidated and do not lend themselves to a statement of calculation. Such damages will be determined by the jury in this matter. The range of verdicts for emotional distress in similar cases have been $50,000.00 and $700,000.00. The most likely damage award based on previous FCRA verdicts for cases of comparable strength to be between $100,000 and $500,000.

Plaintiff has also been damaged not having been able to refinance the existing Bank of America loan secured by a 1st deed of trust and the SLS loan secured by a 2d deed of trust on her property located at 1931 Diamond Way, Fairfield, CA 94533.

Plaintiff wanted to refinance both loans on her property. A refinance would consolidate the two loans and would enable plaintiff to avoid having to pay or refinance a balloon payment on the SLS loan of about $70,000 in 2020. The interest rate on the Bank of America loan is 6%. The principal balance is about $140,000.

1    Plaintiff applied to Travis Credit Union for a loan to refinance both loans. The interest

2    rate on the new loan would have been between 3.8% to 4.0%. However, on December 19, 2016,

3    Travis CU sent plaintiff a Statement of Credit Denial that cites a "serious delinquency," which

4    necessarily is the delinquency that SLS was reporting on the account.

5    Plaintiff's inability to refinance the loans means plaintiff will be paying at least 2% more

6    on $140,000 of indebtedness and that she will have to deal with a balloon payment on the SLS

7    loan in 2020. The additional 2% will cost plaintiff $2,800 per year until she is able to refinance

8    the loans.

9

10   INTERROGATORY NO. 4:

11   Identify the amounts of attorney's fees and costs that YOU incurred as a result of

12   allegedly inaccurate information furnished by SLS about YOUR ACCOUNT to credit reporting

13   agencies.

14   RESPONSE TO NO. 4:

15

16   Plaintiff objects to the interrogatory on the grounds that such documents are protected by

17   the attorney work product privilege and because such documents are not relevant. *Abels v JBC*

18   *Legal Group, P.C*, 233 F.R.D. 645 (N.D. Calif. 2006).

19   INTERROGATORY NO. 5:

20   Describe any evidence YOU have that YOUR credit score diminished as a result of

21   allegedly inaccurate information furnished by SLS about YOUR ACCOUNT to credit reporting

22   agencies.

23

24   RESPONSE TO NO. 5:

25   Each credit report that has negative information from SLS necessarily reduced plaintiff's

26   credit score. Documents prepared by Travis CU indicate plaintiff's credit score based on her

27   Equifax report dated 10/19/16 was 698, which the document indicates was due in large part to

28   SLS's reporting (Infante Docs 126-127).

INTERROGATORY NO. 6:

Describe any evidence YOU have that as a result of allegedly inaccurate information furnished by SLS about YOUR ACCOUNT to credit reporting agencies, potential creditors will draw a more negative inference as to YOUR credit worthiness.

RESPONSE TO NO. 6:

See response to No. 5.

INTERROGATORY NO. 7:

Explain why YOU contend that the information SLS furnished about YOUR ACCOUNT to credit reporting agencies was inconsistent with the guidelines for accurately reporting credit.

RESPONSE TO NO. 7:

The 2015 CDIA Credit Reporting Resource Guide, p. 6-39, states that in the case of a modified loan, the Special Comment Code CO (loan modified) may be reported. SLS did not report that the loan was modified.

The Guidelines require the payment history to be accurate, but SLS' reporting on the payment history was inaccurate. In 2015 and 2016, SLS reported the "Pay Status" of the loan was "charged off," but that was not accurate. The status was current since plaintiff was current in her loan payments of $352 per month. The Guidelines also require accurate reporting of monthly loan payments, but SLS reported no data from February 2012 through June 2016. SLS reported the loan was charged off in the months July through October 2016, which was not accurate; in fact, the loan had been charged off in part in January 2012.

INTERROGATORY NO. 8:

Explain why YOU contend that the information SLS furnished about YOUR ACCOUNT to credit reporting agencies was inconsistent with industry standards.

RESPONSE TO NO. 8:

See response to No. 7.

INTERROGATORY NO. 9:

Explain why YOU contend that SLS willfully and negligently engaged in the conduct alleged in paragraph 48 of the COMPLAINT.

RESPONSE TO NO. 9:

Plaintiff Cecilia F. Infante has owned the residential property located 1931 Diamond Way, Fairfield, CA 94533 since July 2003. Defendant Specialized Loan Servicing, Inc. services a loan that is secured with a second deed of trust on that property that was originated on October 26, 2005.

Effective March 13, 2012, Infante and Specialized Loan Servicing LLC entered into a written Loan Modification the terms of which were that plaintiff would pay $352.01 per month covering principal and interest beginning April 1, 2012, continuing until the unpaid loan balance of $87,983.99 was paid in full. The interest rate on the modified loan was fixed at (only) 1.1%.

On March 13, 2012, Specialized Loan Servicing LLC sent plaintiff a letter in which it assured plaintiff that if she made the mortgage payments due under the Loan Modification Agreement, it would report the payment history to the CRAs and there would be no negative credit reporting:

> You are a valued customer to Specialized Loan Servicing LLC and we appreciate your business. A modification of your loan has been approved; enclosed are two (2) copies of the agreement. There are tremendous benefits of a loan modification, some of which may include a lower or fixed interest rate and lower monthly payment, which will result in a current loan status. .....
> The modification of your loan will be completed and go into effect when both the signed document and certified funds are received by SLS before 03/31/12 [plaintiff submitted the signed documents before that date and no funds were due]. SLS will continue normal servicing of this loan until documents and funds are received. If your loan is delinquent or will become delinquent prior to this time [it was not delinquent], collection efforts will continue, including foreclosure activity. Payment history will continue to be reported to the credit bureaus during the loan modification process [they failed to do so]. You must continue to make your scheduled payments in order to avoid negative credit reporting.

Specialized Loan Servicing LLC breached its promises by failing to report plaintiff's payments to the CRAs until 2016 and beginning in 2016 it inaccurately reported the account as "charged off" and "transferred to recovery."

Plaintiff Infante made each payment due under the Loan Modification Agreement on a

1    timely basis from its effective date of April 1, 2012, to date. On May 25, 2016, defendant
     Specialized Loan Servicing LLC sent plaintiff a letter that states that the loan account was
2    current with the next contractual date being June 1, 2016.

3        However, beginning as early as January 2016, Specialized Loan Servicing LLC began
     reporting to the CRAs that the loan had been "transferred to recovery" and "charged off" while at
4    the same time reported plaintiff made the required monthly payments of $352 per month.
     Specialized Loan Servicing LLC continued making the same inaccurate reports to the CRAs
5    each month from July 2016, to the present.

6
         On October 20, 2016, plaintiff sent a letter to Specialized Loan Servicing LLC in which
7    she disputed the reports to the CRAs. She stated the mortgage loan should not have been
     reported as transferred to recovery or reported as charged off.
8

9        In a response to the letter of October 20, 2016, Specialized Loan Servicing LLC
     erroneously claimed the loan was in a state of "severe delinquency." The letter also stated that
10   the account had been "charged off for credit reporting purposes on January 26, 2012 and credit
     reporting ceased at that time" ignoring the fact that it was reporting the charge off occurred in
11   2016.

12
         On November 28, 2016, plaintiff responded to Specialized Loan Servicing LLC's
13   October 20, 2016 letter. Plaintiff pointed out she had made all payments due under the Loan
     Modification Agreement on a timely basis during the past four plus years and that the report that
14   she had "failed to pay" the payments (as reported by Experian) was incorrect. Specialized Loan
     Servicing LLC responded with a letter on December 23, 2016, in which it merely repeated what
15   it had said in its October 20, 2016, letter.

16
         As of December 5, 2016, the three credit reporting agencies (CRAs) reported that the
17   Specialized Loan Servicing LLC account was charged off in each of the months July through
     October 2016 and that $87,581 had been written off. The CRAs reported no data on the account
18   for the months prior to July 2016 going back to January 2012 even though plaintiff made the
     required payments in each of those months. This information was inaccurate and materially
19   misleading.

20
         On January 10, 2017, plaintiff sent dispute letters to the CRAs in which plaintiff said the
21   Specialized Loan Servicing report was inaccurate because "the loan has been current since April
     2012" and that she had "been paying on time for over four (4) years. She asked them to delete
22   the account. She enclosed copies of bank statements, the loan modification, and her personal
     identifying information.
23

24       Plaintiff's letters were clear and convincing at least to anyone with a nodding
     acquaintance with the FCRA. Plaintiff specified the inaccuracy and sent proof it was inaccurate.
25   Instead of deleting the account based on this proof, Specialized Loan Servicing steadfastly
     insistent its reporting was correct.
26

27       The fact that SLS's reporting was reckless makes it a willful violation of the FCRA.

28

INTERROGATORY NO. 10:

Explain why YOU contend that SLS was required to report the ACCOUNT as current after it was charged-off, that is over 180 days late, in January 2012.

RESPONSE TO NO. 10:

Plaintiff had made each of the required loan payments on the loan as modified beginning April 1, 2012.

INTERROGATORY NO.11:

Identify all of the credit grantors that obtained YOUR credit reports, as alleged in paragraph 31 of the COMPLAINT.

RESPONSE TO NO. 11:

This information is equally available to SLS. The inquiry sections of plaintiff's credit reports have this information.

INTERROGATORY NO. 12:

Explain why YOU contend that YOU were unable to refinance the first mortgage on YOUR property due to SLS' inaccurate credit reporting.

RESPONSE TO NO. 12:

See response to No. 3. SLS's inaccurate report that the loan had been charged off within in 2016 prevented plaintiff from being able to refinance.

INTERROGATORY NO.13:

Explain why YOUR account with Bank of America is reported as derogatory, as indicated on YOUR production labeled Infante Docs 024.

RESPONSE TO NO. 13:

The derogatory information was historical—relating to delinquent payments in 2011 and 2012.

Dated: May 30, 2017.

By _____
Mark F. Anderson

**CERTIFICATE OF SERVCE**

 I am a member of the State Bar of California and not a party to this action. My business address is 1736 Stockton Street, Ground Floor, San Francisco, CA 94133.

 On May 30, 2017, I served PLAINTIFF'S RESPONSES TO SPEC INTERROGATORIES, SET ONE. on the parties in the within action by email and by First Class, US Mail, postage prepaid, addressed as follows:

Mary Kate Sullivan
Laszlo Ladi
SEVERSON & WERSON
One Embarcadero Center, Suite 2600
San Francisco, CA 94111

 I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: May 30, 2017

Mark F Anderson

1
2
## VERIFICATION
3
4    I am the plaintiff in the matter of *Infante v SLS.* I have read the
5    responses to the defendant's Special Interrogatories, Set 1, and know its contents.
6
7    The matters stated therein are true of my personal knowledge, except as to those
8    matters I state on information and belief, and as to those matters, I believe them to
9    be true.
10
     Dated: May 26, 2017
11
                                        _Cecilia F. Infante_
12                                       Cecilia F. Infante
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit D

# 2015 Credit Reporting Resource Guide ®

**EXPERIAN-STILES00191**

# Field Definitions

## Base Segment

| FIELD | FIELD NAME & DESCRIPTION | 426 Character Format | | |
| --- | --- | --- | --- | --- |
| | | Length | Position | Recording Technique |
| 18 | **Payment History Profile**<br>Contains up to 24 months of consecutive payment activity for the previous 24 reporting periods prior to the Date of Account Information (Field 24) being reported. Report one month's payment history in each byte from the left to right in most recent to least recent order.  The first byte should represent the Account Status Code reported in the previous reporting period.  Refer to Exhibit 5 for examples of reporting payment history, which includes examples for month-end reporters, as well as examples for reporters who submit data on other days of the month (e.g., 1st, 15th, etc.).  Values available:<br><br>0  =  0 payments past due (current account)<br>1  =  30 - 59 days past due date<br>2  =  60 - 89 days past due date<br>3  =  90 - 119 days past due date<br>4  =  120 - 149 days past due date<br>5  =  150 - 179 days past due date<br>6  =  180 or more days past due date<br>B  =  No payment history available prior to this time – either because the account was not open or because the payment history cannot be furnished.  A "B" may not be embedded within other values.<br>D  =  No payment history available this month.   "D" may be embedded in the payment pattern.<br>E  =  Zero balance and current account (Applies to Credit Cards and Lines of Credit)<br>G  =  Collection<br>H  =  Foreclosure Completed<br>J  =  Voluntary Surrender<br>K  =  Repossession<br>L  =  Charge-off<br><br>**No other values are acceptable in this field.**<br><br>If a full 24 months of history are not available for reporting, the ending positions of this field should be B-filled.<br><br>The Payment History Profile is intended to be used to report *monthly* history, regardless of the Terms Frequency.<br><br>Reporting of the Payment History Profile provides a method for automated correction of erroneously reported history.<br><br>**For important information:**<br>• Paid accounts - refer to Frequently Asked Question 41.<br>• First-time reporters - refer to Frequently Asked Question 22. | 24 | 127-150 | AN |

# Frequently Asked Questions and Answers

## REPORTING SCENARIOS

Please note that within these reporting guidelines, certain fields are mentioned that provide specific guidance for the situations described.  For all other Metro 2® fields, the standard guidelines described within the Field Definitions module should be followed.

**33.  Question: When and how should Debit Cards be reported?**

Answer: Debit Cards should be reported only when backed by a line of credit or overdraft protection.

Report the following Base Segment fields as specified:

- Account Type Code = 43 (Debit Card)
- Portfolio Type = C (Line of Credit), O (Open) or R (Revolving) depending on the terms
- Credit Limit = assigned credit limit
- Highest Credit or Original Loan Amount = highest balance ever attained when the overdraft protection was used

**34.  Questions: Charge-offs:**

**(a) How should charged off accounts be reported?**

Answer: Report the following Base Segment fields:

- Scheduled Monthly Payment Amount = zero
- Account Status = 97 (Unpaid balance reported as a loss – charge-off)
- Current Balance and Amount Past Due = outstanding balance amount, which may include fees and interest.  If payments are made by the consumer, report the declining balance in these two fields.
- Original Charge-off Amount = the original amount charged to loss, regardless of the declining balance.  This field should not be changed.
- FCRA Compliance/Date of First Delinquency = the date of the first delinquency that led to the account being charged off
- Date Closed = For Installment and Mortgage accounts (Portfolio Types I and M), zero fill.  For Revolving, Open and Line of Credit accounts (Portfolio Types R, O and C), if the account is closed, report the date the account was closed to further purchases.  Otherwise, zero fill.
- Date of Last Payment = date of the consumer's most recent payment

**Note:** If the deficiency balance is being charged off for accounting and general ledger purposes only, ***do not report*** the account as a charge off.  Deduct the charged off amount from the Current Balance of the ongoing account.

***FAQ 34 continued on next page***

EXPERIAN-STILES00386

# Frequently Asked Questions and Answers

### 34(b) How should paid charge-off accounts be reported?

Answer: Report the following Base Segment fields:

- Scheduled Monthly Payment Amount = zero
- Account Status = 64 (Account paid in full, was a charge-off)
- Special Comment Code = If the account is settled for less than the full balance, include **AU**.
- Current Balance and Amount Past Due = zero
- Original Charge-off Amount = the original amount charged to loss
- Date of Account Information = date paid
- FCRA Compliance/Date of First Delinquency = the date of the first delinquency that led to the account being charged off
- Date Closed = For Installment and Mortgage accounts (Portfolio Types I and M), report the date the account was paid in full.  For Revolving, Open and Line of Credit accounts (Portfolio Types R, O and C), report the date the account was closed to further purchases.
- Date of Last Payment = date of the consumer's most recent payment

### 34(c) Is there a preferred method of reporting when an account is partially charged off?

Answer: When the consumer is held responsible for the portion of the debt that is charged off, follow the guidance below.

**Note:** If the deficiency balance is being charged off for accounting and general ledger purposes only, ***do not report*** the charge off as a separate account as described below.  Deduct the charged off amount from the Current Balance of the ongoing account.

Report the original account with the appropriate Account Status for that month (e.g., Current, 30 days delinquent, 60 days delinquent) with a balance that does not include the amount charged to loss.

The charged off portion of the balance should be reported as a separate account with a new Account Number.  Other pertinent fields should be reported as follows:

- Date Opened = original date opened
- Original Charge-off Amount = amount charged to loss
- FCRA Compliance/Date of First Delinquency = date of the first delinquency in the series of delinquencies that led up to the charge-off

If the original account is subsequently charged off, both accounts would be reported as Account Status Code **97** (Charge-off), but would have different Original Charge-off Amounts.

CREDIT REPORTING RESOURCE GUIDE®
*Copyright 2015 © Consumer Data Industry Association*

**EXPERIAN-STILES00387**

# Frequently Asked Questions and Answers

**42.  Question: How should a renegotiated/refinanced loan be reported?**

Answer: The guidelines described below are used for renegotiated or refinanced loans that are ***not*** associated with one of the federal loan modification programs.  There are three options for reporting:

1.  If the original Account Number and Date Opened are retained, modify the amounts and terms as per the refinanced agreement.  Fields that may be changed include Original Loan Amount, Terms Duration, Terms Frequency, Scheduled Monthly Payment Amount and Current Balance.

    **Optional:** Special Comment Code **CO** (Loan modified) may be reported. Note that this code is used when reporting accounts that are modified, but <u>not</u> under a federal government plan.

    Special Comment **CO** may be reported as long as deemed appropriate by the data furnisher, or until another Special Comment becomes more critical.  For the length of time the Special Comment should be reported, consult with your internal Legal or Compliance department.

2.  If the original Account Number changes and the Date Opened remains the same, follow the above reporting guideline, and include an L1 Segment with the new Account Number.  Refer to the L1 Segment specifications within the Field Definitions for reporting guidelines.

3.  If the original Account Number and Date Opened change, report the original loan as specified:

    • Account Status Code = 13 (Paid)
    • Payment Rating = the appropriate code that identifies the status of the account within the activity period being reported
    • Special Comment = AS (Account closed due to refinance)
    • Current Balance and Amount Past Due = zero

    Report the newly refinanced/renewed loan with the new Account Number, new Date Opened and all other applicable fields.  Payment history that occurred prior to the new Date Opened should not be reported with this account.

**Note: For reporting guidelines specific to the federal loan modification programs, such as Making Home Affordable, Hope for Homeowners and the Fannie Mae/Freddie Mac Mortgage Loan Modification Program, refer to the module called "Mortgage Loan Modifications".**

EXPERIAN-STILES00392

# Exhibit E

1              UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3                SAN FRANCISCO DIVISION

4

5    CECILIA F. INFANTE,

6                 Plaintiff,

7         vs.                    No. 3:17-cv-00793-MMC

8    SPECIALIZED LOAN SERVICING
     LLC; EXPERIAN INFORMATION
9    SOLUTIONS, INC., an Ohio
     Corporation; EQUIFAX
10   INFORMATION SERVICES, LLC, a
     Georgia limited liability
11   company; TRANSUNION LLC, a
     Delaware LLC,

12                Defendants.
13   ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

14

15                  DEPOSITION OF

16                DOUGLAS A. MINOR

17

18          Monday, November 13, 2017

19             10:00 A.M. - 1:05 P.M.

20

21             1990 S. Bundy Drive
                   Suite 540
22           Los Angeles, California

23

24      Nancy Collier Hamada, CSR No. 5819

25



DOUGLAS A. MINOR                                         November 13, 2017
INFANTE vs SPECIALIZED LOAN SERVICING LLC                              2

```
 1                  APPEARANCES OF COUNSEL

 2   For Plaintiff:

 3        ANDERSON OGILVIE & BREWER, LLP
          BY:   MARK F. ANDERSON, ESQ.
 4        1736 Stockton Street, Ground Floor
          San Francisco, California  94133
 5        415.651.1951
          mark@aoblawyers.com
 6        (PRESENT TELEPHONICALLY)

 7   For Defendants:

 8        SEVERSON & WERSON
          BY:   LASZLO LADI, ESQ.
 9        One Embarcadero Center, Suite 2600
          San Francisco, California  94111
10        415.398.3344
          ll@severson.com
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



DOUGLAS A. MINOR                                          November 13, 2017
INFANTE vs SPECIALIZED LOAN SERVICING LLC                              3

1                          INDEX OF EXAMINATION

2

3    WITNESS:  DOUGLAS A. MINOR

4    EXAMINATION                                          PAGE

5

6    BY MR. LADI                                            6

7

8

9

10

11

12                     INFORMATION REQUESTED

13                          (NONE)

14

15

16

17

18            WITNESS INSTRUCTION NOT TO ANSWER

19                          (NONE)

20

21

22

23

24

25



DOUGLAS A. MINOR                                    November 13, 2017
INFANTE vs SPECIALIZED LOAN SERVICING LLC                          4

```
 1                    INDEX TO EXHIBITS

 2

 3   Exhibit              Description              Page

 4   1        Biography and CV of Mr. Minor       10

 5   2        Infante Impact Analysis             15

 6   3        Chase Mortgage Commitment           20
              Letter
 7
     4        12/19/2016 Statement of Credit      20
 8            Denial, Termination or Change

 9   5        Excerpts from CRRG                  33

10   6        CBCInnovis Infile Credit            53
              Report
11
     7        11/28/2016 Infante letter           66
12            to SLS

13   8        12/5/2016 Equifax Credit Report    73

14   9        12/5/2016 TransUnion Credit         76
              Report
15
     10       12/5/2016 Experian Credit           78
16            Report

17   11       12/19/2016 Statement of Credit      79
              Denial, Termination or Change
18
     12       1/20/2017 Experian letter to        88
19            Infante

20   13       2/1/2017 TransUnion                 89
              Investigation Results
21
     14       2/7/2017 Equifax letter to          91
22            Infante, reinvestigation
              results
23
     14A      4/27/2017 Experian credit           98
24            report

25
```



DOUGLAS A. MINOR                                      November 13, 2017
INFANTE vs SPECIALIZED LOAN SERVICING LLC                            5

1                    INDEX TO EXHIBITS (CONTINUED)

2

3    Exhibit                Description              Page

4    15        4/25/2017 TransUnion credit        98
               report
5
     16        4/18/2017 Equifax credit           98
6              report

7    17        CBCInnovis ID Cross Check          100

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



1  charge-off being reported and prior to the

2  modification being accepted.

3      Q    So then I'm wondering why you're saying

4  that there wasn't a deficiency that supports that

5  charge-off in January 2012 if she was late on the

6  loan before January 2012?

7      A    Yeah, so what I'm questioning is from the

8  modification it appears that -- I believe it even

9  says on the documents there's zero deficiencies,

10  meaning that whatever monies that were owed in the

11  past that had been missed were added onto the

12  balance that was negotiated through the

13  modification.  So in my opinion they're not losing

14  any money.  It's just being --

15      Q    I guess I'm just -- I'm asking kind of in

16  the period before that modification, so you know,

17  sort of as of January 2012, she had been

18  delinquent subsequent on the loan, and she had

19  been delinquent in fact over 120 days, and so that

20  charge-off at that point in January 2012, you

21  haven't seen anything that suggests that's

22  incorrect?

23      A    No.

24      Q    Okay.  And you've referenced 120 days.

25  Is that kind of an industry standard for mortgage



1  interested in -- well, first I should ask, what

2  were you reading from, this document?

3      A    This is from the Fannie Mae seller guide.

4  It's an underwriting guideline in relation to

5  charge-offs.

6      Q    Okay.  And so that's a mortgage industry

7  guideline?

8      A    And this is -- I mean, we're talking

9  about a mortgage account.

10      Q    And the reason you said that you can't

11  opine as to whether or not SLS's determination of

12  that charge-off was reasonable is because that's

13  kind of a lender specific or a mortgage company

14  specific concept of when they determine whether or

15  not they're likely to get paid on the loan; is

16  that correct?

17      A    Yeah, and what their policies and

18  procedures are as far as reporting charge-offs are

19  concerned, which I don't have privy.

20      Q    Okay, that makes sense.

21           So the -- I forgot what I was going to

22  ask you about this.  Oh, I remember now what I was

23  asking about.  I don't know that I understood your

24  answer really about that in the account status

25  field after an account is designated as a



1  charge-off through a 97 code using the Metro 2

2  guidelines, is there ever a situation where that

3  97 changes to something else?

4      A    It shouldn't be changed, no.

5      Q    So that charge-off in the account status

6  is something that would be reported -- once it's

7  charged off in the account status, that doesn't

8  change; correct?

9      A    It shouldn't be changed, correct.

10     Q    And this is based on the Consumer

11  Reporting Resource Guide; correct?

12     A    Yes.

13     Q    Okay.  And I actually printed a number of

14  these pages myself.  This is Exhibit 5.

15          (Deposition Exhibit 5 was marked for

16          identification by the court reporter.)

17  BY MR. LADI:

18     Q    Can you take a look at these documents?

19  These are some of the pages that I printed.  Are

20  these familiar to you?  These are pages from the

21  CRRG; correct?

22     A    Yes.

23     Q    If you could look on the second page in

24  this packet, it's 6-33.  Is this what the CRRG

25  recommends as far as how a charge-off account is



1  bureau is going to have an impact as to whether or

2  not that was from, let's say, November or October

3  information, or even the month previous,

4  September.

5       Q    You said "most of the time."  Is there a

6  period of time sometimes on a credit report when

7  furnishers don't furnish data for a month?

8       A    They may, and at times you'll see a

9  credit report where there's no data.

10      Q    Sure.

11      A    So if that was an error on the

12 furnisher's report or they decided not to give

13 information, you know, I can't opine about every

14 single company when there's no data.

15      Q    Sure, and that makes sense.  There's a

16 variety of reason why they might not report data

17 for a given month?

18      A    Right.

19      Q    So in that case the first byte would

20 represent the last month that was reported;

21 correct?

22      A    Correct.

23      Q    Is there anything wrong with that in your

24 opinion?

25      A    No.



1  issues.

2         So it's -- I think it's inaccurate for

3  them to have updated it with that date of first

4  delinquency, and the impact that it's having on

5  someone's credit score and the underwriting of

6  someone getting credit is having a negative

7  impact.

8     Q    So I think you went a little further than

9  I meant to go.  I think what I wanted to clarify

10  and understand was that a charge-off status, it

11  shows up in the account status, correct, and then

12  that stays with the account for the life of the

13  loan until it's paid off; correct?

14     A    Until that code is changed.

15     Q    Sure.  And that code is not -- I think

16  you testified earlier that you're not aware of it

17  being changed unless it's paid off, in which case

18  it goes to a 64 which is paid but formerly charged

19  off; correct?

20     A    Correct.

21     Q    But otherwise, until it's paid, that

22  charge-off account status stays on the loan?

23     A    Correct.  Like we said in the beginning,

24  why are they charging it off to begin with if

25  they're getting all their money through the



1  history profile, or are you referring to changing

2  the date of first delinquency?

3      A    Well, the date of first delinquency, and

4  the way it appears, it appears as though there's a

5  new charge-off that's happening in those reports

6  because it wasn't showing up in the credit

7  profiles before.

8      Q    So in your opinion is reporting a

9  charge-off code in the payment history incorrect?

10  I'll clarify that even further.

11          Reporting a charge-off code of L in the

12  payment history profile in a month after the

13  charge-off occurred, is that incorrect?

14      A    If the account was charged off and it was

15  reported in the payment history as a charge-off,

16  that would be sufficient, because as you said, in

17  the Metro 2 format it's saying that it's not going

18  to change.  So if you're just updating that

19  information each month, there wouldn't be a need

20  because it doesn't need to change.  It's already

21  been charged off the one time.

22      Q    Right.  And so to put that -- to be more

23  specific, Exhibit 5, the CRRG page 4-12, for the

24  field payment history profile it says, you know,

25  one of the codes is L, charge-off, and if it was



1    Q    And is there anything in your opinion

2  that makes it inaccurate to not report after an

3  account is charged off?

4    A    Well, like in this situation where you

5  have a modified renegotiated loan with the same

6  account number, same origination date, and they're

7  making the payments on time, to not report that

8  information would be inaccurate.

9         They can report the declining balance

10  which they should because they're making a payment

11  on it.  I believe that they should -- if they want

12  to represent most accurately what's going on, they

13  would put a special comment code CO in there, loan

14  modified, show that the payments are being made,

15  just as it says B of A is reporting it, loan

16  modified with the payment history in there.

17         Do they have to do that?  No.  Should

18  they do that in my opinion?  Absolutely.  That's

19  what's most accurate.

20    Q    Okay.  But there's no obligation or no

21  requirement just in general for a furnisher to

22  furnish that information about any customer's

23  account, furnishing is optional; correct?

24    A    Correct.  But if they are going to supply

25  information to the credit bureaus, it needs to be



1    accurate.  So in this case SLS is reporting

2    information to the credit bureaus.  It should be

3    accurate.

4        Q    Do you have any idea of why SLS started

5    reporting again in those months between, you know,

6    I think it's August and September, October 2016?

7    Do you know why there was reporting for those

8    months?

9        A    Why they changed the way they were

10   reporting, is that what you're asking me?

11       Q    Or just why they reported in the first

12   place?

13       A    I can't -- I don't work at SLS.  I don't

14   have their internal...

15       Q    This will be Exhibit 7.

16            (Deposition Exhibit 7 was marked for

17            identification by the court reporter.)

18   BY MR. LADI:

19       Q    Have you seen this before?

20       A    Yes, I remember seeing this.

21       Q    So this is a dispute letter that

22   Ms. Infante wrote directly to SLS; correct?

23       A    Yes.

24       Q    And on the second and third pages --

25   Mark, sorry, I totally forgot.  This is Infante

