Mark F. Anderson (SBN 44787)
ANDERSON, OGILVIE & BREWER LLP
1736 Stockton Street, Ground Floor
San Francisco, California 94133
Telephone: (415) 651-1951
Fax: (415) 500-8300
Email: mark@aoblawyers.com

Attorneys for Plaintiff Cecilia F. Infante

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CECILIA F. INFANTE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br><br>SPECIALIZED LOAN SERVICING LLC,<br><br>　　　　Defendants. | Case No. 3:17-cv-00793 MMC<br><br><br><br>Hearing Date: January 12, 2018<br>Time: 9:00 AM<br>Courtroom 7, 19th FL, San Francisco<br>Judge: Hon. Maxine M. Chesney |

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT SPECIALIZED LOAN

SERVICING LLC'S MOTION FOR SUMMARY JUDGMENT

**MEMO IN OPP MSJ, INFANTE V SPECIALIZED LOAN SERVICING LLC,  NO. 17-0793 MMC**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

I. ISSUES PRESENTED ..................................................................................................... 1

II. LEGAL STANDARD FOR MOTIONS FOR SUMMARY JUDGMENT ............................... 1

III. STATEMENT OF FACTS .............................................................................................. 2

IV. ARGUMENT .................................................................................................................. 6

    **A.**    This Court Should Apply the "Patently Incorrect or Materially Misleading Standard" to Test the Credit Reports' Accuracy ........................................................................ 6

    **B.**    SLS' Credit Reporting in 2016 Was Inaccurate ....................................................... 7

    **C.**    SLS' Credit Reporting Was Materially Misleading ................................................. 8

    **D.**    SLS' Credit Reporting was Incomplete .................................................................... 9

    **E.**    SLS Failed to Conduct a Reasonable Investigation of Plaintiff's Disputes ............. 9

    **F.**    SLS Violated Civil Code § 1785.25 (a) .................................................................. 10

    **G.**    This Court Decided an Analogous FCRA Case in 2013 ........................................ 10

    **H.**    There Are Material Issues of Genuine Facts Concerning Damages ....................... 11

        **1.**    Plaintiff Has a Valid Claim Emotional Distress Damages ......................... 11

        **2.**    Plaintiff May Claim Damages for Her Inability to Refinance ................... 13

        **3.**    Plaintiff May Claim Punitive Damages Based on SLS's Willful Violations of the FCRA and Civil Code § 1785.25(a) .................................................. 14

IV.    CONCLUSION ........................................................................................................ 14

**TABLE OF AUTHORITIES**

Page(s)

CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).................................................................................................................1

*Carvalho v. Equifax Information Services*,
    629 F.3d 876 (9th Cir. 2010) ....................................................................................................6

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).................................................................................................................1

*Devincenzi v. Experian Information Solutions*,
    2017 WL 86131, at *6. ............................................................................................................8

*Gorman v Wolpoff & Abramson, LLP*,
    584 F.3d 1147 (9th Cir. 2009) .......................................................................................6, 9, 14

*Guimond v Trans Union Credit Information Company*,
    45 F.3d 1329 (9th Cir. 1995) ............................................................................................10, 11

*Johnson v MBNA*,
    357 F.3d 426 (4th Cir. 2004) ...................................................................................................9

*Johnson v. Hale*,
    13 F.3d 1351 (9th Cir.1994) ..................................................................................................12

*Safeco Ins. Co. v Burr*,
    551 U.S. 47 (2007).................................................................................................................11

*Thornhill Publ'g Co., Inc. v. GTE Corp.*,
    594 F.2d 730 (9th Cir. 1979) ...................................................................................................2

*Thorp v EduCap, Inc.*,
    2013 WL 5956191 .....................................................................................................10, 11, 14

*Valentine v First Advantage Saferent*,
    2009 WL 4349694 (C.D. Calif.) ............................................................................................12

*Zhang v. Am. Gem Seafoods, Inc.*,
    339 F.3d 1020 (9th Cir.2003) ................................................................................................12

**STATUTES**

15 U.S.C. § 1681 ..................................................................................................................14

15 U.S.C. § 1681s-2(b) .......................................................................................................7, 9

15 U.S.C. § 1681s-2(a)(3) ....................................................................................................14

Cal. Civ. Proc. Code § 1785.25 ...........................................................................................14

Cal. Civ. Proc. Code § 1785.25(a) ............................................................................10, 11, 12

Cal. Civ. Proc. Code § 1785.25(f) .......................................................................................14

Cal. Civ. Proc. Code § 1785.31 ...........................................................................................14

Cal. Civ. Proc. Code § 1785.31(a) .......................................................................................12

RULES

Fed. R. Civ. P. 56(a) ..............................................................................................................1

Fed. R. Civ. P. 56(c)(1)(A) ....................................................................................................1

REGULATION

12 C.F.R. § 1022.41(a)...........................................................................................................7

## I. ISSUES PRESENTED

Defendant Specialized Loan Servicing LLC's contends its credit reporting was accurate and in compliance with the Fair Credit Reporting Act. Plaintiff Infante will demonstrate that SLS's credit reporting was inaccurate, incomplete, and misleading and that there are genuine issues of material fact as to plaintiff's damages.

## II. LEGAL STANDARD FOR MOTIONS FOR SUMMARY JUDGMENT

A party is entitled to summary judgment where it "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if it could reasonably be resolved in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material where it could affect the outcome of the case. *Id*.

The moving party has the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once the movant has made this showing, the burden shifts to the nonmoving party to identify specific evidence showing that a material factual issue remains for trial. *Id*. The nonmoving party may not rest on mere allegations or denials from its pleadings, but must "cit[e] to particular parts of materials in the record" demonstrating the presence of a material factual dispute. Fed. R. Civ. P. 56(c)(1)(A).

The nonmoving party need not show that the issue will be conclusively resolved in its favor. See *Anderson*, 477 U.S. at 248-49. All that is required is the identification of sufficient evidence to create a genuine dispute of material fact, thereby "requir[ing] a jury or judge to resolve the parties' differing versions of the truth at trial." Id. (internal quotation marks omitted). If the nonmoving party cannot produce such evidence, the movant "is entitled to...judgment as a

matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex*, 477 U.S. at 323.

On summary judgment, the court draws all reasonable factual inferences in favor of the nonmoving party. *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. However, conclusory and speculative testimony does not raise a genuine dispute and is insufficient to defeat summary judgment. See *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738-39 (9th Cir. 1979).

**II. STATEMENT OF FACTS**. Infante has owned the residential property located 1931 Diamond Way, Fairfield, CA since July 2003. SLS serviced her loan secured with a second deed of trust beginning in October 2005. Infante paid the monthly payments on time through June 2011 at which time she ran into some financial difficulties (*Id*.). In the following months SLS and Infante discussed a loan modification (Declaration of Reden Infante, ¶¶ 1-5).

On March 13, 2012, SLS sent Infante a letter in which it offered to modify the loan to lower the monthly payments. SLS assured her that if she made the mortgage payments due under the Loan Modification Agreement, it would report the payment history to the three national credit reporting agencies and there would be no negative credit reporting:

> You are a valued customer to Specialized Loan Servicing LLC and we appreciate your business. A modification of your loan has been approved; enclosed are two (2) copies of the agreement. There are tremendous benefits of a loan modification, some of which may include a lower or fixed interest rate and lower monthly payment, which will result in a current loan status. …..
> The modification of your loan will be completed and go into effect when both the signed document and certified funds are received by SLS before 03/31/12. SLS will continue normal servicing of this loan until documents and funds are received. If your loan is delinquent or will become delinquent prior to this time, collection efforts will continue, including foreclosure activity. Payment history will continue to be reported to the credit bureaus during the loan modification process. You must continue to make your scheduled payments in order to avoid negative credit reporting (Exh F to Wallace Decl).

Infante signed and submitted the agreement before the due date. The loan was not delinquent at the time the agreement went into effect (Exhibit B to Anderson Declaration).

Under the terms of the modified loan plaintiff had to pay $352.01 per month for the principal and interest beginning April 1, 2012, continuing until the balance of $87,983.99 was paid in full. The interest rate on the modified loan was fixed at 1.1% (Exhibit G to Wallace Declaration).

Infante made each payment on time as required by the terms of the Loan Modification Agreement from its effective date of April 1, 2012, through October 2017 when she was able to refinance the SLS loan along with a refinance of the loan held by Bank of America secured by a first deed of trust (Exh B to Anderson Decl; Reden Infante Decl ¶¶ 8-15).

Infante had a Bank of America loan secured by a first deed of trust. The interest rate on the note was originally 6.55%. In November 2012, the bank agreed to reduce the interest rate to 6.0% along with a reduction in principal (Reden Infante Decl. ¶¶ 3,7).

In February, March and April 2016, plaintiff and her husband Reden Infante talked to Travis Credit Union about refinancing both loans on the property. They were seeking a loan to replace Bank of America and SLS loans. At that time, the loan officer said they would have to wait four years from the time the SLS loan had been modified to be eligible to refinance (Reden Infante Decl. ¶¶ 9, 10).

On April 29, 2016, Infante she sent a letter to SLS explaining she was in the process of refinancing her first mortgage and for that reason needed a letter stating she was not in default or delinquent on the SLS loan. In response, on May 25, 2016, SLS sent plaintiff a letter that states that she was current:

> as of the date of this letter, the … loan account is reflecting current with the next contractual date being June 1, 2016. We show no delinquent payments in the last 12 months (Exhibits H & I to Wallace Declaration).

However, just two months later in July 2016, SLS suddenly, inexplicably and without notice to Infante reported to the CRAs that the loan was charged off and in succeeding months continued to report a charge off each month thereafter (Exhibit A to Anderson Decl).

In early October 2016, plaintiff applied to Travis Credit Union refinance her loans. Travis Credit Union obtained a report on her credit standing. The report states the Bank of America loan had been modified and was current, but the SLS loan had been "transferred to recovery" and was a "charge off" with four late payments in the previous four months. The report stated plaintiff's credit score based on her Equifax report was 698 and that her score had been adversely affected by a "serious delinquency" (Declaration of Reden Infante, ¶ 11).

On October 20, 2016, plaintiff sent a letter to SLS in which she disputed the reports to the CRAs. She stated the mortgage loan should not have been reported as transferred to recovery or reported as charged off. In a response, on November 17, 2016, SLS sent Infante a non-responsive letter that states "credit reporting ceased" after January 2012, and the account was being reported accurately (Exhibits J & K to Wallace Declaration).

Infante sent another letter to SLS on November 28, 2016, in which she pointed out she had made all payments due under the Loan Modification Agreement on a timely basis during the past four plus years and that the SLS report to the CRAs that she had "failed to pay" the payments (as reported by Experian) was incorrect. SLS again responded with a letter saying there were no errors (Exhibits L & M to Wallace Declaration).

Plaintiff obtained her Experian, Equifax and Trans Union credit reports on December 5, 2016. The three reports state the SLS account had been charged off in each month January 2016 through October 2016, that it had been "transferred to recovery," and that the unpaid balance had been charged off (Exhibits N, O & P to Wallace Declarations).

On December 19, 2017, Travis Credit Union sent plaintiff a Statement of Credit Denial that states the principal reasons for the denial were "Delinquent past or present credit obligations" and "Garnishment, attachment, foreclosure, repossession, collection action or

Pl's Memo in Opp to Motion for Summ Jmt, *Infante v SLS*, No. 17-00793 MMC    4

judgment." Plaintiff's only account that was reported as delinquent was the SLS account (Reden Infante Decl, Exh B).

On January 10, 2017, plaintiff sent dispute letters to the CRAs in which plaintiff said the SLS reports were inaccurate because "the loan has been current since April 2012" and that she had "been paying on time for over four (4) years. She asked them to delete the account. She enclosed copies of bank statements, the loan modification, and her personal identifying information (Exhibits N, O & P to Wallace Declaration).

In January 2017, in accordance with FCRA procedures, the three CRAs sent SLS automatic dispute consumer dispute verification requests (ACDVs). The ACDVs asked SLS if its credit reporting on the account was accurate. SLS verified to the CRAs that its reporting was correct and that the loan status in the months July through November 2016 was charge-off. [1] In its ACDV responses, SLS also informed the CRAs that there were two FCRA Dates of First Delinquencies, which made no sense (Exhibits B, C & D to Wallace Declaration).

This action was filed February 17, 2017. By April 2017, plaintiff reached settlements with former defendants Experian, Equifax and Trans Union with each agreeing to suppress (stop reporting) the SLS account or (in the case of Equifax) the negative aspects pending resolution of plaintiff's claims against SLS. Experian and Trans Union elected to suppress the SLS account entirely (Reden Infante Declaration, ¶ 13).

In June 2017, again asked Travis Credit Union if they would refinance the loans. Travis Credit Union obtained a report on plaintiff's standing from Innovis. The Innovis report states her Trans Union and Experian credit scores were 746 and 769, respectively. However, the Equifax score was only 704 (Exhibit C). The apparent reason for this was that Equifax was continuing to

---

[1] The notation L means charge-off.

report the SLS loan had been transferred to recovery. At that point, plaintiffs contacted her attorney, who asked Equifax to remove the negative information in accordance with the settlement. By September 2017, Equifax had done so (Reden Infante Declaration ¶ 14).

With the adverse SLS account information no longer in her reports, in September 2017, JP Morgan Chase Bank agreed to refinance the loans with a 4.125% fixed, 30 year loan of $272,262. The transaction closed on October 17, 2107. The monthly payment on the Chase loan is $1,662 as compared to the total of $1,804 in payments due on the Bank of America and SLS loans (Reden Declaration ¶ 15).

## IV. ARGUMENT

### A. This Court Should Apply the "Patently Incorrect or Materially Misleading" Standard to Test the Credit Reports' Accuracy

The "patently incorrect or materially misleading" is the standard that the Court should apply to test the credit reports' accuracy. In *Carvalho v. Equifax Information Services*, 629 F.3d 876 (9th Cir. 2010), the 9th Circuit held that "an item on a credit report can be incomplete or inaccurate...because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." 629 F.3d at 890 (internal quotation omitted). The *Carvalho* court denominated this jurisprudence as the "'patently incorrect or materially misleading' standard." 629 F.3d at 890-91.

There is no doubt this standard applies to furnishers as well as CRAs. *Gorman v. Wolpoff & Abramson LLP*, 584 F.3d 1147, 1163 (9th Cir. 2008) ("Congress clearly intended furnisher to review reports not only for inaccuracies …but also for omissions that render the reporting information misleading").

The FCRA does not itself define accuracy. The Consumer Financial Protection Bureau, which is charged with regulating the CRAs and furnishers, defined the term accuracy as it

applies to furnishers as information that correctly "reflects the consumer's performance and other conduct with respect … to the account." 12 C.F.R. § 1022.41 (a) (Exhibit E to Anderson Declaration). While this regulation is not privately enforceable, it could be considered in *pari materia* with the standard for accuracy under Section 1681s-2b of the FCRA.

**B. SLS' Credit Reporting in 2016 Was Inaccurate.** SLS's reports to the CRAs that the loan was charged off in July through October 2016 were inaccurate. There was no accounting, financial or legal basis for SLS to report the loan was charged off in 2016.

Nothing in SLS's moving papers provides a cogent explanation for its reporting a charge off in 2016. SLS states that SLS "concluded that to continuing to furnish the charge-off code in the payment history field for months of July 2016 to October 2016 was not inaccurate even if Plaintiff later made payments on the Loan pursuant to the Loan Modification" (Wallace Declaration, ¶ 25).

Ms Wallace said this was "based on a number of factors such as SLS's interpretation of the term charge-off, how a charge-off is to be reported after a subsequent event such as the Loan Modification, how long SLS may report the account was a charged-off, and SLS's review of CRRG)" *Id.*

SLS's first factor, "interpretation of the term charge-off," tells this Court nothing about what its interpretation happened to be. Similarly, SLS's second factor, "how a charge-off is to be reported after a subsequent event such as the Loan Modification" tells us nothing about how SLS thought the modification affected its reporting.

SLS cited a third factor, was reliance on the Credit Reporting Resource Guide ("CRRG"). The CRRG is an industry manual on how to operate the Metro 2 credit reporting system.

Contrary to SLS's assertion, the CRRG as an industry standard is not binding on the district courts. Judges in this district have made this point repeatedly in a series of cases involving post-bankruptcy credit reporting. *E.g., Devincenzi v. Experian Information Solutions*, 2017 WL 86131, at *6.

Referring to the CRRG, SLS "states that in the account history field, a creditor is to furnish the account-status as of the last month reported" and SLS did so in January 2012 (Wallace Decl. ¶ 16). SLS is apparently referring to page 4-12 of the CRRG that describes how furnishers are to report the payment history profile of a loan:

> [The payment history profile] [c]ontains up to 24 months of consecutive payment activity of the previous 24 reporting periods prior to the Date of Account Information (Field 24) being reported. Report one month's payment history in each byte from the left to right in most recent to lease recent order. The first byte should represent the Account Status Code reported in the previous reporting period….Values available ….L = Charge-off. (Exhibit D to Ladi Declaration).

This instruction is merely how to report any charge off using the Metro 2 system. It provides no guidance on how to report the status of a loan four years after it was charged off that was later modified as to which the consumer made all her payments. This instruction has no application to the issues in this case.

**C. SLS' Credit Reporting Was Materially Misleading.** Even if SLS had a reason for charging off the loan in 2016 or even if its reports to the CRAs that year were technically accurate, its credit reporting was still in violation of the FCRA because it was seriously misleading to creditors. Creditors would have been misled in to believing plaintiff had become delinquent on the SLS loan in 2016, when in fact she had not been delinquent since 2011.

SLS's 2016 reports were material to plaintiff's credit standing. The reports led to her being unable to refinance her property in 2016 and the first nine months of 2017 (Reden Infante Declaration ¶¶ 9-15).

The 2016 reports the account was charged off was especially damaging because it was so recent. The more recent an adverse credit report appears in one's credit reports, the greater the impact on the person's credit score (Doug Minor Depo Tr. 54-58, Exhibit D to Anderson Declaration).

**D. SLS' Credit Reporting was Incomplete.** SLS reported no data at all to the CRAs for the months February 2012 through June 2016 (Exhibit A to Anderson Declaration) even though SLS had promised to continue to report plaintiff's payments to the CRAs ("Payment history will continue to be reported to the credit bureaus during the loan modification process)" Exhibit F to Wallace Declaration).

**E. SLS Failed to Conduct a Reasonable Investigation of Plaintiff's Disputes.** SLS' liability under the FCRA is based on its failure of conduct a reasonable investigation once it received notice from the CRAs of plaintiff's disputes. Specifically, SLS violated 15 U.S.C. § 1681s-2 (b) that provides once a furnisher (such as SLS) receives a notice that a consumer is disputing information it is reporting, the furnisher must conduct an investigation and if it finds the information is inaccurate or incomplete, the furnisher must tell the CRAs to either modify the information, delete it, or permanently block the reporting of the information.

The investigation contemplated by § 1681s-2 (b) by a furnisher must be a "fairly searching inquiry" and simply reporting what internal records show is not sufficient. *Gorman v Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1156"); *Johnson v MBNA*, 357 F.3d 426, 429-31 (4th Cir. 2004) ("[I]t would make little sense to conclude that, in creating a system intended to give consumers a means to dispute and, ultimately, correct inaccurate information on their credit reports, Congress used the term 'investigation' to include [only] superficial….inquiries by creditors" that "do not look beyond the [automated] information" in their own computer systems

and "never consult underlying documents such as account applications").

That SLS' investigation was not reasonable may easily be inferred from the fact that its credit reporting was patently inaccurate and incomplete. Any reasonable investigation would have concluded that its reporting on the account in 2016 had to be corrected. Moreover, the reasons SLS advances as justifications for its reporting are nothing more than baseless conclusions.

Whether a furnisher's investigation was reasonable ordinarily cannot be decided on a summary judgment motion. The facts raise jury questions. "The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming number of [FCRA] cases. *Guimond v Trans Union Credit Information Co*., 45 F.3d 1329, 1333 (9th Cir. 1995).

**F. SLS Violated Civil Code § 1785.25 (a).** SLS violated Civil Code § 1785.25(a) of the California Consumer Credit Reporting Agencies Act which states that a "person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate."

The same arguments against dismissing the FCRA claim apply to the Civil Code claim. SLS knew or should have known the information it was reporting was inaccurate and incomplete.

**G. This Court Decided an Analogous FCRA Case in 2013**

In *Thorp v EduCap, Inc.,* 2013 WL 5956191, the parties had a dispute concerning a student loan serviced by defendant EduCap. After Thorp and her relatives fell behind on the loan payments, EduCap filed a collection action in the Superior Court. Thereafter, the parties reached a settlement agreement with new loan terms.

Pl's Memo in Opp to Motion for Summ Jmt, *Infante v SLS*, No. 17-00793 MMC    10

The federal case arose after EduCap reported to the CRAs that Thorp and her relatives were "past due" in the amount of $20,026, that their monthly payment was $6,126, and that the account was 180 days past due thus ignoring the fact the parties had settled the state court case thereby changing the parties' contractual duties.

The facts in *Thorp* are analogous to the facts in this case. In both cases, the plaintiffs were delinquent on an account that was the subject of a modification of their contractual relationships. And in both cases, the defendant creditors thereafter sent reports to the CRAs as if the modifications never happened.

In *Thorp*, this Court denied the defendant's motion to dismiss because EduCap had "failed to show that a trier of fact could not reasonably find potential creditors reviewing the reports would be left with the impression that plaintiffs are currently in default on an obligation …due and owing for a period of six months" (p. 4). Plaintiff submits the same reasoning applies to this case.

**H. There Are Material Issues of Genuine Facts Concerning Damages**

Defendant SLS argues this Court should dismiss the case because plaintiff cannot prove she was damaged. Procedurally, the motion is faulty because SLS has not moved for partial summary judgment seeking to dismiss plaintiff's damage claims. Even if SLS had so moved, there are material issues of genuine fact that preclude this Court from granting defendant's motion.

**1. Plaintiff Has a Valid Claim Emotional Distress Damages.** Plaintiffs in FCRA cases may claim damages for "humiliation or mental distress, even if the consumer has suffered no out-of-pocket losses" due to a denial of credit. *Guimond v Trans Union Credit Information Company*, 45 F.3d 1329, 1333 (9th Cir. 1995).

Pl's Memo in Opp to Motion for Summ Jmt, *Infante v SLS*, No. 17-00793 MMC    11

Civil Code § 1785.31(a) provides remedies for violation of Civil Code § 1785.25(a). Under the plain words of the statute, plaintiff may claim actual damages including "pain and suffering," which necessarily includes emotional distress.

The Ninth Circuit has not addressed the type of evidence necessary to support an award of emotional distress damages under the FCRA, but has stated in other contexts that "[w]hile objective evidence requirements may exist in other circuits, such a requirement is not imposed by case law in the Ninth Circuit, or the Supreme Court." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1040 (9th Cir.2003) (holding in a discrimination action that the plaintiff's "testimony alone is enough to substantiate the jury's award of emotional distress damages") (ellipsis and citations omitted). See also *Johnson v. Hale*, 13 F.3d 1351, 1352-53 (9th Cir.1994) (recognizing that "compensatory damages may be awarded for humiliation and emotional distress established by testimony or inferred from the circumstances, whether or not plaintiffs submit evidence of economic loss or mental or physical symptoms.").

SLS misstates the proof necessary to sustain a claim for emotional distress damages in a FCRA case in the 9th Circuit (Def's Memo, p. 13). SLS cites *Valentine v First Advantage Saferent*, 2009 WL 4349694 (C.D. Calif.) for the proposition there is a split of authority in the district courts in the Ninth Circuit on whether California's more stringent standard applicable to claims of intentional infliction of emotional distress (IIED) apply to claims for emotional distress under federal law. But the only "split" is whether a plaintiff's own testimony will suffice to prove emotional distress damages or whether additional objective evidence is needed. There is no authority in the 9th Circuit for the proposition that SLS's conduct must be extreme and outrageous or the same as IIED claims. Each of the opinions cited by SLS on pages 13-14 of its memorandum are not applicable since they involve claims of IIED.

SLS also argues the IIED standard should apply to plaintiff's claims based on violation of Civil Code § 1785.25(a). This is wrong. The remedy statute predicates punitive damages on a finding the defendant acted willfully:

> (c) Notwithstanding any other provision of this section, any person who willfully violates any requirement imposed under this title may be liable for punitive damages in the case of a class action, in an amount that the court may allow. In determining the amount of award in any class action, the court shall consider among relevant factors the amount of any actual damages awarded, the frequency of the violations, the resources of the violator and the number of persons adversely affected. Civil Code § 1785.31(c).

(See discussion of plaintiff's claim SLS acted willfully below).

Referencing her deposition testimony, SLS argues Infante cannot prove its credit reporting caused her emotional distress (Def's Memo, pp. 14-15). SLS is arguing disputed facts. Plaintiff testified in her deposition that SLS's actions triggered her depression, caused her to lose sleep, caused her to be tense, caused her worry, and caused stress which led to headaches and backaches (Infante Depo Tr. pp. 98-103, Exhibit C to Anderson Decl). Plaintiff's husband said he observed similar symptoms due to SLS's credit reporting (Reden Infante Declaration ¶ 17).

### 2. Plaintiff May Claim Damages for Her Inability to Refinance

SLS also argues the facts do not support her claim for her inability to refinance her properties referencing some documents (Def's Memo, pp. 12-13). However, genuine issues of material fact prevent the Court from dismissing plaintiff's damage claims. Infante has ample proof that SLS's credit reporting prevented her from refinancing (Declaration of Reden Infante ¶¶ 9-16).

The FCRA allows consumers to seek damages for such claims. In *Gorman v Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1174 (9th Cir. 2009), the Court upheld Gorman's claim for damages due to his inability to obtain financing:

> Gorman submitted evidence that he was refused credit or offered higher than advertised interest rates; the explanations given by the creditors were delinquencies on his credit report; and the only delinquency is the MBNA account. Gorman maintains that he had to

borrow money at inflated interest rates, and that he lost wages from the time spent dealing with his credit problems. Under Dennis, this is sufficient to establish causation and damages.

### 3. Plaintiff May Claim Punitive Damages Based on SLS's Willful Violations of the FCRA and Civil Code § 1785.25(a)

SLS argues plaintiff cannot prove it acted willfully and therefore her claim for punitive damages should be dismissed. The FCRA provides that a consumer may claim punitive damages if the defendant willfully fails to comply with the Act's requirements. 15 U.S.C. § 1681n. The Supreme Court has held that a "reckless disregard of a requirement of FCRA would qualify as a willful violation within the meaning of § 1681n(a)." *Safeco Ins. Co. v Burr*, 551 U.S. 47, 71 (2007).

In this case, a reasonable jury could find that SLS acted with reckless disregard of the requirements of the FCRA. Its justification for reporting the charge-off in 2016 was at best a misinterpretation of an industry guide on how to use the Metro 2 system.

In *Thorp v EduCap,* 2013 WL 5956191, p. 5, as in this case, the defendant argued plaintiffs had not alleged a valid willful violation of Civil Code § 1785.31. This Court said the complaint alleged a willful violation: "[T]he term willful as used in California's civil statutes, means no more than the "person know what he is going, intends to do what he is doing and is a free agent;" it does not necessarily imply anything blamable, or any malice or wrong toward the party, or perverseness or moral delinquency." Plaintiff has evidence to prove a willful violation.

**IV. CONCLUSION.** The SLS reporting was inaccurate, incomplete and misleading to creditors. Plaintiff can prove actual damages. The motion for summary judgment should be denied.[2]

Dated: December 20, 2017.

                                  /*s/ Mark F. Anderson*
                                  Mark F. Anderson
                                  Attorney for Plaintiff Cecilia Infante

---

[2] SLS states it cannot be sued for failing to mark the loan account as disputed because 15 U.S.C. § 1681s-2(a)(3) is not privately enforceable against furnishers (Def's Memo pp 15-16). SLS is correct and plaintiff is not making any claim to the contrary. SLS also states Civil Code § 1785.25(f) is preempted, but plaintiff is not relying on that subsection of § 1785.25.

Pl's Memo in Opp to Motion for Summ Jmt, *Infante v SLS*, No. 17-00793 MMC    14